IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECOND AMENDMENT FOUNDATION, INC., RAINIER ARMS, LLC, SAMUEL WALLEY, and WILLIAM GREEN,<br><br>Plaintiffs,<br><br>v.<br><br>BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, REGINA LOMBARDO, in her official capacity as Acting Director of the Bureau of Alcohol, Tobacco, Firearms, and Explosives, UNITED STATES DEPARTMENT OF JUSTICE, and JEFFREY ROSEN, in his official capacity as Acting ATTORNEY GENERAL, U.S. Department of Justice,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. ________________<br><br><br><br><br><br><br>COMPLAINT |

## INTRODUCTION

1. In a vitally important area of the firearms law, Defendant officials at the Bureau of Alcohol, Tobacco, Firearms and Explosives have committed serious wrongdoings that violate both the Administrative Procedure Act and Second Amendment to the United States Constitution.

2. Knowing that a full-fledged administrative process would interfere with their anti-gun desires, the Defendants have imposed illegal restrictions on the Second Amendment's right to keep and bear arms by way of rules that violate the most rudimentary commands of due process and the APA. Their illegal actions harm thousands upon thousands of law-abiding American citizens nationwide, including most particularly persons with disabilities and the firearms industry that supports them, each of whom is being wrongfully faced with the threat of criminal prosecution under Defendants' unlawful rulemaking.

3. The Defendants' wrongdoing has not ceased. It is an ongoing effort that will recur under President-elect Biden's Administration, which publicly espouses staunch anti-gun policies. Plaintiffs therefore seek declaratory and injunctive relief requiring the government Defendants to comply with APA rulemaking requirements, to include applicable notice-and-comment procedures.

## I. PARTIES

### A. Plaintiffs

4. Plaintiff Second Amendment Foundation, Inc. ("SAF") is a non-profit membership organization incorporated under the laws of the State of Washington. SAF's principal place of business is in Bellevue, Washington. SAF supports education, research, publications, and legal action about the Constitution's right to privately own and possess firearms and the consequences of gun control. SAF has over 650,000 members and has worked to promote Second Amendment rights throughout the United States since 1974. SAF has members who are disabled, including Samuel Walley and William Green. SAF members seek to

purchase and use arm braces sold by Rainier Arms and other firearms suppliers and manufacturers.

5. Plaintiff Rainier Arms ("Rainier") is a private business corporation that is headquartered and has its principal place of business in the State of Washington. Rainier Arms is in the business of selling firearms parts and accessories.

6. Plaintiff Samuel Walley ("Walley") is a natural person and a citizen of the United States and the State of Georgia. Walley is a disabled veteran of the United States Army who suffered a traumatic injury in 2012 outside Helmand Province, Afghanistan from an improvised explosive device that resulted in the partial amputation of his right leg and left arm and a salvaged left leg limb. Walley uses arm braces to stabilize firearms and increase his accuracy in shooting. Walley is a SAF member.

7. Plaintiff William Green ("Green") is a natural person and a citizen of the United States and the State of Texas. Green is a police officer who was seriously injured in the line of duty, which resulted in permanent nerve damage affecting his right hand. Green uses arm braces to stabilize firearms and increase his accuracy in shooting. Green is a SAF member. He resides in Rockwall County, Texas.

8. SAF brings this action on behalf of itself. SAF also brings this action on behalf of its members because at least two of its members would have standing to sue in their own right, the interests the suit seeks to vindicate are germane to SAF's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

**B. Defendants**

9. Defendant the United States Department of Justice ("Justice Department") is, and was at all relevant times, an executive department of the United States subject to the Administrative Procedure Act ("APA"). *See* 5 U.S.C. § 551(1). The Justice Department is headquartered in Washington DC.

10. Defendant Jeffrey Rosen is the Acting Attorney General of the United States. He is sued in his official capacity. In that capacity, he oversees the Justice Department and its

components. He is responsible for the federal conduct that is the subject of this action and for the related acts and omissions alleged herein.

11. Defendant the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") is, and was at all relevant times, a component of the Justice Department subject to the APA. *See* 5 U.S.C. § 551(1). ATF is headquartered in Washington DC.

12. Defendant Regina Lombardo is the ATF Acting Director. She is sued in her official capacity. In that capacity, she is responsible for the federal conduct that is the subject of this action and for the related acts and omissions alleged herein.

## II. JURISDICTION AND VENUE

13. 28 U.S.C. § 1331 supplies the Court with original federal question jurisdiction over this action because it arises under the Constitution and laws of the United States.

14. This action seeks declaratory, injunctive, and other relief pursuant to the Constitution of the United States of America, 5 U.S.C. § 702, 5 U.S.C. § 705, 5 U.S.C. § 706, 28 U.S.C. § 1651(a), 28 U.S.C. § 2201, and 28 U.S.C. § 2202.

15. There exists an active, justiciable controversy amongst the parties about whether the Justice Department complied with the APA, 5 U.S.C. §§ 551-559, and violated Second Amendment rights in promulgating the Open Letter and Notice of Rulemaking attached to this complaint as Exhibits A and B. Declaratory relief will resolve this controversy and eliminate the burden imposed on Plaintiffs' stemming therefrom.

16. This Court constitutes a proper venue for this action because this is an action against officers and agencies of the United States, a plaintiff resides in this judicial district, and no real property is involved in the action. *See* 28 U.S.C. § 1391(e)(1)(C).

## III. DEFENDANTS' ARM BRACE RULE

### A. The National Firearms Act

17. Congress passed the National Firearms Act of 1934 ("NFA"), Pub.L. 73–474, 48 Stat. 1236, to impose a tax on the making and transfer of firearms defined by the NFA, as well as a special (occupational) tax on persons and entities engaged in the business of importing,

manufacturing, and dealing in NFA firearms. The law also requires the registration of all NFA firearms with the Secretary of the Treasury.

18. With passage of the Gun Control Act of 1968 ("GCA"), Pub. L. No. 90-618, 82 Stat. 1213, Congress revised the NFA by enacting Title II of the GCA, which regulates machineguns, short-barreled shotguns and rifles, and destructive devices (including grenades, mortars, rocket launchers, and other heavy ordnance). 26 U.S.C. § 5801 et seq. Rifles and pistols not subject to the NFA are regulated under Title I of the GCA. 18 U.S.C. § 921 et seq.

19. Both a "rifle" and "shotgun" are defined under the NFA in terms of "a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder . . . ." *Id.* at § 5845(c) and (d).

20. Short-barreled rifles and shotguns subject to the NFA are defined as rifles "having a barrel or barrels of less than 16 inches in length" and shotguns "having a barrel or barrels of less than 18 inches in length". *Id.* at § 5845(a).

21. The GCA defines "handgun" to mean, in part, "a firearm which has a short stock and is designed to be held and fired by the use of a single hand . . . ." 18 U.S.C. § 921(a)(29). And the term "pistol" is defined in ATF regulations to mean "[a] weapon originally designed, made, and intended to fire a projectile (bullet) from one or more barrels when held in one hand, and having (a) a chamber(s) as an integral part(s) of, or permanently aligned with, the bore(s); and (b) a short stock designed to be gripped by one hand and at an angle to and extending below the line of the bore(s)." 27 C.F.R. § 479.11 (emphasis added).

**B. Stabilizing Arm Braces**

22. Stabilizing arm braces ("arm braces") are accessories installed on pistols and shotguns that allow users to stabilize these firearms against their arms, resulting in more accurate shooting without compromising safety or comfort, and reducing the risk of bruising and other

injuries when shooting from one hand. They generally consist of two flaps, a strap, and shroud attached to the end of a firearm.[1]

23. Originally developed for use by people with disabilities, those with and without disabilities now use arm braces as an additional point of support to ensure firearm safety and accuracy in operation of pistols and shotguns.

24. Reportedly, over two million arm braces have been sold.

25. Arm braces are commonly owned throughout the United States.

26. Arm braces are in common use throughout the United States.

**C. ATF's Initial Rule on Classification of Arm Braces**

27. In a November 2012 private classification letter, ATF determined that a pistol equipped with an arm brace was not subject to NFA control.[2]

28. Thereafter, in a March 2014 private classification letter (the "2014 Letter"), ATF determined that shouldering a pistol with an arm brace does not change the classification of the pistol under federal law:

> For the following reasons, we have determined that firing a pistol from the shoulder would **not** cause the pistol to be reclassified as an SBR:
>
> FTB classifies weapons based on their physical design characteristics. While usage/functionality of the weapon does influence the intended design, it is not the sole criterion for determining the classification of a weapon. Generally speaking, we **do not** classify weapons based on how an individual uses a weapon.
>
> FTB has previously determined (see FTB # 99146) that the firing of a weapon from a particular position, such as placing the receiver extension of an AR-15 type pistol on the user's shoulder, does not change the classification of a weapon. Further, certain firearm accessories such as the SIG Stability Brace have not been classified by FTB as shoulder stocks and, therefore, using the brace improperly does not constitute a design change. Using such an accessory improperly would not change the classification of the weapon per Federal law.

---

[1] *See, e.g.*, www.sb-tactical.com (last accessed Jan. 14, 2021).

[2] ATF Letter to Redacted Recipient, Nov. 26, 2012 ("FTB finds that the submitted forearm brace, when attached to a firearm, does not convert that weapon to be fired from the shoulder and would not alter the classification of a pistol or other firearm."). Exhibit C.

ATF Letter to Sergeant Joe Bradley of the Greenwood Police Department, Mar. 5, 2014 (emphasis in original). Exhibit D.

**D. ATF Reverses its Initial Rule on Arm Braces**

29. Less than a year after the 2014 Classification Letter, in an abrupt about-face, ATF issued two private classification letters[3] and issued its "Open Letter on the Redesign of 'Stabilizing Braces'" on January 16, 2015 (the "2015 Open Letter") completely reversing the position taken in its 2014 Letter. Exhibit A.

30. In its 2015 Open Letter, ATF stated that the use of stabilizing braces, as designed, would not create a short-barreled rifle when attached to a firearm; and that stabilizing braces are perfectly legal accessories for large pistols. *Id.* However, the 2015 Open Letter also advised that, because the stabilizing brace was not designed as a shoulder stock, "use" of the device as a shoulder stock would constitute a "redesign" of the firearm to which it was attached, resulting in the classification of the firearm as a short-barreled rifle subject to the NFA:

> The pistol stabilizing brace was neither "designed" nor approved to be used as a shoulder stock, and therefore use as a shoulder stock constitutes a "redesign" of the device because a possessor has changed the very function of the item. **Any individual letters stating otherwise are contrary to the plain language of the NFA, misapply Federal law, and are hereby revoked**.
>
> Any person who intends to use a handgun stabilizing brace as a shoulder stock on a pistol (having a rifled barrel under 16 inches in length or a smooth bore firearm with a barrel under 18 inches in length) must first file an ATF Form 1 and pay the applicable tax **because the resulting firearm will be subject to all provisions of the NFA.**

*Id.* (emphasis added).

31. The 2015 Open Letter did more than simply interpret existing law. It made a substantive change to existing law in a complete revocation and reversal of ATF's previous rule, as established in the 2014 Letter.

[3] *See* ATF Letter to Eric Lemoine, Oct. 28, 2014 (stating pistol with arm brace is subject to NFA when arm brace is used as a shoulder stock); ATF Letter to Redacted Recipient, Nov. 10, 2014 (same). Letters attached at Exhibit E.

32. ATF has since issued interpretations of the 2015 Open Letter in private classification letters that limit scope of the rule and create an exception for "incidental, sporadic, or situational 'use'" of an arm-brace on firearms that do not have certain modifications.

33. Specifically, in a 2017 classification letter to SB Tactical (the "2017 Letter"), ATF acknowledged "that the *Open Letter* may have generated some confusion concerning the analytical framework by which those conclusions were reached." ATF clarified:

> To the extent the January 2015 Open Letter implied or has been construed to hold that incidental, sporadic, or situational "use" of an arm-brace (in its original approved configuration) equipped firearm from a firing position at or near the shoulder was sufficient to constitute "redesign," such interpretations are incorrect and not consistent with ATF's interpretation of the statute or the manner in which it has historically been enforced.

ATF Letter to M. Barnes, Mar. 21, 2017. Exhibit F.

34. The 2017 Letter also stated:

> If, however, the shooter/possessor takes affirmative steps to configure the device for use as a shoulder-stock—for example, configuring the brace so as to permanently affix it to the end of a buffer tube, (thereby creating a length that has no other purpose than to facilitate its use as a stock), removing the arm-strap, or otherwise undermining its ability to be used as a brace—and then in fact shoots the firearm from the shoulder using the accessory as a shoulder stock, that person has objectively "redesigned" the firearm for purposes of the NFA. This conclusion is not based upon the mere fact that the firearm was fired from the shoulder at some point.

*Id.*

35. Worsening the confusion caused by its 2015 Open Letter, the 2017 Letter did not define "incidental, sporadic, or situational 'use'", instead leaving it to ATF to decide on a case-by-case basis.

36. In other private classification letters, which were posted on the Internet by various companies and individuals, ATF determined that the addition of ridges to the end of a brace,[4]

[4] *See* ATF Letter to M. Faucette, Dec. 22, 2015. Exhibit G.

and/or certain other modifications made to a weapon, when present with a brace that is sporadically shouldered may subject a pistol to NFA requirements.

## IV. DEFENDANTS' VIOLATION OF APA REQUIREMENTS

### A. APA Notice-and-Comment Requirements

37. The APA applies to all executive branch agencies. 5 U.S.C. § 551(1). It prescribes procedures for agency actions such as rulemaking, as well as standards for judicial review of agency actions.

38. Rulemaking is the "agency process for formulating, amending, or repealing a rule". 5 U.S.C. § 551(5).

39. A rule is defined as "an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency." 5 U.S.C. § 551(4).

40. Under the APA, **legislative rules** are rules through which an "agency intends to create new law, rights or duties," *General Motors Corp. v. Ruckelshaus*, 742 F.2d 1561, 1565 (D.C. Cir. 1984) (en banc). They also include rules issued by an agency pursuant to statutory authority that implements a statute and where, in the absence of the rule, "there would not be an adequate legislative basis for enforcement action." *Wilson v. Lynch*, 835 F.3d 1083, 1099 (9th Cir. 2016) (citations omitted). In addition, a rule is legislative if it "repudiates or is irreconcilable with" a prior legislative rule or if it amends a legislative rule. *Id.*

41. When an agency promulgates legislative rules, or rules made pursuant to congressionally delegated authority, the exercise of that authority is governed by the APA informal rulemaking procedures outlined in 5 U.S.C. § 553.

42. These procedures include notice-and-comment provisions in which federal agencies such as ATF must publish proposed rules in the Federal Register[5] and provide the public with adequate notice of a proposed rule followed by a meaningful opportunity to comment

---

[5] The Federal Register is a government publication that lists the official and complete text of federal agency regulations.

on the rule's content through the submission of written "data, views, or arguments." 5 U.S.C. § 553 (b)–(c); *see also Fertilizer Inst. v. EPA*, 935 F.2d 1303, 1308 (D.C. Cir. 1991) ("[A]n agency can declare its understanding of what a statute requires without providing notice and comment, but an agency cannot go beyond the text of a statute and exercise its delegated powers without first providing adequate notice and comment.").

43. Unless mandated by statute, there is no minimum period of time for which the agency is required to accept public comments. However, in reviewing agency rulemaking, courts focus on whether the agency provided an "adequate" opportunity to comment—of which the length of the comment period represents a factor for consideration. *Fla. Power & Light Co. v. U.S.*, 846 F.2d 765, 771 (D.C. Cir. 1988).

44. Additionally, Executive Order 12866, which provides for presidential review of agency rulemaking via the Office of Management and Budget's Office of Information and Regulatory Affairs, states that the public's opportunity to comment, "in most cases should include a comment period of not less than 60 days." Exec. Order No. 12866, § 6(a), 58 Fed. Reg. 51735, 51740 (Oct. 4, 1993).

45. After an agency considers public feedback and makes changes where appropriate, it then publishes a final rule in the Federal Register describing and responding to public comments, with a specific date for when the rule will become effective and enforceable.

**B. The 2015 Open Letter is Subject to APA Requirements**

46. ATF claims that "Open Letters do not have the force and effect of federal statutes or Department of Justice regulations, and are not final agency actions."[6] But the 2015 Open Letter was more than a mere interpretative rule and general statement of ATF policy.

47. The 2015 Open Letter is a legislative rule that instituted a drastic change—a repudiation of the previous ATF rule on arm braces, and that set forth new legal standards and new legal requirements based on "use." *See, e.g.*, *Guedes v. Bureau of Alcohol, Tobacco,*

[6] "Open Letters," available at https://www.atf.gov/rules-and-regulations/open-letters (last accessed Jan. 14, 2021).

*Firearms and Explosives*, 920 F.3d 1 (C.A.D.C. 2019) (ATF rule classifying bump-stock devices as "machineguns" under NFA was legislative, rather than interpretive); *Sig Sauer, Inc. v. Brandon*, 826 F.3d 598, 600 n.1 (1st Cir. 2016) (*citing, e.g.*, *FTC v. Standard Oil Co*., 449 U.S. 232, 241 (1980) (APA's finality requirement is satisfied when a decision is a "definitive statement of the agency's position and had a direct and immediate effect on the day-to-day business" of the affected parties)).

48. Moreover, the ATF private classification letters interpreting and applying the 2015 Open Letter are themselves final agency actions subject to the APA. *See, e.g.*, *Sig Sauer,* 826 F.3d at 600 n.1 ("The parties agree that ATF's issuance of a classification letter is a 'final agency action' that is reviewable under the Administrative Procedure Act."); *see also Innovator Enters., Inc. v. Jones*, 28 F. Supp. 3d 14 (D.D.C. 2014) (finding ATF private classification determination arbitrary and capricious under the APA).

49. In fact, following Defendants' promulgation of the 2015 Open Letter, the Justice Department enforced ATF's new rule for arm braces in criminal proceedings under the NFA. *See, e.g.*, *USA v. Wright*, Case No. 3:2018-cr-00162 (N.D. Ohio).[7] Such enforcement provides clear evidence that Defendants intend the 2015 Open Letter to serve as a binding application of its rulemaking authority.

**C. ATF's 2020 Notice of Rulemaking**

50. On June 16, 2020, various Members of Congress sent a letter to ATF demanding that ATF clearly state the specific criteria used to determine if and when use of an arm brace somehow converts a non-controlled firearm into an NFA firearm. Exhibit H.

---

[7] *See* Government's publicly available Motion in Limine from case discussing how "the primary issue in dispute at trial will be whether or not Kelland Wright's firearm meets the definition of a 'rifle,' that is a firearm designed to be fired from the shoulder"; and discussing the Government's desire to keep its arm brace private classification letters off the record. A copy of motion is available online at: https://princelaw.files.wordpress.com/2018/10/motion-in-limine-atf-determinations.pdf (last accessed Jan. 14, 2021).

51. The letter from Members of Congress described ATF's treatment of arm braces as: "arbitrary Agency action without any solid foundation in law [that] has the potential to create overnight felons of millions of law-abiding gun owners, firearm manufacturers and Federal Firearms Licensees all without ever notifying those individuals that the ATF has — in secret — come up with a novel interpretation of law without proper comment, review or notice." *Id.*

52. Thereafter, on December 18, 2020, ATF published a notice in the Federal Register seeking to impose NFA controls on braces meeting certain "Objective Factors for Classifying Weapons with 'Stabilizing Braces'" (the "2020 Notice"). 85 Fed. Reg. 82,516 (Dec. 18, 2020). Exhibit B.

53. Footnote 8 of the 2020 Notice cited the 2015 Open Letter and the 2017 Letter approvingly.

54. The 2020 Notice explained:

> When an accessory and a weapon's objective design features, taken together, are not consistent with use of the accessory as an arm brace, that is, not to stabilize a handgun when being operated with one hand, such weapon, configured with the accessory may fall within the scope of the NFA, particularly where the accessory functions as a shoulder stock for the weapon.

*Id.* at 82,518.

55. Although the 2020 Notice provided a listing of design features, the listing was open-ended and included "peripheral accessories commonly found on rifles or shotguns that may indicate that the firearm is not designed and intended to be held and fired with one hand." *Id.* at 82,518.

56. ATF provided an extremely short 17-day time period for public comments to the 2020 Notice that began on the last day of Chanukah and ran over Christmas Eve and New Year's Eve.

57. Following publication of the 2020 Notice, Members of Congress sent ATF another letter on December 22, 2020 stating: "With ambiguous and malleable subjective criteria such as these, it is obvious the ATF has no interest in clarifying the matter but banning

stabilizing braces outright and submitting lawfully purchased firearms and their owners to federal regulation." Exhibit I.

58. The letter from Members of Congress further stated: "We are disturbed a government agency would issue guidance that would take away a disabled veteran's ability to enjoy his constitutionally protected right." *Id.*

59. After receiving over 70,000 public comments,[8] ATF withdrew the 2020 Notice. *See* 85 Fed. Reg. 86,948 (Dec. 31, 2020). Exhibit J.

60. In its Notice of Withdrawal, ATF stated: "The withdrawal of the guidance does not change any law, regulation, or other legally binding requirement." *Id.* And, to date, ATF has not withdrawn the rule first announced in its 2015 Open Letter.

## V. ADVERSE IMPACTS ON PLAINTIFFS

61. Violations of the NFA are felonies punishable by up to 10 years in prison, forfeiture of firearms in violation, and forfeiture of the individual's right to own or possess firearms in the future. *See* 26 U.S.C. § 5871. The NFA also provides for a penalty of $10,000 for violations. *Id.*

62. The individual plaintiffs and other SAF members who use arm braces have no intent to shoulder pistols or shotguns equipped with the accessories. Rather, they use arm braces in their only fully functional arm, or to provide support to a damaged limb, in order to stabilize firearms and increase accuracy.

63. However, the scope of what constitutes "incidental, sporadic, or situational 'use'" of an arm brace is undefined and vague, exposing people with disabilities and other individuals to significant liability under civil and criminal law for the potential actions of friends, family members, and others who may inadvertently and improperly use their firearms.

---

[8] *See* https://beta.regulations.gov/docket/ATF-2020-0001 (last accessed Jan. 14, 2021).

64. Similarly, the scope of what cosmetic and other changes to a firearm equipped with an arm brace may subject the firearm to the NFA is seemingly open-ended, unfairly exposing people with disabilities to potential liability under civil and criminal law.

65. The adverse impact on the individual Plaintiffs harms Rainier by impeding sales of arm braces sold by Rainier by virtue of the shared fear among would-be purchasers. Rainier may also be forced to halt sales and recall products from customers based on reports from recipients of ATF positions taken in private classification letters.

66. Plaintiffs reasonably expect that the threat of arbitrary enforcement of gun control laws will dramatically increase in the next four years under President-elect Biden's Administration, which publicly espouses a staunch anti-gun rhetoric.[9]

67. To address the threat of Defendants' enforcement of the 2015 Open Rule, the individual plaintiffs and other SAF members who use arm braces are forced to choose between taking calculated risks, requesting private classification determinations[10] from Defendant ATF, or registering their firearms.

68. The NFA private classification letter request and the NFA application and registration processes are more than *de minimis* burdens on Second Amendment rights because they involve significant wait periods. For instance, the NFA registration requirement, which is required for short-barreled rifles, involves wait times of several months to a year or more.[11]

---

[9] *See* https://joebiden.com/gunsafety/ (last accessed Jan. 14, 2021).

[10] "Even though firearms may appear to have similar features, an ATF classification pertains only to the particular sample submitted, because variations in submissions, applicable statutes, judicial interpretations of these statutes, the manufacturer's or maker's intent, and the objective design features supporting that intent, make the general applicability of any particular classification exceedingly rare." 85 Fed. Reg. at 82517.

[11] *See Transfer Tracking*, NFA TRACKER, available at https://www.nfatracker.com/nfa-transfer-time-tracking/ (last accessed Jan. 14, 2021).

69. Moreover, Defendants' restrictions on arm braces, accessories necessary for disabled persons to safely exercise rights protected by the Second Amendment, violate the Rehabilitation Act of 1973, which applies to actions by federal executive branch agencies.[12]

70. Requiring Defendants to provide Plaintiffs and other members of the public with an adequate opportunity to submit comments, and proper agency consideration and response to those comments, will alert Defendants to the many legal and practical deficiencies of the 2015 Open Letter, which, in turn, should reduce the unwarranted risk of criminal or civil penalties and the potential for costly product recalls and other corrective actions.

## VI. CAUSES OF ACTION

### A. Count One: Violation of the Administrative Procedures Act

71. Plaintiffs incorporate the preceding paragraphs as if separately stated herein.

72. The APA requires the Court to "hold unlawful and set aside agency action, findings, and conclusions" that are found to be "without observance of procedure required by law." 5 U.S.C. § 706(2)(D).

73. The Open Letter is a legislative rule because, among other things, it establishes new legal requirements, reverses the prior rule on arm braces, substantially impacts Plaintiffs and other members of the public, and forms the basis of criminal enforcement actions.

74. Defendants therefore committed a final agency action that was not in accordance with procedural law by failing to publish the 2015 Open Letter on the Federal Register and failing to adequately open the rule to public comment. Plaintiffs are therefore entitled to a judgment holding this conduct unlawful and awarding damages.

75. Defendants committed and/or attempted to commit a final agency action that was not in accordance with procedural law by publishing the 2020 Notice with a 17-day public

[12] *See* 29 U.S.C. § 794(a) ("No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination…under any program or activity conducted by any Executive agency . . . .").

comment period over the 2020 holiday season. Plaintiffs are therefore entitled to a judgment holding this conduct unlawful and awarding damages.

76. Defendants committed and/or attempted to commit a final agency action that was not in accordance with procedural law by withdrawing the 2020 Notice in an apparent attempt to sidestep over 70,000 public comments. Plaintiffs are therefore entitled to judgment holding this conduct unlawful and awarding damages.

### B. Count Two: Violation of the Second Amendment

77. Plaintiffs incorporate the preceding paragraphs as is separately stated herein.

78. The Second Amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.

79. The Supreme Court has held that the Second Amendment secures an individual right to possess firearms. *See District of Columbia v. Heller*, 554 U.S. 570 (2008).

80. Arm braces are commonly owned firearms accessories.

81. The APA requires the Court to "hold unlawful and set aside agency action, findings, and conclusions" that are found to be "contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(B).

82. Defendants violated and/or attempted to violate the Second Amendment by subjecting Plaintiffs to an unconstitutional abridgement of Second Amendment rights. By unlawfully imposing NFA registration requirements on firearms outside the APA rulemaking process, Defendants have created new application and registration requirements that unlawfully infringe on Second Amendment rights of customers of Rainier Arms, of Green and Walley, and SAF members.

## VII. REQUESTED RELIEF

83. Plaintiffs request a judgment in their favor as to all claims against Defendants awarding them all relief they are entitled to;

84. Plaintiffs request a declaration that Defendants' conduct violates applicable APA procedural requirements;

85. Plaintiffs request a declaration that Defendants' conduct violates the Second Amendment;

86. Plaintiffs request an injunction, on a preliminary and permanent basis, enjoining Defendants from further failures to comply with APA rulemaking requirements;

87. Plaintiffs request an order requiring that Defendant ATF publish the public comments it received in response to the 2020 Notice;

88. Plaintiffs request an order requiring that, in any subsequent final agency action regarding arm braces, Defendant ATF provide at least 60 days for public comment;

89. Plaintiffs request an order requiring that, in any subsequent final agency action regarding arm braces, Defendant ATF describe and respond to the public comments it received in response to the 2020 Notice;

90. Plaintiffs request an award of actual damages;

91. Plaintiffs request an award of nominal damages;

92. Plaintiffs request an award against Defendants of reasonable attorney fees and costs pursuant to 5 U.S.C. § 504(a)(1) and 28 U.S.C. § 2412; and

93. Plaintiffs request any other relief against Defendants to which Plaintiffs are entitled.

Respectfully submitted,

BECK REDDEN LLP
By /s/ *Chad Flores*
Chad Flores
cflores@beckredden.com
State Bar No. 24059759

Hannah Roblyer
hroblyer@beckredden.com
State Bar No. 24106356
1221 McKinney St., Suite 4500
Houston, TX 77010
(713) 951-3700 | (713) 952-3720 (fax)

FARHANG & MEDCOFF
Matthew Goldstein *
mgoldstein@farhangmedcoff.com
D.C. Bar No. 975000
4801 E. Broadway Blvd., Suite 311
Tucson, AZ 85711
(202) 550-0040 | (520) 790-5433 (fax)

Attorneys for Plaintiffs

* *Pro Hac Vice application forthcoming*