# Exhibit B

**SUMMARY:** Notice is hereby given that the U.S. International Trade Commission has determined to review the presiding administrative law judge's (''ALJ'') initial determination (''ID'') (Order No. 52) granting summary determination of no substantial injury to a domestic industry in the above-captioned investigation. On review, the Commission has determined to reverse the ID's grant of summary determination and remand the investigation to the ALJ for further proceedings. The Commission has also determined to deny Complainants' motion for leave to file a reply brief.

**FOR FURTHER INFORMATION CONTACT:** Cathy Chen, Office of the General Counsel, U.S. International Trade Commission, 500 E Street SW, Washington, DC 20436, telephone 202–205–2392. Copies of non-confidential documents filed in connection with this investigation may be viewed on the Commission's electronic docket (EDIS) at *https://edis.usitc.gov.* For help accessing EDIS, please email *EDIS3Help@usitc.gov.* General information concerning the Commission may also be obtained by accessing its internet server at *https://www.usitc.gov.* Hearing-impaired persons are advised that information on this matter can be obtained by contacting the Commission's TDD terminal on (202) 205–1810.

**SUPPLEMENTARY INFORMATION:** The Commission instituted this investigation on July 3, 2019, based on a complaint filed on behalf of Illinois Tool Works, Inc. of Glenview, Illinois; Vesta Global Limited of Hong Kong; Vesta (Guangzhou) Catering Equipment Co., Ltd. of China; and Admiral Craft Equipment Corp. of Westbury, New York (collectively, ''Complainants''). 84 FR 31911 (Jul. 3, 2019). The complaint, as supplemented, alleges violations of section 337(a)(1)(A) of the Tariff Act of 1930, as amended, 19 U.S.C. 1337(a)(1)(A), based upon the importation of articles into the United States, or in the sale of such articles by the owner, importer, or consignee of certain foodservice equipment and components thereof by reason of misappropriation of trade secrets and unfair competition through tortious interference with contractual relationships, the threat or effect of which is to destroy or substantially injure a domestic industry. *Id.* at 31911–12. The plain language description of the accused products or category of accused products, which defines the scope of the investigation, is ''commercial kitchen equipment and components thereof for use in restaurants, bars, cafes, cafeterias, or the like.'' *Id.* at 31912. The notice of investigation named Guangzhou Rebenet Catering Equipment Manufacturing Co., Ltd.; Zhou Hao; Aceplus International Limited (aka Ace Plus International Ltd.); Guangzhou Liangsheng Trading Co., Ltd.; and Zeng Zhaoliang (collectively, ''Respondents''), all of China as respondents. *Id.* at 31912. The Office of Unfair Import Investigations (''OUII'') is also named as a party. *Id.*

On May 21, 2020, OUII filed a motion for summary determination of no substantial injury to a domestic industry under section 337(a)(1)(A), 19 U.S.C. 1337(a)(1)(A). Complainants opposed the motion, and Respondents supported the motion. OUII also filed a reply brief in support of its motion.

On July 9, 2020, the ALJ issued the subject ID (Order No. 52) granting OUII's motion for summary determination of no substantial injury to a domestic industry under section 337(a)(1)(A). Presuming the existence of a domestic industry as alleged by Complainants, the ID found that ''Complainants have not demonstrated injury'' to ''the specific activities and investments that give rise to [the alleged] domestic industry.'' *Id.* at 16, 18. The ID found that Complainants identified ''generalized competitive harm 'to the industry as a whole,' such as lost sales and profits, rather than pointing specifically to injury or threatened injury to the alleged domestic activities.'' *Id.* at 16. The ID reasoned that ''generalized lost profits and lost sales, *etc.,* cannot suffice to show substantial harm because even a mere importer will suffer such harm if a competitor imports and sells the same products cheaper.'' *Id.* at 17.

On July 20, 2020, Complainants petitioned for review of the ID. Thereafter, Respondents and OUII opposed the petition. On August 4, 2020, Complainants filed a motion for leave to file a reply to Respondents' and OUII's responses to its petition. Respondents and OUII opposed Complainants' motion.

The Commission has determined to review the ID in its entirety and to deny Complainants' motion for leave to file a reply brief. On review, the Commission has determined to reverse the ID's grant of summary determination finding that Complainants' evidentiary showing is insufficient to establish substantial injury to Complainants' alleged domestic industry, and remand the investigation to the ALJ for further proceedings consistent with the Commission's order and concurrent opinion.

The Commission vote for this determination took place on December 14, 2020.

The authority for the Commission's determination is contained in section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. 1337, and in Part 210 of the Commission's Rules of Practice and Procedure, 19 CFR part 210.

By order of the Commission.
Issued: December 14, 2020.

**Lisa Barton,**
*Secretary to the Commission.*
[FR Doc. 2020–27858 Filed 12–17–20; 8:45 am]
**BILLING CODE 7020–02–P**

## DEPARTMENT OF JUSTICE

### Bureau of Alcohol, Tobacco, Firearms, and Explosives

**[Docket No. 2020R–10]**

### Objective Factors for Classifying Weapons with ''Stabilizing Braces''

**AGENCY:** Bureau of Alcohol, Tobacco, Firearms, and Explosives, Department of Justice.

**ACTION:** Notice; request for comment.

**SUMMARY:** The Bureau of Alcohol, Tobacco, Firearms, and Explosives (''ATF'') is publishing the objective factors it considers when evaluating firearms with an attached stabilizing brace to determine whether they are considered firearms under the National Firearms Act (''NFA'') and/or the Gun Control Act (''GCA''). ATF publishes this notice to inform and invite comment from the industry and public on the proposed guidance, Objective Factors for Classifying Weapons with ''Stabilizing Braces,'' prior to issuing a final document. Upon issuance of final guidance, ATF will provide additional information to aid persons and companies in complying with Federal laws and regulations. This notice also outlines ATF's enforcement priorities regarding persons who, prior to publication of this notice, made or acquired, in good faith, firearms equipped with a stabilized brace. Finally, this notice previews ATF's and the Department of Justice's plan to subsequently implement a separate process for current possessors of stabilizer-equipped firearms to choose to register such firearms in compliance with the NFA, including an expedited application process and the retroactive exemption of such firearms from the collection of NFA taxes.

**DATES:** Written comments must be postmarked and electronic comments

must be submitted on or before January 4, 2021. Commenters should be aware that the electronic Federal Docket Management System will not accept comments after midnight Eastern time on the last day of the comment period.

**ADDRESSES:** You may submit comments, identified by docket number ATF 2020R–10, by any of the following methods—

• *Federal eRulemaking Portal: www.regulations.gov.* Follow the instructions for submitting comments.

• *Mail:* Office of Regulatory Affairs, Enforcement Programs and Services, Bureau of Alcohol, Tobacco, Firearms, and Explosives, 99 New York Ave. NE, Mail Stop 6N–518, Washington, DC 20226; *ATTN: ATF 2020R–10.*

• *Fax:* (202) 648–9741.

*Instructions:* All submissions received must include the agency name and docket number (ATF 2020R–10). All properly completed comments received will be posted without change to the Federal eRulemaking portal, *www.regulations.gov,* including any personal information provided. For detailed instructions on submitting comments and additional information on the rulemaking process, see the ''Public Participation'' heading of the **SUPPLEMENTARY INFORMATION** section of this document.

**FOR FURTHER INFORMATION CONTACT:** Andrew Lange, Office of Regulatory Affairs, Enforcement Programs and Services, Bureau of Alcohol, Tobacco, Firearms, and Explosives, U.S. Department of Justice, 99 New York Ave. NE, Mail Stop 6N–518, Washington DC 20226; telephone: (202) 648–7070 (this is not a toll-free number).

**SUPPLEMENTARY INFORMATION:**

**I. Background**

The Attorney General [1] is responsible for enforcing the NFA, GCA, and the Arms Export Control Act (''AECA'').[2] The Attorney General has delegated the responsibility for administering and enforcing these statutes to the Director of ATF, subject to the direction of the Attorney General and the Deputy Attorney General. *See* 28 CFR 0.130(a)(1)–(2). The ATF Director delegated the authority to classify firearms pursuant to the GCA and NFA to ATF's Firearms Technology Criminal Branch (''FTCB'') and the Firearms Technology Industry Services Branch (''FTISB''), within the Firearms and Ammunition Technology Division (''FATD''), Office of Enforcement Programs & Services (''EPS'').[3]

FATD supports the firearms industry and the general public by, among other things, responding to technical inquiries, and by testing and evaluating firearms submitted to ATF for classification as to their regulation under the GCA and/or NFA. There is no requirement that the firearms industry or the public submit firearms to ATF for assessment of the firearm's proper classification. The statutory definition of ''firearm'' under the GCA and the NFA is different.[4] As a result, whether an item meets the definition of ''firearm'' under the GCA or the NFA affects how it will be regulated under Federal law. For instance, the GCA restricts the transportation, sale, and delivery of short-barreled shotguns and short-barreled rifles. 18 U.S.C. 922(a)(4) and (b)(4). Shotguns having a barrel or barrels of less than 18 inches in length,[5] and rifles having a barrel or barrels less than 16 inches in length,[6] and certain weapons made from shotguns and rifles, are ''firearms'' as defined by the NFA, and are subject to registration and taxes. 26 U.S.C. 5845(a). Therefore, FATD's classifications of a particular firearm allows industry members to plan, develop, and distribute products in compliance with the law, thereby reducing their risk of incurring criminal or civil penalties, or the potential for costly corrective actions, including a possible recall by the manufacturer.

Generally, when FATD evaluates a firearm sample, it examines its overall configuration, physical characteristics, objective design features that are relevant under the statutory definitions of the GCA and NFA, and any other information that directly affects the classification of a particular firearm sample. Even though firearms may appear to have similar features, an ATF classification pertains only to the particular sample submitted, because variations in submissions, applicable statutes, judicial interpretations of these statutes, the manufacturer's or maker's intent,[7] and the objective design features supporting that intent, make the general applicability of any particular classification exceedingly rare.

In recent years, some manufacturers have produced and sold devices designed to be attached to large and/or heavy pistols which are marketed to help a shooter ''stabilize'' his or her arm to support single-handed fire (''braces''). ATF was advised by the first manufacturer to submit an arm brace for classification that the intent of the arm brace was to facilitate one-handed firing of the AR15 pistol for those with limited strength or mobility due to a handicap, and to reduce bruising to the forearm when firing with one hand. According to this manufacturer, the brace concept was inspired by the needs of disabled combat veterans who still enjoy recreational shooting but could not reliably control heavy pistols without assistance. Consequently, ATF agrees that there are legitimate uses for certain ''stabilizing braces.''

The GCA and NFA generally regulate ''firearms'' and not individual components and, as such, ATF does not classify unregulated components or accessories alone. However, components or accessories can affect the overall classification of a firearm because: (1) How a component or accessory is actually used may be relevant in assessing the manufacturer's or maker's intent with respect to the design of a firearm; or (2) the design of a component or accessory may result in a firearm falling within a particular statutory definition. Stabilizing braces are one such component or accessory that ATF has encountered.

ATF's longstanding and publicly known position is that a firearm does not evade classification under the NFA merely because the firearm is configured with a device marketed as a ''stabilizing

---

[1] National Firearms Act provisions still refer to the ''Secretary of the Treasury.'' 26 U.S.C. ch. 53. However, the Homeland Security Act of 2002, Public Law 107–296, 116 Stat. 2135, transferred the functions of ATF from the Department of the Treasury to the Department of Justice, under the general authority of the Attorney General. 26 U.S.C. 7801(a)(2); 28 U.S.C. 599A(c)(1). Thus, for ease of reference, this notice refers to the Attorney General.

[2] National Firearms Act, 26 U.S.C. ch. 53; Gun Control Act, 18 U.S.C. ch. 44; Arms Export Control Act, 22 U.S.C. 2778.

[3] Delegation of Authorities within the Bureau of Alcohol, Tobacco, Firearms and Explosives, Delegation Order 1100.168C (November 5, 2018).

[4] 18 U.S.C. 921(a)(3) (GCA definition of firearm); 26 U.S.C. 5845(a) (NFA definition of firearm).

[5] Under 26 U.S.C. 5845(d), the term ''shotgun'' is further defined to mean ''a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of the explosive in a fixed shotgun shell to fire through a smooth bore either a number of projectiles (ball shot) or a single projectile for each pull of the trigger, and shall include any such weapon which may be readily restored to fire a fixed shotgun shell.''

[6] Under 26 U.S.C. 5845(c), the term ''rifle'' is further defined to mean ''a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of the explosive in a fixed cartridge to fire only a single projectile through a rifled bore for each single pull of the trigger, and shall include any such weapon which may be readily restored to fire a fixed cartridge.''

[7] ''When classifying a part as a firearm silencer, the statute imposes an intent requirement. Therefore, the manufacturer's stated intent for the part is clearly relevant,'' however, ''the objective design features of the part must support the stated intent.'' *Sig Sauer, Inc.* v. *Jones,* 133 F. Supp. 3d 364, 370 (D.N.H 2015) *aff'd Sig Sauer, Inc.* v. *Brandon,* 826 F.3d 598 (1st Cir. 2016).

brace'' or ''arm brace.'' [8] When an accessory and a weapon's objective design features, taken together, are not consistent with use of the accessory as an arm brace, that is, not to stabilize a handgun when being operated with one hand, such weapon, configured with the accessory may fall within the scope of the NFA, particularly where the accessory functions as a shoulder stock for the weapon. Accordingly, ATF must evaluate whether a particular firearm configured with a stabilizing brace bears the objective features of a firearm designed and intended to be fired from the shoulder, and thus subject to the NFA, on a case-by-case basis.

As the purpose of the NFA is ''to regulate certain weapons likely to be used for criminal purposes,'' *United States* v. *Thompson/Center Arms Co.,* 504 U.S. 505, 517 (1992), ATF cannot ignore the design features of a firearm that place it within the scope of the NFA's regulation simply because the manufacturer characterizes or markets a firearm accessory in a manner that does not correspond to its objective design. The characterization of an accessory by the manufacturer, including assertions in advertising, is not dispositive. If ATF's classification of a submitted sample demonstrates that the objective design features of the firearm, as configured, do not support the manufacturer's purported intent and characterization of the accessory on that particular firearm as a ''stabilizing brace'' or ''arm brace,'' ATF will classify the firearm based on the objective design features, as Federal law requires. *See Sig Sauer* v. *Brandon,* 826 F.3d 598, 601–02 (1st Cir. 2016).

ATF has observed that the development and production of firearms with arm braces has become more prevalent in the firearms industry and, relatedly, that requests for classifications for this kind of firearm design have also increased. Therefore, ATF is publishing this notice to aid the firearms industry and public in understanding the objective design features that FATD considers when evaluating firearm samples submitted with a stabilizing brace or similar attachment.

The objective design features ATF considers in determining whether a weapon with an attached ''stabilizing brace'' has been ''designed or redesigned, made or remade, and intended to be fired from the shoulder'' include, but are not limited to:

• *Type and Caliber.* The type and caliber of firearm to which the stabilizing brace or similar item is installed. A large caliber firearm that is impractical to fire with one hand because of recoil or other factors, even with an arm brace, is likely to be considered a rifle or shotgun.

• *Weight and Length.* The weight and length of the firearm used with the stabilizing brace. A firearm that is so heavy that it is impractical to fire or aim with one hand, or so long that it is difficult to balance the firearm to fire with one hand, is likely to be considered a rifle or shotgun.

• *Length of Pull.* The ''length of pull'' refers to the distance from the trigger to the point at which a stock meets the shoulder. This is a measurement for rifles and shotguns used to accommodate shooters of different sizes. Because an arm brace need only reach the forearm, the distance between the trigger and the back of the brace is generally expected to be shorter than the distance between the trigger and the back of a stock on a weapon designed and intended to be fired from the shoulder. This measurement is not necessarily determinative of the intent of the manufacturer but is used in making an evaluation of the firearm. If a brace is of a length that makes it impractical to attach to the shooter's wrist or forearm, then that may demonstrate that it is not designed as brace but rather for shoulder fire.

• *Attachment Method.* The method of attachment of the stabilizing brace, to include modified stock attachments, extended receiver extensions, and the use of spacers. These items extend the distance between the trigger and the part of the weapon that contacts the shooter, whether it is a stock or stabilizing brace. Use of these items indicates that the weapon is designed and intended to be fired from the shoulder because they extend a stabilizing brace beyond a point that is useful for something other than shoulder support.

• *Stabilizing Brace Design Features.* The objective design features of the attached stabilizing brace itself are relevant to the classification of the assembled weapon, and include:

○ The comparative function of the attachment when utilized as a stabilizing brace compared to its alternate use as a shouldering device;

○ The design of the stabilizing brace compared to known shoulder stock designs;

○ The amount of rear contact surface area of the stabilizing brace that can be used in shouldering the weapon as compared to the surface area necessary for use as a stabilizing brace;

○ The material used to make the attachment that indicates whether the brace is designed and intended to be pressed against the shoulder for support, or actually used on the arm;

○ Any shared or interchangeable parts with known shoulder stocks; and

○ Any other feature of the brace that improves the weapon's effectiveness from the shoulder-firing position without providing a corresponding benefit to the effectiveness of the stability and support provided by the brace's use on the arm.

• *Aim Point.* Appropriate aim point when utilizing the attachment as a stabilizing brace. If the aim point when using the arm brace attachment results in an upward or downward trajectory that could not accurately hit a target, this may indicate the attachment was not designed as a stabilizing brace.

• *Secondary Grip.* The presence of a secondary grip may indicate that the weapon is not a ''pistol'' because it is not designed to be held and fired by one hand.

• *Sights and Scopes.* Incorporation of sights or scopes that possess eye relief incompatible with one-handed firing may indicate that the weapon is not a ''pistol'' because they are designed to be used from a shoulder-fire position and are incompatible for the single-handed shooting that arm braces are designed and intended.

• *Peripheral Accessories.* Installation of peripheral accessories commonly found on rifles or shotguns that may indicate that the firearm is not designed and intended to be held and fired with one hand. This includes, but is not limited to, the installation of bipods/monopods that improve the accuracy of heavy weapons designed and intended to be fired from the shoulder; or the inclusion of a magazine or drum that accepts so many cartridges that it increases the overall weight of the firearm to a degree that it is impractical to fire the weapon with one hand even with the assistance of a stabilizing brace.

These factors are based on known stabilizing braces and similar attachments. No single factor or combination of factors is necessarily dispositive, and FATD examines each weapon holistically on a case-by-case basis. Because of changes in design or configuration of a weapon or

---

[8] *See* ATF, Open Letter on the Redesign of ''Stabilizing Braces,'' (Jan. 16, 2015); and an open letter to industry counsel clarifying the 2015 Open Letter, *see* Marvin G. Richardson, Assistant Director, ATF Enforcement Programs & Services, 90000:GM, 5000 (Mar. 21, 2017) (made widely available to the public on various websites, for example, see *https://johnpierceesq.com/wp-content/uploads/2017/03/ATF-Letter-March-21-2017.pdf* and *https://www.sigsauer.com/wp-content/uploads/2017/04/atf-letter-march-21-2017.pdf*).

attachment, as well as future changes in technology, this list is not exhaustive and other factors may become relevant to a weapon's classification. Moreover, in addition to the objective design features of a submitted sample, FATD also considers the marketing of both the item and the firearm to which it is attached, compared to the manufacturer's stated intent when submitting an item. FATD has found that manufacturers sometimes assert that a device is a "*stabilizing brace*" when submitting a firearm for classification. The same manufacturers will then advertise their products as devices that permit customers to fire their "*pistols*" from the shoulder—that is, making a "short-barreled rifle"— without complying with the requirements of the NFA. This is far from the "incidental" use of an arm brace as a shouldering device as described in ATF's 2017 guidance (see footnote 8), but is instead marketing material that directly contradicts the purpose or intent that the manufacturer conveyed to ATF. Although not a determinative factor, the actual use by members of the firearms industry, firearm writers, and the general public may provide further indication of the design and intent. These sources provide insight into the ways that manufacturers market their products. Finally, although the above are the most common objective factors that demonstrate the design and intent of a manufacturer or maker, other factors may be relevant. For example, if FATD classified a firearm with an arm brace as a "pistol," that classification would be subject to FATD's review if the manufacturer sold the product with the instruction that the weapon is actually designed and intended to be fired from the shoulder.

This compilation of relevant objective factors is consistent with what has been applied in evaluations of firearms with an attached stabilizing brace previously conducted by FATD at the request of the firearms industry. By setting out these factors in this notice, ATF is ensuring members of the public are equally aware of the criteria when considering the making or purchase of a firearm. As explained above, FATD's classifications allow industry members to plan, develop, and distribute products that comply with the law, and thereby reduce their risk of incurring criminal or civil penalties, or potentially costly corrective actions, including a possible recall by the manufacturer.

In order to ensure consistency in classifying firearms, FATD uses the following procedure. A firearm voluntarily submitted to FTISB for classification is assigned to a Firearms Enforcement Officer ("FEO") who evaluates the firearm. This may include disassembly, test-firing, or other processes necessary to determine whether a submission falls under the purview of the NFA, GCA, or AECA. That FEO produces a draft report and that report is peer reviewed by another qualified FEO, and includes a review of the steps taken in the evaluation, the analysis and the conclusions. Therefore, it is not the case that a single FEO is solely responsible for a particular classification. Because of this, prior to any necessary legal review and before the classification letter is signed and finalized, at least two FEOs have reviewed the submission. No classification will depend upon the physical attributes of a particular FEO including, for example, whether a firearm is too heavy to be held and fired in a single hand by the individual examiner, as all FEOs apply the evaluation factors objectively, not subjectively, based on the objective features of the submission that demonstrate, in the present case, the design of the weapon and the intent of the maker or manufacturer. After the review by two FEOs, the classification is then reviewed by the Chief, FTISB, to further ensure consistency.

On August 19, 2020, the Department of Justice (DOJ) published regulations defining "guidance documents" and the required procedures that the Department and its components must follow to issue guidance documents consistent with Executive Order 13891. *See* 28 CFR 50.26. The regulation defines the term "guidance document" as "an agency statement of general applicability, intended to have future effect on the behavior of regulated parties that sets forth (i) a policy on a statutory, regulatory, or technical issue, or (ii) an interpretation of a statute or regulation." 28 CFR 50.26(a)(1). As ATF started to receive samples of firearms configured with an arm brace for classification, FATD applied objective factors to interpret the NFA and GCA definitions of "firearm" to determine when attachment of an accessory purporting to be a stabilizing brace to a specific firearm results in a configuration subject to the provisions of the NFA. Due to the rise of firearms configured in this manner and a correlating increase in the number of classification requests from industry, ATF is publishing this list of objective factors it considers when classifying such firearms, including an explanation as to why those factors are important, to aid industry and the public in understanding ATF's interpretation and application of the NFA and GCA definition of "firearm" when evaluating these types of firearms configurations. Although there is no requirement that a guidance document be published for notice and comment,[9] ATF has decided to publish the proposed objective factors in the **Federal Register** for a brief comment period, given the public interest surrounding these issues. ATF will consider the comments it receives before finalizing this guidance.

ATF recognizes that before issuance of this notice, there was a misunderstanding by some that a pistol assembled with any item purported to be a stabilizing brace still would be considered a "pistol" regardless of other characteristics. The objective factors discussed here make clear that while some stabilizing braces may lawfully be used on pistols without bringing the firearm within the purview of the NFA, that is not necessarily the case for every "pistol" because some firearms are configured or have characteristics such that they meet the statutory definition of "rifle or shotgun" (hereafter, "affected stabilizer-equipped firearms"). ATF understands that most individuals who acquired affected stabilizer-equipped firearms did so in good-faith reliance on representations, made by those selling the stabilizing braces or the firearms, that those firearms were *not* subject to the NFA.

Consequently, following issuance of this notice, ATF and DOJ plan to implement a separate process by which current possessors of affected stabilizer-equipped firearms may choose to register such firearms to be compliant with the NFA. As part of that process, ATF plans to expedite processing of these applications, and ATF has been informed that the Attorney General plans retroactively to exempt such firearms from the collection of NFA taxes if they were made or acquired, prior to the publication of this notice, in good faith. This separate process may include the following options: registering the firearm in compliance with the NFA (described above), permanently removing the stabilizing brace from the firearm and disposing of it, replacing the barrel of the firearm (16'' or greater for a rifle, or 18'' or greater for a shotgun), surrendering the firearm to ATF, or destroying the firearm.

---

[9] Only "significant guidance documents," as defined 28 CFR 50.27(a)(2), are required to be made available for public notice and comment for at least 30 days, except when the Department or component finds that notice and public comment are impracticable, unnecessary, or contrary to the public interest. 28 CFR 50.27(c)(2)(iii).

Until that process is separately implemented, and absent a substantial public safety concern, ATF will exercise its enforcement discretion not to enforce the registration provisions of the NFA against any person who, before publication of this notice, in good faith acquired, transferred, made, manufactured, or possessed an affected stabilizer-equipped firearms.

This document is not an administrative determination that any particular weapon equipped with a stabilizing arm brace is a ''firearm'' under the NFA. To the extent that the ATF Director subsequently issues such a determination, the ATF Director, at the direction of the Attorney General, plans retroactively to exempt such firearms from the collection of NFA taxes, provided those firearms were made or acquired in good faith prior to the publication of this notice. *See* 26 U.S.C. 7805.

The contents of this document do not have the force and effect of law and are not meant to bind the public in any way. This document is intended only to provide clarity to the public regarding existing requirements under the law or Department policies. This guidance does not alter in any way the Department's authority to enforce federal law and is not intended to, does not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party in any matter civil or criminal.

**Public Participation**

*A. Comments Sought*

ATF is accepting comments from all interested persons on the use of the objective factors listed in this document. All comments must reference this document's docket number, ATF 2020R–10, be legible, and include the commenter's complete first and last name and full mailing address. ATF will not consider, or respond to, comments that do not meet these requirements or comments containing excessive profanity. Comments that do not meet these criteria will not be considered. ATF will retain anonymous comments and those containing excessive profanity as part of this administrative record, but will not publish such documents on *www.regulations.gov.* ATF will treat all comments as originals and will not acknowledge receipt of comments. In addition, if ATF cannot read your comment due to technical difficulties and cannot contact you for clarification, ATF may not be able to consider your comment.

ATF will carefully consider all comments, as appropriate, received on or before the closing date, and will give comments after that date the same consideration if practical to do so, but assurance of consideration cannot be given except as to comments received on or before the closing date.

*B. Confidentiality*

ATF will make all comments meeting the requirements of this section, whether submitted electronically or on paper, available for public viewing at ATF and on the internet through the Federal eRulemaking Portal, and subject to the Freedom of Information Act (5 U.S.C. 552). Commenters who do not want their name or other personal identifying information posted on the internet should submit comments by mail or facsimile, along with a separate cover sheet containing their personal identifying information. Both the cover sheet and comment must reference this docket number (2020R–10). For comments submitted by mail or facsimile, information contained on the cover sheet will not appear when posted on the internet but any personal identifying information that appears within a comment will not be redacted by ATF and it will appear on the internet.

A commenter may submit to ATF information identified as proprietary or confidential business information. The commenter shall place any portion of a comment that is proprietary or confidential business information under law on pages separate from the balance of the comment with each page prominently marked ''PROPRIETARY OR CONFIDENTIAL BUSINESS INFORMATION'' at the top of the page.

ATF will not make proprietary or confidential business information submitted in compliance with these instructions available when disclosing the comments that it received, but will disclose that the commenter provided proprietary or confidential business information that ATF is holding in a separate file to which the public does not have access. If ATF receives a request to examine or copy this information, it will treat it as any other request under the Freedom of Information Act (5 U.S.C. 552). In addition, ATF will disclose such proprietary or confidential business information to the extent required by other legal process.

*C. Submitting Comments*

Submit comments in any of three ways (but do not submit the same comment multiple times or by more than one method). Hand-delivered comments will not be accepted.

• *Federal eRulemaking Portal:* ATF recommends that you submit your comments to ATF via the Federal eRulemaking portal at *www.regulations.gov* and follow the instructions. Comments will be posted within a few days of being submitted. However, if large volumes of comments are being processed simultaneously, your comment may not be viewable for up to several weeks. Please keep the comment tracking number that is provided after you have successfully uploaded your comment.

• *Mail:* Send written comments to the address listed in **ADDRESSES** section of this document. Written comments must appear in minimum 12-point font size (.17 inches), include the commenter's first and last name and full mailing address, be signed, and may be of any length.

• *Facsimile:* Submit comments by facsimile transmission to (202) 648–9741. Faxed comments must:

1. Be legible and appear in minimum 12-point font size (.17 inches);
2. Be 8 ½″ x 11″ paper;
3. Be signed and contain the commenter's complete first and last name and full mailing address; and
4. Be no more than five pages long.

**Regina Lombardo,**
*Acting Director.*
[FR Doc. 2020–27857 Filed 12–17–20; 8:45 am]
**BILLING CODE 4410–FY–P**

## DEPARTMENT OF JUSTICE

**Notice of Extension of Public Comment Period for Proposed Consent Decree Pursuant To the Comprehensive Environmental Response, Compensation, And Liability Act**

On December 2, 2020, the Department of Justice lodged a proposed Consent Decree (''Consent Decree'') in the United States District Court for the Northern District of Alabama (Eastern Division), in the lawsuit entitled the *United States of America* v. *Pharmacia, LLC and Solutia, Inc.,* Civil Action No. 1:02–CV–0749 (KOB).

This Consent Decree represents a settlement of certain claims of the United States (''Plaintiff'') against Pharmacia, LLC and Solutia, Inc. (''Defendants'') under Sections 106, 107, and 113 of the Comprehensive Environmental Response, Compensation, and Liability Act (''CERCLA''), 42 U.S.C. 9606, 9607, and 9613, relating to the Anniston PCB Hazardous Waste Site (''Site'') located in and around Anniston, Alabama. Under the proposed Consent Decree, the