# Exhibit H

# Congress of the United States
## Washington, DC 20515

June 16, 2020

The Honorable William Barr  
Attorney General  
Department of Justice  
950 Pennsylvania Avenue NW  
Washington DC 20530

The Honorable Regina Lombardo  
Acting Director  
Bureau of Alcohol, Tobacco, Firearms, and Explosives  
99 New York Avenue NE  
Washington DC 20226

Dear Attorney General Barr and Acting Director Lombardo:

We are deeply concerned about the Bureau of Alcohol, Tobacco, Firearms and Explosives' ("ATF") practice of relying on arbitrary, non-public standards to promulgate general firearms policy hidden from public scrutiny and awareness. This practice not only burdens the Second Amendment rights of law-abiding American citizens but has recently been used by ATF to stifle innovation within the firearms industry and prosecute unwitting firearm owners. Such practice is not only inconsistent with the letter of the law, it creates a remarkably untenable situation wherein even those most knowledgeable about matters of law, much less the general public, have no idea what ATF considers to be lawful and unlawful. Further, such arbitrary Agency action without any solid foundation in law has the potential to create overnight felons of millions of law-abiding gun owners, firearm manufacturers and Federal Firearms Licensees all without ever notifying those individuals that the ATF has — in secret — come up with a novel interpretation of law without proper comment, review or notice. This leads to a dangerous violation of citizens' Due Process rights.

One prime example of this practice is the Agency's efforts to restrict the use of pistols affixed with accessories known as arm braces. Arm braces are an accessory in common usage, designed and intended to assist shooters with limited mobility by securing pistols to their forearm, thereby adding an additional point of support to ensure safety and accuracy in operation. These braces provide a second point of contact between the shooter and the firearm: 1) the hand gripping the frame of the pistol, and 2) the brace attached to the shooters forearm. Additionally, it is also common that braces may be used even more effectively by providing a third point of contact between the shooter and the firearm. For example: 1) the shooters hand gripping the frame of the pistol 2) the brace attached to the shooters forearm and 3) use of a shooting rest or shooting sticks. The brace concept was inspired by the needs of disabled combat veterans who, although still enjoying recreational shooting, could not reliably control heavy pistols without assistance.

ATF initially welcomed the advent of pistol arm braces. In 2012, ATF correctly determined that the attachment of arm braces to large pistol platforms does not constitute the manufacture of a short-barreled rifle. This determination, consistent with law, clarified that attachment of a pistol-affixed arm brace did not constitute the making of a Short Barreled Rifle (SBR) subject to registration requirements under the National Firearms Act ("NFA"), 26 U.S.C. §§ 5801–5872, and made these

important safety tools more readily available to those who need them. Central to ATF's determination was its finding that arm braces are not synonymous with shoulder stocks and thus not designed or intended to be fired from the shoulder. Since ATF's initial determination, over two million arm braces have been sold to gun owners. Additionally, hundreds of firearm manufacturers have sold over one million firearms pre-configured with arm braces.

Despite initially welcoming the introduction of pistol arm braces, it has come to our attention that ATF is now attempting to restrict some of the most popular arm brace configurations by creating non-public standards that are not based in statute or regulation. For example, in determining whether an item is an arm brace or stock, ATF has, through private letters, created an inexhaustive list of what it considers "objective design features." With no basis in law, one of the "indicators" chosen to make these determinations is "length of pull," which is the distance from the rear of the stabilizing brace to the trigger. Unbeknownst to the general public, ATF has ordained in private determination letters that it considers "any firearm with a 'length of pull' over 13-1/2 inches to be designed to be fired from the shoulder," thereby making it a short-barreled rifle. However, ATF has also privately proclaimed that even firearms under this length of pull can be classified as a short-barreled rifle, if ATF identifies other (and often unspecified) applicable "indicators." It is not clear what authority ATF has to establish these hidden standards.

Even more troubling are reports that these non-public standards are being used to criminally prosecute unsuspecting gun owners. Given ATF's refusal to explain these standards, it is impossible for the public to comply with ATF's ever-changing body of secret law. Some unwitting manufacturers, who supposedly failed to comply with these hidden standards, have already been forced by ATF to recall thousands of firearms for destruction from innocent customers. Other companies are currently being threatened by ATF to halt sales and recall existing products or face criminal and civil penalties. To criminally charge an individual or threaten a company based on one ATF employee's opinion of whether an arm brace shares enough unpublished "design features" with a shoulder stock is an appalling abuse of power and shows a blatant disregard for due process.

We understand that ATF is currently considering restricting one arm brace model owned by over 700,000 Americans, despite it being functionally no different from the more than ten arm brace designs already approved by ATF. Were ATF allowed to proceed with issuing this determination letter or others, close to one million law abiding Americans could be made felons overnight.

Accordingly, we respectfully request responses to the following questions:

1. What specific criteria does ATF use to determine whether a firearm is designed and intended to be fired from the shoulder?

2. What specific ATF publications are available for Americans to determine whether their firearm is designed and intended to be fired from the shoulder?

3. How many firearms with affixed arm braces have been evaluated by the Firearms and Ammunition Technology Division in support of other law enforcement agencies or criminal prosecutions?

We strongly urge ATF to cease taking any actions and reconsider or rescind any secret determinations which call into question the legality of firearms owned by millions of law-abiding Americans. Thank you for your attention to this matter.

Sincerely,

Matt Gaetz
Member of Congress

Neal P. Dunn, M.D.
Member of Congress

Bill Posey
Member of Congress

W. Gregory Steube
Member of Congress

John Rutherford
Member of Congress

Ted S. Yoho, DVM
Member of Congress

Daniel Webster
Member of Congress

CC: The Honorable Jeffrey Rosen
Deputy Attorney General