IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECOND AMENDMENT FOUNDATION, INC., RAINIER ARMS, LLC, SAMUEL WALLEY, and WILLIAM GREEN, | § § § § | |
| | § | |
| Plaintiffs, | § § | |
| v. | § § | Case No. 3:21-cv-00116-B |
| BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, STEVEN M. DETTELBACH, in his official capacity as Director of the Bureau of Alcohol, Tobacco, Firearms, and Explosives, UNITED STATES DEPARTMENT OF JUSTICE, and MERRICK B. GARLAND, in his official capacity as Attorney General of the United States, | § § § § § § § § § § | |
| Defendants. | | |

**Plaintiffs' First Amended Complaint**

**Table of Contents**

Introduction ....................................................................................................................3

I.      Parties .................................................................................................................4

        A.      Second Amendment Foundation, Inc. ........................................................4

        B.      Ranier Arms ...............................................................................................5

        C.      Individual Plaintiffs. ..................................................................................7

        D.      The Agencies .............................................................................................8

II.     Jurisdiction..........................................................................................................8

III.    Venue ...................................................................................................................9

IV.     Facts.....................................................................................................................9

        A.      Congress made the "rifle" definition extremely consequential. ...............9

        B.      Brace-equipped pistols are still "pistols"................................................12

        C.      ATF used to deem brace-equipped pistols still "pistols" .......................12

        D.      The Agencies changed positions dramatically, for no good reason. .......13

        E.      The Arm Brace Rule deems brace-equipped pistols "rifles".................15

V.      Causes of Action ...............................................................................................17

        A.      Count One: APA § 706(2)(A), (C)—Statutory Contradiction ................17

        B.      Count Two: APA § 706(2)(A)—Failure to consider................................19

        C.      Count Three: APA § 706(2)(A), (C)—Insufficient notice ....................20

        D.      Count Four: APA § 706(2)(A), (C)—Change of position.....................21

        E.      Count Five: APA § 706(2)(B)—Right to Keep and Bear Arms.............22

        F.      Count Six: APA § 706(2)(B)—Due Process Clause ..............................23

        G.      Count Seven: APA § 706(2)(A), (C)—Unlawful Effective Date.........25

VI.     Requested Relief................................................................................................26

## Introduction

1.    The Second Amendment Foundation, Rainer Arms, and individual plaintiffs hereby challenge President Biden's new "Arm Brace Rule," *Factoring Criteria for Firearms With Attached "Stabilizing Braces,"* 88 Fed. Reg. 6478 (Jan. 31, 2023), as violating the Administrative Procedure Act, the Due Process Clause, and the Second Amendment.  The Court should hold the Arm Brace Rule unlawful and halt it both immediately and permanently.

2.    The Arm Brace Rule redefines federal firearm law's "rifles"/"pistol" distinction. This has huge implications because Congress treats "rifles" far more harshly than "pistols." Whereas the Gun Control Act of 1968 applies to most "rifles" and "pistols" alike, with proscriptions that are plenty onerous, the National Firearms Act applies to short-barreled "rifles" but not "pistols," with proscriptions that are far more onerous.  Given these high stakes, any "rifle" definition must be clear, logical, and of course constitutional.  The Arm Brace Rule is not.

3.    Congress defined "rifle" with a simple provision that the Biden Administration thinks is too kind to the Second Amendment.  The President wants more guns deemed "rifles" and not "pistols" so that administrative enforcers can wield the more onerous NFA more often. So the President took the law into his own hands, promulgating with the Arm Brace Rule a sweeping new "rifle" definition that covers far more than Congress or anyone else anticipated.

4.    With the stroke of a pen, the Arm Brace Rule's capacious "rifle" redefinition turns millions of law-abiding "pistol" owners into lawbreaking short-barreled "rifle" owners. Exactly how many millions of new criminals this change creates is unknown, since the Arm Brace Rule uses a bewildering six-factor test that no normal American can comprehend.  The new "rifle" definition turns not on objective properties that citizens can predict, but on subjective conjecture about a firearm's "likely use" and the meaning of marketing materials to bureaucrats in DC.  It exceeds what Congress intended and exceeds what the Constitution allows.

5.     May 31, 2023 is the Arm Brace Rule's "compliance date."  But severe irreparable harm is mounting already.  Individuals holding what has just now been deemed a short-barreled "rifle" are preparing to either surrender their firearm entirely or bow to the NFA's extraordinarily onerous demands.  Meanwhile, for the businesses that deal in arm braces and brace-equipped pistols, the Arm Brace Rule is already cutting off critical streams of income, nullifying customer good will, and forcing compliance costs that will never be reclaimed.

## I.     Parties

### A.     Second Amendment Foundation, Inc.

6.     Plaintiff Second Amendment Foundation, Inc. ("SAF") is a non-profit membership organization incorporated under the laws of the State of Washington.  SAF's principal place of business is in Bellevue, Washington.  It is governed by a board of trustees and has members nationwide and in this district.

7.     SAF promotes the right to keep and bear arms by supporting education, research, publications, and legal efforts about the Constitution's right to privately own and possess firearms and the consequences of gun control.  SAF has over 720,000 members and supporters, and has worked to promote Second Amendment rights throughout the United States since 1974.

8.     SAF brings this action on behalf of itself.  SAF also brings this action on behalf of its members because at least one of its members would have standing to sue in his own right, the interests the suit seeks to vindicate are germane to SAF's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

9.     A substantial number of SAF members—including the Individual Plaintiffs— have a concrete and particularized interest in the Arm Brace Rule's treatment of brace-equipped pistols.  Some these SAF members use such a firearm's arm brace only as an arm brace because of limb-related physical disabilities that inhibit the safe and effective firearm use otherwise.

4

Other of these SAF members do not have limb-related disabilities and use such a firearm's arm brace only as an arm brace to facilitate safe and effective firearm use that cannot be achieved otherwise.  All of these SAF members have in the past and/or would in the immediate future legally acquire from sellers such as Ranier Arms, LLC either an arm brace or a brace-equipped pistol of the kind that is currently offered.

10.     All of these SAF members are fully eligible to possess firearms under federal and state law.  All of these SAF members use firearms for only traditionally lawful purposes, such as self-defense within the home.

**B.     Ranier Arms**

11.     Plaintiff Rainier Arms, LLC ("Ranier") is a private corporation headquartered and with principal place of business in the State of Washington.  Ranier is in the business of selling a wide variety of firearms and firearm parts and accessories to customers nationwide, including customers in this District.  Most of Ranier's business is conducted via the internet.

12.     Ranier sells arm braces and brace-equipped firearms ("arm brace products").  This aspect of Ranier's business is longstanding, substantial in economic magnitude, a significant driver of customer good will, and critical to the company's overall financial health.

13.     Ranier sells its arm brace products to customers that use the arm brace only as an arm brace because of limb-related physical disabilities that inhibit the safe and effective firearm use otherwise.   Ranier also sells its arm brace products to customers without limb-related disabilities that use an arm brace only as an arm brace to facilitate safe and effective firearm use that cannot be otherwise achieved.

14.     When relevant, Ranier's arm brace product listings make clear that Ranier's arm brace products are designed and intended only for the arm brace to be used as an arm brace to

5

provide a more stable firearm platform; that Ranier's arm brace products are neither designed nor intended to entail any shouldering of the firearm; and that, as configuration changes may alter the classification of a particular firearm, the user bears sole responsibility for determining the correct application of state and federal law to Ranier's arm brace products.

15.     Ranier's arm brace products are designed and manufactured by well-established third-party firms such as A3 Tactical and SB Tactical, whose current arm brace offerings are generally representative of Ranier's arm brace products.  Specific representative examples of Ranier's arm brace products include the "SB TACTICAL SOB BRACE BLACK," the "SB TACTICAL SBA3 PISTOL STABILIZING BRACE," the "SB TACTICAL SBM47 AK47/74 BRACE," the "A3 TACTICAL ALUMINUM OFFSET MODULAR SIDE FOLDING STEADY ARM BRACE," and the "SIG SAUER MCX / MPX PIVOTING CONTOUR BRACE."

16.     The Arm Brace Rule injures Ranier concretely and substantially.  In particular, the Arm Brace Rule injures Ranier by imposing substantial economic losses.  Immediately upon issuance, the Arm Brace Rule deprived Ranier of substantial profits by causing customers to cancel then-pending orders; and ever since its issuance, the Arm Brace Rule has deprived Ranier of substantial profits by making otherwise willing customers either legally ineligible or practical incapable of using Ranier's arm brace products.  The Arm Brace Rule also injures Ranier by depriving it of customer good will, as its products have now arguably triggered onerous federal firearms regulations.  The Arm Brace Rule also injured and continues to injure Ranier by forcing it to incur substantial unrecoverable compliance costs.

**C.   Individual Plaintiffs.**

17.     The "Individual Plaintiffs" are law-abiding American citizens and SAF members that support the United States Constitution's Second Amendment right to keep and bear Arms.

18.     The Individual Plaintiffs possess brace-equipped pistols and use the arm brace only as an arm brace because of limb-related physical disabilities that inhibit the safe and effective firearm use otherwise.  They bear these firearms by using one arm in conjunction with the arm brace, facilitating the safe and effective firearm that would not occur otherwise.  They are fully eligible to possess firearms under state and federal law.  They use firearms for only traditionally lawful purposes, such as self-defense within the home.

19.     The Arm Brace Rule injures the Individual Plaintiffs by illegally subjecting the brace-equipped firearms they already own to NFA requirements that had never before been imposed.  For the Individual Plaintiffs, compliance with the NFA requirements that the Arm Brace Rule imposes is too costly, too onerous, and too impractical.  They will now be forced to suffer either the irreparable injury of obligatory NFA compliance or the irreparable injury of surrendering firearms that the Second Amendment gives them a right to keep.

20.     Individual Plaintiff Samuel Walley is a natural person and a citizen of the United States and the State of Georgia.  He is a disabled veteran of the United States Army who suffered a traumatic injury in 2012 outside Helmand Province, Afghanistan from an improvised explosive device that resulted in the partial amputation of his right leg and left arm and a salvaged left leg limb.  He is a SAF member.

21.     Individual Plaintiff William Green is a natural person and a citizen of the United States and the State of Texas. He resides in Rockwall County, Texas.  He is a police officer who

was seriously injured in the line of duty, with permanent nerve damage affecting his right hand. Green is a SAF member.

### D.    The Agencies

22.    Defendants are the "Agencies": the United States Department of Justice, the Attorney General of the United States, the Bureau of Alcohol, Tobacco, Firearms and Explosives, and the Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives.

23.    Defendant the United States Department of Justice is, and was at all relevant times, an executive department of the United States subject to the Administrative Procedure Act. The Department of Justice is headquartered in Washington DC.

24.    Defendant Merrick B. Garland is the Attorney General of the United States.  He is sued in his official capacity.  He oversees the Department of Justice and its components.  He is responsible for the federal conduct that is the subject of this action and for the related acts and omissions alleged herein.

25.    Defendant the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") is, and was at all relevant times, a component of the Department of Justice subject to the Administrative Procedure Act.  ATF is headquartered in Washington DC.

26.    Defendant Steven M. Dettelback is the Director of the ATF.  He is sued in his official capacity.  He is responsible for the federal conduct that is the subject of this action and for the related acts and omissions alleged herein.

## II.    Jurisdiction

27.    28 U.S.C. § 1331 supplies the Court with original federal question jurisdiction over this action because it arises under the Constitution and laws of the United States.  The action so arises because it seeks declaratory, injunctive, and other relief pursuant to the Constitution of the United States of America, the Administrative Procedure Act, 5 U.S.C

§§ 701-706, the All Writs Act, 28 U.S.C. § 1651(a), and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

28.     An active, justiciable controversy exists amongst the parties about whether the promulgation of *Factoring Criteria for Firearms With Attached "Stabilizing Braces,"* 88 Fed. Reg. 6478 (Jan. 31, 2023) (the "Arm Brace Rule"), complied with the Administrative Procedure Act's rulemaking requirements, 5 U.S.C. §§ 551-559, and the United States Constitution's Second and Fifth Amendments. Declaratory relief would resolve this controversy and eliminate the burden imposed on Plaintiffs stemming therefrom.

## III.   Venue

29.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(e)(1)(B) and (C). A substantial part of the events giving rise to these claims occurred in this district. A substantial part of the property that is the subject of the action is situated in this district.

## IV.   Facts

### A.   Congress made the "rifle" definition extremely consequential.

30.     Federal firearms law consists of two main statutory schemes, the Gun Control Act of 1968, Pub. L. 90–618, 82 Stat. 1213 ("GCA") (codified as amended mostly at 18 U.S.C. ch. 44), and the National Firearms Act of 1934, Pub. L. 73–474, 48 Stat. 1236 (1934) ("NFA") (codified as amended mostly at 26 U.S.C. ch. 53). The GCA and NFA differ markedly, both in what they regulate and how they regulate it. The exact legal regime governing firearm depends largely on which of these statutory schemes applies to it. Definitional thresholds are critical.

31.     The GCA's threshold "firearm" definition is broader than the NFA's. The GCA defines "firearm" to generally cover both a "rifle" *and* a "handgun" (aka "pistol"). *See* 18 U.S.C. § 921(a)(3) ("The term "firearm" means (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B)

the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device."). To this broad set of "firearms," generally including most "rifles" and "handguns," Congress in the GCA opted to apply a wide variety of legal restrictions that are substantial but not as onerous as the NFA.

32.    The NFA's threshold "firearm" definition is narrower than the GCA's. The NFA defines "firearm" to cover only short-barreled "rifles" and a few other discrete items—but not "pistols." *See* 26 U.S.C. § 5845(a) ("The term "firearm" means (1) a shotgun having a barrel or barrels of less than 18 inches in length; (2) a weapon made from a shotgun if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 18 inches in length; (3) a rifle having a barrel or barrels of less than 16 inches in length; (4) a weapon made from a rifle if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 16 inches in length; (5) any other weapon, as defined in subsection (e); (6) a machinegun; (7) any silencer (as defined in section 921 of title 18, United States Code); and (8) a destructive device."). To this narrow set of "firearms," including short-barreled "rifles" but *not* "pistols," Congress in the NFA opted to impose a set of legal restrictions that are far more onerous than the GCA alone.

33.    The legal and regulatory consequences of NFA coverage are very onerous. NFA firearm makers must submit an application to ATF and pay a tax. 26 U.S.C. § 5822; 27 C.F.R. §§ 479.61, 479.62. NFA firearm transfers must also submit an application and pay an additional tax. 26 U.S.C. § 5812; 27 C.F.R. §§ 479.66, 479.84. NFA firearm recipients must provide ATF with fingerprints and notify a local police department of the transfer. 26 U.S.C. § 5812; 27 C.F.R. §§ 479.84(c), 479.85. NFA firearm possessors must register themselves in a federal firearm database. 26 U.S.C. § 5841; 28 C.F.R. § 0.131(d); 27 C.F.R. §§ 479.101, 479.102.

Violations of such NFA requirements can be punished with imprisonment for up to ten years and fines up to ten thousand dollars. 26 U.S.C. § 5871.

34.     "Rifle" status therefore carries huge legal significance.  A short-barreled firearm that Congress deems a "handgun" or "pistol" generally need only comply with the GCA (which itself has plenty of onerous provisions, *see, e.g.*, 18 U.S.C. § 922(b)(4); 27 C.F.R. § 478.98).  But a short-barreled firearm that constitutes an NFA "rifle" and not a "handgun" or "pistol" must comply with both the GCA and the extraordinarily consequences of NFA coverage as well.

35.     "Rifle" is defined almost identically by the GCA and NFA.  Both statutes make the "rifle" definition turn on whether the weapon is "designed," "made," and "intended" to be "fired from the shoulder."  The GCA defines "rifle" this way in 18 U.S.C. § 921:

> The term "rifle" means a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of an explosive to fire only a single projectile through a rifled bore for each single pull of the trigger.

18 U.S.C. § 921(a)(7).  The NFA likewise defines "rifle" this way in26 U.S.C. § 5845(c)::

> The term "rifle" means a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of the explosive in a fixed cartridge to fire only a single projectile through a rifled bore for each single pull of the trigger, and shall include any such weapon which may be readily restored to fire a fixed cartridge.

26 U.S.C. § 5845(c).

36.     "Handgun" is defined by the GCA but not the NFA.  The GCA "handgun" definition turns largely on whether the firearm has a "short stock" and is "designed" to be "held and fired by the use of a single hand":

> (a) As used in this chapter –
> . . .
>         (30)     The term "handgun" means—

> (A)    a firearm which has a short stock and is designed to be held and fired by the use of a single hand; and
>
> (B)    any combination of parts from which a firearm described in subparagraph (A) can be assembled.

18 U.S.C. § 921 (a)(30).

37.    On this definitional spectrum, many modern firearms in common usage occupy a position that is close to the "rifle"/"pistol" divide.  Among them are brace-equipped pistols.

**B.    Brace-equipped pistols are still "pistols"**

38.    "Arm braces," also known as a "stabilizing arm braces" or "stabilizing braces," are a mainstream firearm accessory in common usage.  They function by letting the bearer stabilize the firearm against the forearm of the same arm that is holding the firearm in the main.

39.    Originally developed for use by people with limb-related disabilities, arm braces are now used both by those with and without disabilities to facilitate safe and accurate firearm use that cannot be otherwise achieved.

40.    Millions of brace-equipped pistols exist in America today.  Ranier's arm brace products are representative of what is in common use.

**C.    ATF used to deem brace-equipped pistols still "pistols"**

41.    The Arm Brace Rule constitutes a marked departure from the Agencies' past position about whether brace-equipped pistols still "pistols."  For over a decade, the Agencies took the position that brace-equipped pistols did *not* constitute short-barreled "rifles."  Between 2012 and 2014 in particular, ATF issued no fewer than 17 classification letters about one specific arm brace or another, all opining that arm brace designs did *not* convert pistols into short-barreled rifles.  Arm Brace Rule, 88 Fed. Reg. at 6,502 & n.84.

42.     For example, in 2012, ATF issued market-leader SB Tactical a letter concluding that attaching a stabilizing brace "would not alter the classification of a pistol or other firearm" and that "such a firearm *would not be* subject to NFA controls." 88 Fed. Reg. at 6,479.

43.     A similar March 2014 private classification letter determined that shouldering a brace-equipped pistol does not change the classification of the pistol under federal law:

> For the following reasons, we have determined that firing a pistol from the shoulder would **not** cause the pistol to be reclassified as an SBR:
>
> FTB classifies weapons based on their physical design characteristics. While usage/functionality of the weapon does influence the intended design, it is not the sole criterion for determining the classification of a weapon. Generally speaking, we **do not** classify weapons based on how an individual uses a weapon.
>
> FTB has previously determined (see FTB # 99146) that the firing of a weapon from a particular position, such as placing the receiver extension of an AR-15 type pistol on the user's shoulder, does not change the classification of a weapon. Further, certain firearm accessories such as the SIG Stability Brace have not been classified by FTB as shoulder stocks and, therefore, using the brace improperly does not constitute a design change. Using such an accessory improperly would not change the classification of the weapon per Federal law.

ATF Letter to Sergeant Joe Bradley of the Greenwood Police Department, Mar. 5, 2014.

**D.     The Agencies changed positions dramatically, for no good reason.**

44.     Less than a year after the 2014 Classification Letter, in an abrupt about face, ATF issued its "Open Letter on the Redesign of 'Stabilizing Braces'" on January 16, 2015 (the "2015 Open Letter"), completely reversing the position taken in its 2014 Classification Letter.

45.     In its 2015 Open Letter, ATF stated that the use of stabilizing braces, as designed, would not create a short-barreled rifle when attached to a firearm; and that stabilizing braces are perfectly legal accessories for large pistols.  However, the 2015 Open Letter also advised that, because the stabilizing brace was not designed as a shoulder stock, "use" of the device as a

shoulder stock would constitute a "redesign" of the firearm to which it was attached, resulting in the classification of the firearm as a short-barreled rifle subject to the NFA.

46.     In a 2017 classification letter to SB Tactical, ATF acknowledged "that the *Open Letter* may have generated some confusion concerning the analytical framework by which those conclusions were reached." ATF clarified:

> To the extent the January 2015 Open Letter implied or has been construed to hold that incidental, sporadic, or situational "use" of an arm-brace (in its original approved configuration) equipped firearm from a firing position at or near the shoulder was sufficient to constitute "redesign," such interpretations are incorrect and not consistent with ATF's interpretation of the statute or the manner in which it has historically been enforced.

ATF Letter to M. Barnes, Mar. 21, 2017.  The 2017 Classification Letter also stated:

> If, however, the shooter/possessor takes affirmative steps to configure the device for use as a shoulder-stock—for example, configuring the brace so as to permanently affix it to the end of a buffer tube, (thereby creating a length that has no other purpose than to facilitate its use as a stock), removing the arm-strap, or otherwise undermining its ability to be used as a brace—and then in fact shoots the firearm from the shoulder using the accessory as a shoulder stock, that person has objectively "redesigned" the firearm for purposes of the NFA. This conclusion is not based upon the mere fact that the firearm was fired from the shoulder at some point.

*Id.*

47.     Worsening the confusion caused by its 2015 Open Letter, the 2017 Classification Letter did not define "incidental, sporadic, or situational 'use,'" instead leaving it to ATF to decide on a case-by-case basis; and, in other private classification letters, which were posted on the Internet by various companies and individuals, ATF determined that the addition of ridges to the end of a brace, and/or certain other modifications made to a weapon, when present with a brace that is sporadically shouldered may subject a pistol to NFA requirements

48.     On December 18, 2020, ATF published a notice in the Federal Register seeking to impose NFA controls on braces meeting certain "Objective Factors for Classifying Weapons with 'Stabilizing Braces'" (the "2020 Notice"). 85 Fed. Reg. 82,516 (Dec. 18, 2020).  But after

opposition arrived swiftly in the form of 70,000 public comments and admonitions from members of Congress, ATF withdrew the 2020 Notice. *See* 85 Fed. Reg. 86,948 (Dec. 31, 2020). In its Notice of Withdrawal, ATF stated: "The withdrawal of the guidance does not change any law, regulation, or other legally binding requirement." *Id.*

       **E.**    **The Arm Brace Rule deems brace-equipped pistols "rifles"**

      49.    To create what would become the instant Arm Brace Rule, the Agencies in June of 2021 again published a notice of proposed rulemaking titled "Factoring Criteria for Firearms with Attached "'Stabilizing Braces,'" 86 Fed. Reg. 30826 (June 10, 2021). The NPRM inspired over 200,000 overwhelmingly negative comments, making it among the most opposed rules in Agency history.

      50.    On January 31, 2013, the Agencies committed the final agency action at issue by promulgating the Arm Brace Rule, *Factoring Criteria for Firearms With Attached "Stabilizing Braces,"* 88 Fed. Reg. 6478, 6574 (Jan. 31, 2023). The rule's key subjects are 27 C.F.R. § 478.11 and 27 C.F.R. § 479.11, the regulations that defines "rifle" for GCA and NFA purposes.

      51.    Before the Agencies promulgated the Arm Brace Rule, the regulatory "rifle" definitions simply repeated the statutory definitions   Just like the GCA, 18 U.S.C. § 921(a)(7), the Agencies in the prior version of 27 C.F.R. § 478.11 defined "rifle" as follows:

> Rifle. A weapon designed or redesigned, made or remade, and intended to be fired from the shoulder, and designed or redesigned and made or remade to use the energy of an explosive to fire only a single projectile through a rifled bore for each single pull of the trigger.

27 C.F.R. § 478.11 (2022). And just like the NFA, 26 U.S.C. § 5845(c), the Agencies in the prior version of 27 C.F.R. § 479.11 defined "rifle" as follows:

> *Rifle*. A weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of the explosive in a fixed cartridge to fire only a single projectile through

a rifled bore for each single pull of the trigger, and shall include any such weapon which may be readily restored to fire a fixed cartridge.

27 C.F.R. § 479.11.

52.     The Arm Brace Rule brings about a sea change in the "firearm" definition with two key actions.  It wipes the slate clean, officially

53.     First, the Arm Brace Rule expressly invalidates every prior arm brace classification that ATF had issued. Arm Brace Rule, 88 Fed. Reg. at 6,480.

54.     The Arm Brace Rule then overhauls the "rifle" definition of 27 C.F.R. § 478.11 and 27 C.F.R. § 479.11.  It does so by adding (to the sentence mirroring the statutes) two new paragraphs and six subparagraphs:

Rifle. A weapon designed or redesigned, made or remade, and intended to be fired from the shoulder, and designed or redesigned and made or remade to use the energy of an explosive to fire only a single projectile through a rifled bore for each single pull of the trigger.

(1) For purposes of this definition, the term "designed or redesigned, made or remade, and intended to be fired from the shoulder" shall include a weapon that is equipped with an accessory, component, or other rearward attachment (e.g., a "stabilizing brace") that provides surface area that allows the weapon to be fired from the shoulder, provided other factors, as described in paragraph (2), indicate that the weapon is designed, made, and intended to be fired from the shoulder.

(2) When a weapon provides surface area that allows the weapon to be fired from the shoulder, the following factors shall also be considered in determining whether the weapon is designed, made, and intended to be fired from the shoulder:

(i)      Whether the weapon has a weight or length consistent with the weight or length of similarly designed rifles;

(ii)     Whether the weapon has a length of pull, measured from the center of the trigger to the center of the shoulder stock or other rearward accessory, component or attachment (including an adjustable or telescoping attachment with the ability to lock into various positions along a buffer tube, receiver extension, or other attachment method), that is consistent with similarly designed rifles;

16

> (iii)   Whether the weapon is equipped with sights or a scope with eye relief that require the weapon to be fired from the shoulder in order to be used as designed;
>
> (iv)   Whether the surface area that allows the weapon to be fired from the shoulder is created by a buffer tube, receiver extension, or any other accessory, component, or other rearward attachment that is necessary for the cycle of operations;
>
> (v)   The manufacturer's direct and indirect marketing and promotional materials indicating the intended use of the weapon; and
>
> (vi)   Information demonstrating the likely use of the weapon in the general community.

Arm Brace Rule, 88 Fed. Reg. at 6574-75.

55.   The Rule is effective immediately. Arm Brace Rule, 88 Fed. Reg. at 6,478.

56.   May 31, 2023, is the rule's "Compliance date."  Parties with a brace-equipped firearm have until then to either destroy it, permanently modify it, or surrender it. *Id.* at 6480. But this is just an exercise of the Agencies' "enforcement discretion." *Id.* at 6480–81. The Agencies nonetheless have announced that "the rule is immediately effective in that the Department may seek to enforce the NFA's requirements with respect to any new making or new transfer of a weapon with an attached 'stabilizing brace' that constitutes a short-barreled rifle under the NFA." *Id.* at 6481.

## V.   Causes of Action

### A.   Count One: APA § 706(2)(A), (C)—Statutory Contradiction

57.   The Administrative Procedure Act requires courts to "hold unlawful and set aside agency action, findings, and conclusions" that are found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A),  as well as "in excess

of statutory jurisdiction, authority, or limitations, or short of statutory right," 5 U.S.C. § 706(2)(C). These requirements apply to the Arm Brace Rule.

58.     By promulgating the Arm Brace Rule, the Agencies committed a final agency action that was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," § 706(2)(A), as well as "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," § 706(2)(C), because the new regulatory "rifle" definition is inconsistent with the statute at issue. Instead of further *defining* "rifle" in accordance with the GCA and NFA, the Arm Brace Rule *redefines* "rifle" in contradiction of both statutes. The NFA and GCA's statutory "rifle" definitions do not reach brace-equipped pistols.

59.     By promulgating the Arm Brace Rule, the Agencies also committed a final agency action that was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," § 706(2)(A), as well as "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," § 706(2)(C), by contradicting the rule of lenity. The rule of lenity applies here because the statutes at issue are at best grievously ambiguous as to whether the "rifle" definition can cover a brace-equipped pistol; as a result, lenity dictates that Agencies and courts alike are bound to construe Congress's enactment as *not* extending so far. *See Cargill v. Garland*, 57 F.4th 447, 471 (5th Cir. 2023).

60.     Plaintiffs incorporate into this Count all of the complaint's preceding paragraphs.

61.     For this Count, Plaintiffs are entitled to a judgment preliminarily enjoining the Arm Brace Rule, *see* 5 U.S.C. § 705, a judgment holding the Arm Brace Rule unlawful, *see* 5 U.S.C. § 706(2), a judgment setting aside the Arm Brace Rule, *see* 5 U.S.C. § 706(2), and a judgment awarding Plaintiffs their costs and attorney's fees, *see* 5 U.S.C. § 504(a)(1); 28 U.S.C. § 2412(d).

**B.      Count Two: APA § 706(2)(A)—Failure to consider**

62.      The Administrative Procedure Act requires courts to "hold unlawful and set aside agency action, findings, and conclusions" that are found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).  These requirements apply to the Arm Brace Rule.

63.      By promulgating the Arm Brace Rule, the Agencies committed a final agency action that was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," § 706(2)(A), because the Agencies failed to consider all of the relevant factors and data. *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) ("the agency must examine" "relevant factors" and "relevant data").  In particular, the Agencies promulgated this rule without considering the Second Amendment factors and data made relevant by *New York State Rifle & Pistol Ass'n, v. Bruen*, 142 S.Ct. 2111 (2022).  Under *Bruen*, the Agencies had to strictly (without means-ends scrutiny) consider whether "the regulation is consistent with this Nation's historical tradition of firearm regulation."  *Id.* at 2126-32.  Yet no such legally-correct inquiry occurred.  The Agencies did not consider whether the Arm Brace Rule "addresses a general societal problem that has persisted since the 18th century," and if so only whether there is a "lack of a distinctly similar historical regulation addressing that problem."  *Id.*  Nor did the Agencies consider whether "earlier generations addressed the societal problem," and if so only whether they "did so through materially different means."  *Id.*  The Agencies instead infected their Second Amendment analysis with the presumptions of legality and means-ends scrutiny that *Bruen* invalidates.

64.    Plaintiffs incorporate into this Count all of the complaint's preceding paragraphs.

65.    For this Count, Plaintiffs are entitled to a judgment preliminarily enjoining the Arm Brace Rule, *see* 5 U.S.C. § 705, a judgment holding the Arm Brace Rule unlawful, *see* 5 U.S.C. § 706(2), a judgment setting aside the Arm Brace Rule, *see* 5 U.S.C. § 706(2), and a judgment awarding Plaintiffs their costs and attorney's fees, *see* 5 U.S.C. § 504(a)(1); 28 U.S.C. § 2412(d).

**C.    Count Three: APA § 706(2)(A), (C)—Insufficient notice**

66.    The Administrative Procedure Act requires courts to "hold unlawful and set aside agency action, findings, and conclusions" that are found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A),  as well as "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right,"   5 U.S.C. § 706(2)(C).  These requirements apply to the Arm Brace Rule.

67.    By promulgating the Arm Brace Rule, the Agencies committed a final agency action that was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," § 706(2)(A), as well as "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," § 706(2)(C), because the final Arm Brace Rule is not the logical outgrowth of the rule that the Agencies proposed.  "Under the APA, an agency must publish notice of the legal authority for a proposed rule and of the rule's substance or subject matter, 5 U.S.C. § 553(b)(2), (3), and must also provide an opportunity for interested persons to participate in the rulemaking, § 553(c)." *Huawei Techs. USA, Inc. v. FCC*, 2 F.4th 421, 447 (5th Cir. 2021). "Notice suffices if it is a 'logical outgrowth' of the proposed rule, meaning the notice must 'adequately frame the subjects for discussion' such that 'the affected party 'should have anticipated' the agency's final course in light of the initial notice.'" *Id.*  The Agencies violated

the "logical outgrowth" here by failing to fairly acquaint the public such that they could have anticipated the final Arm Brace Rule.

68.     Plaintiffs incorporate into this Count all of the complaint's preceding paragraphs.

69.     For this Count, Plaintiffs are entitled to a judgment preliminarily enjoining the Arm Brace Rule, *see* 5 U.S.C. § 705, a judgment holding the Arm Brace Rule unlawful, *see* 5 U.S.C. § 706(2), a judgment setting aside the Arm Brace Rule, *see* 5 U.S.C. § 706(2), and a judgment awarding Plaintiffs their costs and attorney's fees, *see* 5 U.S.C. § 504(a)(1); 28 U.S.C. § 2412(d).

**D.      Count Four: APA § 706(2)(A), (C)—Change of position**

70.     The Administrative Procedure Act requires courts to "hold unlawful and set aside agency action, findings, and conclusions" that are found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A),  as well as "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right,"   5 U.S.C. § 706(2)(C).  These requirements apply to the Arm Brace Rule.

71.     *Unexplained change of position*:  By promulgating the Arm Brace Rule, the Agencies committed a final agency action that was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," § 706(2)(A), as well as "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," § 706(2)(C), because the Arm Brace Rule commits major policy changes without adequate explanation.  *See, e.g.*, *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 222 (2016) ("Unexplained inconsistency in agency policy is a reason for holding an interpretation to be an arbitrary and capricious change from agency practice.")  Even though the Arm Brace Rule expressly repudiates the Agencies' prior position taken in multiple determinations, no adequate explanation for that change exists.

72.   Plaintiffs incorporate into this Count all of the complaint's preceding paragraphs.

73.   For this Count, Plaintiffs are entitled to a judgment preliminarily enjoining the Arm Brace Rule, *see* 5 U.S.C. § 705, a judgment holding the Arm Brace Rule unlawful, *see* 5 U.S.C. § 706(2), a judgment setting aside the Arm Brace Rule, *see* 5 U.S.C. § 706(2), and a judgment awarding Plaintiffs their costs and attorney's fees, *see* 5 U.S.C. § 504(a)(1); 28 U.S.C. § 2412(d).

### E.   Count Five: APA § 706(2)(B)—Right to Keep and Bear Arms

74.   The Administrative Procedure Act requires courts to "hold unlawful and set aside agency action, findings, and conclusions" that are found to be "contrary to constitutional right, power, privilege, or immunity."   5 U.S.C. § 706(2)(B).   The Second Amendment of the Constitution of the United States forbids laws abridging the individual right to keep and bear Arms.  These requirements apply to the Arm Brace Rule.

75.   By promulgating the Arm Brace Rule and thereby redefining statutory firearm's law's "rifle" term, the Agencies subjected Plaintiffs to an unconstitutional abridgement of Second Amendment rights.  The Arm Brace Rule infringes the individual right to keep and bear Arms and is inconsistent with this Nation's historical tradition of firearm regulation.  As such, it is an unconstitutional abridgement of Second Amendment rights.  *See N.Y. State Rifle & Pistol Ass'n, v. Bruen*, 142 S.Ct. 2111 (2022).  The firearms regulated by the Arm Brace Rule are in common use, are not unusual or dangerous, and there is no historical analog for the severe legal and regulatory burdens placed upon those firearms by the Arm Brace Rule's "rifle" redefinition.

76.   Plaintiffs incorporate into this Count all of the complaint's preceding paragraphs.

77.   For this Count, Plaintiffs are entitled to a judgment preliminarily enjoining the Arm Brace Rule, *see* 5 U.S.C. § 705, a judgment holding the Arm Brace Rule unlawful, *see* 5

U.S.C. § 706(2), a judgment setting aside the Arm Brace Rule, *see* 5 U.S.C. § 706(2), and a judgment awarding Plaintiffs their costs and attorney's fees, *see* 5 U.S.C. § 504(a)(1); 28 U.S.C. § 2412(d).

**F.    Count Six: APA § 706(2)(B)—Due Process Clause**

78.    The Administrative Procedure Act requires courts to "hold unlawful and set aside agency action, findings, and conclusions" that are found to be "contrary to constitutional right, power, privilege, or immunity."  5 U.S.C. § 706(2)(B).  These requirements apply to the Arm Brace Rule.

79.    The Fifth Amendment of the Constitution of the United States forbids deprivations of life, liberty, or property without due process of law.  The Clause's vagueness doctrine is violated by criminal laws that either deny defendants fair notice of what is punishable or invite arbitrary enforcement by lack of standards.  The Arm Brace Rule does both.  It redefines "rifle" with inherently amorphous terms that deny citizens fair notice of what is punishable, and its definition is so inherently subjective that it invites arbitrary enforcement.  The Arm Brace Rule's unconstitutional vagueness stems from, among other things, the following:

> (a)    The Arm Brace Rule says that the "rifle" definition entails assessing whether a brace "provides surface area that allows the weapon to be fired from the shoulder." Arm Brace Rule, 88 Fed. Reg. at 6575.  But the rule does not say, and no reasonable person can reliably infer, what amount of surface area meets that threshold.  The Agencies instead expressly decline "to specify a quantifiable metric for what constitutes surface area that allows for shouldering of the weapon" and will not "attempt to precisely

measure or quantify the surface area." Arm Brace Rule, 88 Fed. Reg. at 6529.

(b)     The Arm Brace Rule says that the "rifle" definition entails assessing whether brace-affixed pistols have a weight, length, and length of pull that are "consistent with" "similarly designed rifles." Arm Brace Rule, 88 Fed. Reg. at 6575.  But the rule does not say, and no reasonable person can reliably infer, what constitutes the requisite "consisten[cy] and "similar[ity]."

(c)     The Arm Brace Rule says that the "rifle" definition entails assessing "marketing and promotional materials."  Arm Brace Rule, 88 Fed. Reg. at 6575.  But the rule does not say, and no reasonable person can reliably infer, which "marketing and promotional materials" this inquiry will focus on and what inferences are to be drawn from them.

(d)     The Arm Brace Rule says that the "rifle" definition entails assessing "[i]nformation demonstrating the likely use of the weapon in the general community."  Arm Brace Rule, 88 Fed. Reg. at 6575.  But the rule does not say, and no reasonable person can reliably infer, what the "general community" is and what its "likely uses" are.

80.     Plaintiffs incorporate into this Count all of the complaint's preceding paragraphs.

81.     For this Count, Plaintiffs are entitled to a judgment preliminarily enjoining the Arm Brace Rule, *see* 5 U.S.C. § 705, a judgment holding the Arm Brace Rule unlawful, *see* 5 U.S.C. § 706(2), a judgment setting aside the Arm Brace Rule, *see* 5 U.S.C. § 706(2), and a judgment awarding Plaintiffs their costs and attorney's fees, *see* 28 U.S.C. § 2412(d).

### G.      Count Seven: APA § 706(2)(A), (C)—Unlawful Effective Date

82.      The Administrative Procedure Act requires courts to "hold unlawful and set aside agency action, findings, and conclusions" that are found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A),  as well as "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right,"   5 U.S.C. § 706(2)(C).  These requirements apply to the Arm Brace Rule.

83.      5 U.S.C. § 553(d) forbids agencies from giving new rules immediate effect unless one of three special exceptions is met.  The Agencies here gave the Arm Brace Rule immediate effect without satisfying any of the 5 U.S.C. § 553(d) exceptions.  The Arm Brace Rule is not a "a substantive rule which grants or recognizes an exemption or relieves a restriction," § 553(d)(1), and is not an "interpretative rule[]" or "statement[] of policy," § 553(d)(2); and its immediate effective date was not "otherwise provided by the agency for good cause found and published with the rule," § 553(d)(2).

84.      This wrongdoing caused real harm.   "Notice-and-comment requirements are intended to ensure public participation in rulemaking, and the thirty-day waiting period is 'intended to give affected parties time to adjust their behavior before the final rule takes effect.'" *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 675 n.15 (9th Cir. 2021).  The Arm Brace Rule's immediate effect deprived all Plaintiffs of that opportunity, inflicting especially egregious economic harms upon the business operations of Plaintiff Rainier Arms, LLC.

85.      Plaintiffs incorporate into this Count all of the complaint's preceding paragraphs.

86.      For this Count, Plaintiffs are entitled to a judgment preliminarily enjoining the Arm Brace Rule, *see* 5 U.S.C. § 705, a judgment holding the Arm Brace Rule unlawful, *see* 5 U.S.C. § 706(2), a judgment setting aside the Arm Brace Rule, *see* 5 U.S.C. § 706(2), and a

judgment awarding Plaintiffs their costs and attorney's fees, *see* 5 U.S.C. § 504(a)(1); 28 U.S.C. § 2412(d).

## VI.    Requested Relief

87.    Plaintiffs request a judgment in their favor as to all claims against the Agencies awarding them all relief they are entitled to.

88.    Plaintiffs request a judgment preliminarily enjoining the Agencies' enforcement of the Arm Brace Rule against Plaintiffs. *See* 5 U.S.C. § 705.

89.    Plaintiffs request a judgment holding the Arm Brace Rule unlawful. *See* 5 U.S.C. § 706(2).

90.    Plaintiffs request a judgment setting aside the Arm Brace Rule. *See* 5 U.S.C. § 706(2).

91.    Plaintiffs request a judgment against the Agencies that awards Plaintiffs their costs, including reasonable attorney fees. *See* 5 U.S.C. § 504(a)(1); 28 U.S.C. § 2412(d).

Respectfully submitted,

BECK REDDEN LLP
By /s/ *Chad Flores*
Chad Flores
cflores@beckredden.com
State Bar No. 24059759
1221 McKinney St., Suite 4500
Houston, TX 77010
(713) 951-3700 | (713) 952-3720 (fax)