IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SECOND AMENDMENT FOUNDATION, INC., RAINIER ARMS, LLC, SAMUEL WALLEY, and WILLIAM GREEN,<br><br>Plaintiffs,<br><br>v.<br><br>BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, STEVEN M. DETTELBACH, in his official capacity as Director of the Bureau of Alcohol, Tobacco, Firearms, and Explosives, UNITED STATES DEPARTMENT OF JUSTICE, and MERRICK B. GARLAND, in his official capacity as Attorney General of the United States,<br><br>Defendants. | Case No. 3:21-cv-00116-B |

**Plaintiffs' Reply Brief in Support of**
**Plaintiffs' Motion for a Preliminary Injunction**

**Argument**

I.   **The Court should rule as soon as is practicable and well before May 31.**

Plaintiffs' motion for a preliminary injunction is now fully briefed and ripe for decision. *See* Doc. 51 (Plaintiffs' motion); Doc. 52 (Plaintiffs' brief); Doc. 55 ("Defendants' Opposition to Plaintiffs' Motion for a Preliminary Injunction") (hereinafter "Opp."). The Arm Brace Rule's May 31 "compliance date" is nearing, *see* Doc. 52 at 8, and whatever injunction decision the Court issues will likely be appealed. Plaintiffs therefore do *not* seek oral argument on this motion and respectfully request that the Court render its decision as soon as is practicable.

II.  **There is a sufficient likelihood of success**

Plaintiffs' case against the Arm Brace Rule presents the requisite likelihood of success with five arguments about the merits – a combination of Counts One, Two, Five, Six, and Seven. Doc. 52 at 9-17. Given that likelihood of success can be the injunction decision's "most important" factor, *Def. Distributed v. United States Dep't of State*, 865 F.3d 211, 212 (5th Cir. 2017), the Court's order should expressly confront all five asserted counts. The Agencies say (at 12 n.5) that constitutional arguments should be decided last. But since every count needs to be confronted sooner or later in this ruling, the Agencies' ordering point is irrelevant.

   A.   **Procedurally, APA review is available.**

The Agencies are wrong to call this case "ill-suited for redressing Plaintiffs' alleged injuries." Opp. at 12. It is a perfectly orthodox invocation of the APA that satisfies all threshold requirements for relief, including both the need for a "final" agency action and standing.

The APA makes review available as to any "final agency action for which there is no other adequate remedy in a court," 5 U.S.C. § 704, and the complaint invokes that right as to the "final agency actions" of the Arm Brace Rule's promulgation and forthcoming enforcement, *see* Doc. 50 at 15, ¶50 ("the Agencies committed the final agency action at issue by promulgating the

1

Arm Brace Rule"); *id.* at 26, ¶ 88 ("Plaintiffs request a judgment preliminarily enjoining the Agencies' enforcement of the Arm Brace Rule against Plaintiffs."). The Court is therefore fully authorized to "postpone the effective date of an agency action" and "preserve status or rights pending conclusion of the review proceedings." 5 U.S.C. § 705.

It does the Agencies no good to say (at 12) that "it is the statue—not the Rule—that would impose the relevant obligations on Plaintiffs," because statutory hijacking is the lawsuit's whole point. Plaintiffs' suit does indeed seek relief from the Arm Brace Rule—not the statute it supposedly administers—*because* the Arm Brace Rule's APA-violating "rifle" definition criminalizes conduct that Congress did not. The Agency broke the law by promulgating the Arm Brace Rule and cannot be allowed to enforce it against the Plaintiffs as promised come May 31.

Standing as to a single plaintiff warrants the entire action, *see, e.g.*, *McAllen Grace Brethren Church v. Salazar*, 764 F.3d 465, 471 (5th Cir. 2014) ("It is well settled that once we determine that at least one plaintiff has standing, we need not consider whether the remaining plaintiffs have standing to maintain the suit."), and on this record all Plaintiffs have established standing. The Arm Brace Rule currently "injures Rainier concretely and 'substantially' in multiple irreparable ways," Doc. 52 at 19-20, and will do so as to SAF and the Individual Plaintiffs if the Agencies start enforcing the Arm Brace Rule on May 31, Doc. 52 at 20-21.

The record does not lack "facts that would allow this Court to independently assess the classification of any Plaintiff's 'brace'-equipped weapon." Opp. at 12. It is replete with them. For Rainier Arms, the record details exactly which arm braces and brace-equipped firearms the action implicates. *See* Doc. 51 at 19 n.1 ("Rainier's arm brace products are designed and manufactured by well-established third-party firms such as A3 Tactical and SB Tactical, whose current arm brace offerings are generally representative of Rainier's arm brace products. Ex. 1 at

1. Specific representative examples of Rainier's arm brace products include the 'SB TACTICAL SOB BRACE BLACK,' the 'SB TACTICAL SBA3 PISTOL STABILIZING BRACE,' the 'SB TACTICAL SBM47 AK47/74 BRACE,' the 'A3 TACTICALALUMINUM OFFSET MODULAR SIDE FOLDING STEADY ARM BRACE,' and the 'SIG SAUER MCX / MPX PIVOTING CONTOUR BRACE.' *Id.*"). For SAF, the case entails just as much detail because SAF's members are suing about firearms *with the arm braces that Rainier supplies*. Doc. 52-2 at 1, ¶ 5. The Individual Plaintiffs give sufficient detail as well, Doc. 52-3 at 1, ¶¶ 4-6 ("Because of my physical disability, I possess multiple brace-equipped pistols. Each has a common "AR pistol" configuration and includes an SB Tactical "SBA3" arm brace."); Doc. 52-4 at 1, ¶¶ 3-4.

### B. Count One: APA § 706(2)(A), (C)—Statutory Contradiction

The Court should first hold that Plaintiffs have established the requisite likelihood of success as to Count One, which asserts that "the Arm Brace Rule violates both 5 U.S.C. § 706(2)(A) and § 706(2)(C) because its 'rifle' redefinition contradicts the statutes at issue and violates the rule of lenity." Doc. 152 at 9-11.

An agency *administering* a statute cannot *redefine* it. Yet the Agencies just beg the question (at 12-13) by saying "ATF possesses clear authority to interpret provisions within the NFA and GCA, including terms used within the statutory definition of 'rifle.'" That notion of "interpretation" assumes that the Arm Brace Rule clarifies the "rifle" definition that Congress actually enacted. But what Plaintiffs' case instead posits is that the Agencies have changed the definition so as to criminalize and regulate as a "rifle" what Congress never opted to criminalize.

"Circumvention" is revealing codespeak. When the Agencies say (at 1, 14, 18, 32, and 36) that the citizenry's widespread use of brace-equipped pistols "circumvented" something, they do *not* mean that anyone has broken existing law. In truth, the millions of Americans that treat

3

brace-equipped pistols as "pistols" and not "rifles" have fully complied with the GCA and NFA. The only thing being "circumvented" is the Agencies' *desired new statutory "rifle" definition that Congress never actually enacted*.

Count One does not assert that Congress *could not* redefine "rifle" as the Arm Brace Rule has redefined the term. It does not, as the Agencies think (at 15), assert that Congress has already defined "rifle" as far as "it *can* be defined." Count One instead asserts that Congress *has not* defined "rifle" as expansively as the Arm Brace Rule does. A rule that specified the statute's reach without expanding the reach would be fine. But what the Arm Brace Rule did is *expand* the "rifle" term beyond its statutory boundaries. The Agencies did not just give Congress's GCA and NFA "rifle" definition "crisper and more detailed lines." They *moved the lines*. That is a classic violation of both 5 U.S.C. § 706(2)(A) and § 706(2)(C) that APA actions exist to stop. That times they are a-changin' is no excuse. *See Util. Air Regulatory Group v. E.P.A.*, 573 U.S. 302, 327 (2014) ("An agency confronting resource constraints may change its own conduct, but it cannot change the law.").

Count One also does *not* dispute that a "pistol" can be made into a "rifle." The Agencies tout this (at 16) as though the abstract notion solves the case. But once again the Agencies are question begging. Saying that a "pistol" *can* be modified into a "rifle" tells courts nothing about whether a "pistol" that has already been equipped with an arm brace constitutes a "rifle."

To defend the Arm Brace Rule as consistent with Congress's "rifle" definition, the Agencies do violence to two fundamental aspects of the statute. Each deserves close emphasis.

First, the Arm Brace Rule violates the *disjunctive* nature of the statutory "rifle" definitions' "designed" "made" and "intended" requirements. In this respect, Congress's "rifle" definitions impose the "designed" "made" and "intended" requirements with "and"—not "or."

4

The statutes deem a weapon a "rifle" only if (among other things) *all of the following are true*: (1) the weapon is "designed or redesigned…to be fired from the shoulder," *and* (2) the weapon is "made or remade…to be fired from the shoulder," *and* (3) the weapon is "intended to be fired from the shoulder." 18 U.S.C. § 921(a)(7); 26 U.S.C. § 5845(c). A proper agency interpretation must therefore operate disjunctively to give the "designed" "made" and "intended" requirements distinct meanings and require that all three be met. *See, e.g.*, *United States v. Palomares*, 52 F.4th 640, 644 (5th Cir. 2022) (on the giving every clause meaning and avoiding surplusage). But with the Arm Brace Rule, the Agencies repeatedly conflate and conglomerate those terms, overriding Congress's disjunctive scheme.

Second, the Arm Brace Rule violates the *individualized* nature of the statutory "designed" "made" and "intended" requirements. Congress's "rifle" definition has no guilt by association. It does not cover weapons "like a rifle" or "related to a rifle" or "similar to a rifle." It covers only weapons that in fact meet all aspects of the "rifle" test individually. If the individual weapon at issue does not itself satisfy the statute's "designed" "made" and "intended" requirements, that ends the inquiry regardless of whether or not the requirements are met by *other* weapons the Agencies think are related to the weapon at issue. But with the Arm Brace Rule, the Agencies repeatedly allow for guilt by association—be it of associated designs or of associated makes—overriding Congress's individualized scheme.

By contradicting these two key statutory commands, the Arm Brace Rule has fundamentally outrun its enabling statute. These fundamental faults are what cause the specific contradictions Plaintiffs have already detailed. *See* Doc. 52 at 10.[1]

---

[1] The Agencies also have no answer to the argument about "made" and "equipped." *See* Doc. 52 at 9. Even though the statute uses *both* terms separately, proving that they cannot mean the same thing, the Arm Brace Rule and the Agencies' defense of it continually conflates these the terms. Conflation without explanation is arbitrary.

5

*United States v. Thompson/Center Arms Co.*, 504 U.S. 505 (1992) (cited by the Agencies at 16), does not hold otherwise.[2] Its only true holding—the shared necessary conclusion of the judgment-supporting opinions of (1) Justice Souter joined by Chief Justice Rehnquist and Justice O'Connor, and (2) Justice Scalia joined by Justice Thomas—was that the rule of lenity applied to require rejection the government's expansive NFA construction. It squarely favors Plaintiffs' invocation of the rule of lenity here. *See* Doc. 52 at 10 ("The rule of lenity applies here because the statutes at issue are at best grievously ambiguous as to whether the "rifle" definition can cover a brace-equipped pistol; as a result, lenity dictates that Agencies and courts alike are bound to construe Congress's enactment as not extending so far.").

The need for lenity is dire as to the statute's "intended" requirement. When the statute says that the weapon must be "intended to be fired from the shoulder," 18 U.S.C. § 921(a)(7); 26 U.S.C. § 5845(c), it is best read—or at least reasonably read—as requiring that that intent be harbored by the weapon's designer, maker, *and end user*. Hence the 2015 Open Letter that rightly made the end user's intent necessary. *See* Opp. at 6. Yet the Arm Brace Rule gives no meaningful value to the end user's intent, opting instead to have the definition turn only on the intent of those that "made" and "designed" the weapon. If the statutory "rifle" definition itself does not clearly require end user intent, the rule of lenity does.

C. **Count Two: APA § 706(2)(A)—Failure to consider**

The Court should next hold that Plaintiffs have established the requisite likelihood of success as to Count Two, which asserts that "the Arm Brace Rule violates 5 U.S.C. § 706(2)(A) because the Agencies promulgated it without considering the Second Amendment factors and data made relevant by *New York State Rifle & Pistol Ass'n, v. Bruen*, 142 S.Ct. 2111 (2022)."

---

[2] What the Agencies say (at 16) *Thompson/Center* "explained" is not a holding because it was not a result-driving rationale assented to by five or more Justices who concurred in the judgment. *See Ramos v. Louisiana*, 140 S. Ct. 1390, 1403-04 (2020).

Doc. 152 at 11-12. The Agencies supply no major response to this claim. They touch upon this fully-pleaded, fully-evidenced, and full-briefed claim nowhere but footnote 17. That footnote does not defeat Count Two for both procedural and substantive reasons.

First, footnote 17 does not defeat Count Two because it is inadequately briefed. Given that the Agencies did not see fit to address Count Two anywhere else in their opposition, footnote 17's fleeting treatment constitutes the kind of "perfunctory" point that precedent rightly deems waived. *See, e.g.*, *Arbuckle Mountain Ranch of Tex., Inc. v. Chesapeake Energy Corp.*, 810 F.3d 335, 339 n.4 (5th Cir. 2016) ("Arguments subordinated in a footnote are 'insufficiently addressed in the body of the brief,' and thus are waived.").

Second, footnote 17 is wrong in substance. It says that "Plaintiffs point to no case holding that an agency must conduct a historical analysis in promulgating a rule or regulation concerning firearms." Opp at 27 n.17. But the motion did just that. Doc. 52 at 11-12. It invoked *Motor Vehicle Manufacturers' Association of the United States, Inc. v. State Farm*, 463 U.S. 29 (1983), to establish that, whenever an agency makes a rule, the Agency's rulemaking process "must examine" "relevant factors" and "relevant data." *Id.* And it invoked *Bruen* to establish that "the APA required the Agencies to consider whether this 'regulation is consistent with this Nation's historical tradition of firearm regulation' and to do so strictly—i.e., without using the 'means-end scrutiny' that *Bruen* deemed unconstitutional." *Id.*

Footnote 17 then denies the need for any *Bruen*-style historical analysis to have occurred during the Arm Brace Rule's promulgation. Instead of saying such an analysis *did in fact* occur, the Agencies say in footnote 17 that it *did not need to* occur because "short-barreled rifles are dangerous and unusual weapons that fall outside the scope of the Second Amendment." Opp. at

7

27 n.17. The Court should reject this and hold that, under *Bruen*, a proper Second Amendment analysis of the Arm Brace Rule requires a historical analysis.

*United States v. Rahimi*, 61 F.4th 443 (5th Cir. 2023) (explained by Doc. 52 at 13-14), is a critical authority. *Rahimi* demonstrates that the proper threshold inquiry is not whether the Second Amendment covers "stabilizing braces." The proper inquiry is whether the Second Amendment covers "possession of a pistol and a rifle," and *Rahimi* holds that the Second Amendment supplies that coverage "easily." *Id.* at 454.

The Court need not decide how to analyze a hypothetical regulation of "arm braces" standing alone as such, *see* Opp. at 21-22, because the Agencies here did not do anything so attenuated. They instead acted directly on the Second Amendment subject of a "rifle," changing that term's definition for all manner of GCA and NGA purposes of criminal consequence. *See* Doc. 52 at 4 (detailing the fines and imprisonment that attach to noncompliant "rifles").

The Agencies elsewhere say that *Bruen*'s Second Amendment scrutiny is not required because there is no all-out "ban" at issue. Opp. at 22-23. But *Bruen* itself defeats that notion, given that it required full Second Amendment scrutiny of laws imposing less than an all-out ban.

On its own terms, the Agencies' new effort to label brace-equipped pistols as "dangerous and unusual weapons that fall outside the scope of the Second Amendment" is wrong. The Agencies' own rulemaking record establishes this by showing that brace-equipped pistols are normal weapons very much in common use now. *See* Arm Brace Rule, 88 Fed. Reg at 6479 ("The diversity of 'brace' devices yielded a plethora of firearms with an attached 'stabilizing brace' . . ."); *id.* at 6566 (evidence of "millions of 'braces' in use"); *id.* (evidence that brace-equipped pistols are not "more lethal").

In this way, Count Two targets the Agencies' use of an APA-violating promulgation *process*, which the APA makes actionable regardless of whether or not the resulting rule is also unconstitutional. That is the whole point of process-based requirements like the need to examine all "relevant factors" and "relevant data." If such failures were actionable only in the event of an independent APA-violating outcome, the process requirements would never matter. But compliance with rulemaking processes *does* matter, which is precisely why the Supreme Court has repeatedly deemed *process*-based APA claims to be fully actionable standing alone.

Specifically, the Count Two APA violation caused actionable harm by impacting the rulemaking procedure used and the substance of the decision reached. Harm warranting relief occurs when an APA error has a "bearing on" either "the procedure used" or "the substance of the decision reached." *United States v. Johnson*, 632 F.3d 912, 930 (5th Cir. 2011) ("In this circuit, an administrative body's APA deficiency is not prejudicial "only 'when [it] is one that clearly had no bearing on the procedure used or the substance of decision reached.'"); *U.S. Steel Corp. v. U.S. E.P.A.*, 595 F.2d 207, 215 (5th Cir. 1979) ("Here the Agency's error plainly affected the procedure used, and we cannot assume that there was no prejudice to petitioners."). The requisite "bearing" exists when the erroneous aspect of the process "directly informed" and "guided" the agency's conclusion. *Sierra Club v. U.S. Fish & Wildlife Serv.*, 245 F.3d 434, 444 (5th Cir. 2001).

Here, the Count Two APA violation had a "bearing" on the "procedure used" and a "bearing" the "substance of the decision reached," as it (wrongly) defined the universe of historical materials the Agencies had to accounted for and (wrongly) told them to employ means-ends scrutiny. *See* Doc. 52 at 12. Depriving this rulemaking process of its constitutionally-required methods and ingredients necessarily infected the end result. Such process harms are

9

especially evident where, as here, the rule concerns a "complex regulatory decision" and not a mere "yes or no" decision. *Johnson*, 632 F.3d at 932.

Given that Count Two's merit is so evident and barely responded to, the Court need not perform the more extensive analysis of Plaintiffs' actual Second Amendment claim (Count Five). The Court can instead identify the requisite likelihood of success solely by holding that the Arm Brace Rule violated the APA in failing to entail a *Bruen*-compliant inquiry during promulgation.

### D. Count Six: APA § 706(2)(B)—Due Process Clause

The Court should next hold that Plaintiffs have established the requisite likelihood of success as to Count Six, which asserts that "the Arm Brace Rule violates the Due Process Clause's vagueness doctrine (and APA) because its "rifle" redefinition uses inherently amorphous terms that deny citizens fair notice of what is punishable and is so inherently subjective that it invites arbitrary enforcement." Doc. 152 at 14-17.

The Agencies respond first by saying (at 29) that facial vagueness challenges are allowed only as to the First Amendment, and not any other constitutional right. The Court should reject this because *Bruen* now makes clear that the Supreme Court's modern "Second Amendment standard accords with how we protect other constitutional rights," including "for instance, the freedom of speech in the First Amendment." *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 at 2130 (2022). The procedural leeway provided for First Amendment vagueness challenges is just as warranted for the Second Amendment's.

Next the Agencies say (at 30) that the current rule is not void for vagueness because "it is clearer and provides more notice than ATF's previous classification system." But of course the Due Process Clause does not operate in that kind of relative fashion. The Agencies cite no case holding that because none does.

Count Six does *not* amount to a formalistic demand for always-quantified mathematical rules of arithmetic certainty, as the Agencies try to say (at 31-33). Count Six instead centers on the rules of *Johnson v. United States*, 576 U.S. 591 (2015), and *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018), which are controlling for the reasons stated in the motion. The Agencies have opted to say nothing whatsoever about either *Johnson* or *Sessions*. The motion's extensive argument about these cases is wholly unanswered and compelling.

### E.     Count Seven: APA § 706(2)(A), (C)—Unlawful Effective Date

The Court should next hold that Plaintiffs have established the requisite likelihood of success as to Count Seven, which asserts that "the Agencies violated 5 U.S.C. § 706(2)(A) and 5 U.S.C. § 706(2)(C) by giving the Arm Brace Rule immediate effect without satisfying 5 U.S.C. § 553(d)." Doc. 152 at 17. The Agencies' only response (at 33) calls the Arm Brace Rule an "interpretive rule" that is not subject to that requirement. But the "interpretive rule" label is incorrect because the Arm Brace Rule is legislative in nature.

By defining the "rifle" term to be broader than ever—the Agencies must concede that this rule's whole point was to *expand* what federal officials deems a "rifle"—the Arm Brace Rule "creates new substantive duties, the violations of which prompt exposure to financial penalties and criminal sanctions." *Mann Constr., Inc. v. United States*, 27 F.4th 1138, 1144 (6th Cir. 2022). "Those are hallmarks of a legislative, not an interpretive, rule." *Id.*

More importantly, the Arm Brace Rule necessarily constitutes a legislative rule because "the Rule rescinded all of ATF's prior classifications of firearms equipped with 'stabilizing braces.'" Opp. at 10. The Agencies now concede that these "classifications are therefore no longer valid or authoritative." *Id.* By changing what is legally "valid and authoritative," the Arm Brace Rule does the work of a "legislative rule" and was required to comply with § 553(d),

11

### III. Irreparable harm.

Plaintiff Rainier Arms, LLC ("Rainier") will clearly suffer irreparable harm if the Arm Brace Rule is not preliminarily enjoined. Doc. 52 at 17-20. The Agencies have precious little to say about Rainier. They cite (at 36) the Arm Brace Rule itself as predicting that citizens would "simply comply with its registration requirements," rather than cease buying from suppliers like Rainier. But the only action proof of this issue supports Rainier, and it is in no way conclusory. Tthe declaration backing up Rainier's irreparable harm speaks for itself in full detail. Doc. 52-1. It is authored by Rainier's founder and current CEO. *Id.* at 1, ¶2. It explains the nature of Rainier's business with detail. *Id.* at 1, ¶2-3. It specifies not just that Rainier "sells arm braces and brace-equipped firearms," but exactly which kinds of arm braces exemplify Rainier's overall offerings. *Id.* at 1, ¶¶ 3-4. And in the critical passage about harm, the declaration says in no uncertain terms that the "Arm Brace Rule injures Rainier concretely and substantially" by, among other things, "imposing substantial economic losses." *Id.* at 1, ¶5. It then details those losses with particularity. *See id.* at 1, ¶ 5 ("the Arm Brace Rule deprived Rainier of substantial profits by causing customers to cancel then-pending orders"); *id.* ("the Arm Brace Rule has deprived Rainier of substantial profits by making otherwise willing customers either legally ineligible or practical incapable of using Rainier's arm brace products"); *id.* ("The Arm Brace Rule also injures Rainier by depriving it of customer good will, as its products have now arguably triggered onerous federal firearm regulations."); *id.* ("The Arm Brace Rule also injured and continues to injure Rainier by forcing it to incur substantial unrecoverable compliance costs."). All of that is sufficiently proven, not conclusory. And all of that is uncontradicted.

A key injury at issue for SAF's members and the Individual Plaintiffs is constitutional. Even if their proof did not substantiate financial injuries (it does), the test would still be met by their loss of Second Amendment and Due Process Clause rights. The Agencies have no response

12

to this, except to deny the merit of the underlying claims. But if the constitutional claims are as meritorious as the motion has established, the resulting irreparable harm certainly suffices.

**IV.      Balance of harms and public interest.**

Given the requisite likelihood of success and need to prevent irreparable harm, the balance of harms and public interest flow strongly in favor of Plaintiffs' requested preliminary injunction. Doc. 52 at 21. The Agencies still cannot seriously insist on imposing the Arm Brace Rule *immediately*. By voluntarily deferring the key compliance date until May 31, the Agencies have effectively conceded that months and months of delay and forbearance are fine.

## Conclusion

The motion should be granted. The Court should enter a preliminary injunction enjoining the Agencies from enforcing the "Arm Brace Rule," *Factoring Criteria for Firearms With Attached "Stabilizing Braces,"* 88 Fed. Reg. 6478 (Jan. 31, 2023), against the Plaintiffs and postponing the Arm Brace Rule until this litigation's conclusion.

Respectfully submitted,

BECK REDDEN LLP
By /s/ *Chad Flores*
Chad Flores
cflores@beckredden.com
State Bar No. 24059759
1221 McKinney St., Suite 4500
Houston, Texas 77010
(713) 951-3700 | (713) 952-3720 (fax)