No. 23-10319

# In the United States Court of Appeals for the Fifth Circuit

WILLIAM T. MOCK; CHRISTOPHER LEWIS;
FIREARMS POLICY COALITION, INCORPORATED, a nonprofit corporation;
MAXIM DEFENSE INDUSTRIES, L.L.C.,

*Plaintiffs-Appellants,*

v.

MERRICK GARLAND, U.S. Attorney General, in his official capacity as
Attorney General of the United States; UNITED STATES DEPARTMENT OF JUSTICE;
BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES;
STEVE DETTELBACH, in his official capacity as the Director of the
Bureau of Alcohol, Tobacco, Firearms and Explosives,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Northern District of Texas, Fort Worth Division
Case No. 4:23-cv-00095-O

## PLAINTIFFS-APPELLANTS' OPPOSED EMERGENCY MOTION FOR INJUNCTION PENDING APPEAL

Cody J. Wisniewski
FPC ACTION FOUNDATION
5550 Painted Mirage Road, Suite 320
Las Vegas, NV 89149
Telephone: (916) 517-1665
Facsimile: (916) 476-2392
cwi@fpchq.org

Erik S. Jaffe
  *Counsel of Record*
Joshua J. Prince
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
Telephone: (202) 787-1060
Facsimile: (202) 776-0136
ejaffe@schaerr-jaffe.com
jprince@schaerr-jaffe.com

*Counsel for Plaintiffs-Appellants*

## CERTIFICATE OF INTERESTED PERSONS

No. 23-10319

*William T. Mock, et al. v. Merrick Garland, et al.*

I certify that the following persons and entities as described in the fourth sentence of Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made so the judges of this Court may evaluate possible disqualification or recusal:

1)  **Plaintiffs-Appellants:**

William T. Mock

Christopher Lewis

Maxim Defense Industries, LLC, a limited liability company, is a wholly owned subsidiary of Maxim Defense Group, Inc., a Florida S-Corp. Maxim Defense Group, Inc., has no parent corporation and there is no publicly held corporation that owns 10% or more of its stock.

Firearms Policy Coalition, Inc., a nonprofit corporation, has no parent corporation and there is no publicly held corporation that owns 10% or more of its stock.

2)  **Defendants-Appellees:**

Merrick Garland, in his official capacity as Attorney General of the United States

United States Department of Justice

Steve Dettelbach, in his official capacity as the Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives

Bureau of Alcohol, Tobacco, Firearms and Explosives

3)    **<u>Counsel for Plaintiffs-Appellants</u>**:

COOPER & SCULLY PC
R. Brent Cooper
Benjamin David Passey

FPC ACTION FOUNDATION
Cody J. Wisniewski

SCHAERR | JAFFE LLP
Erik S. Jaffe
Joshua J. Prince

4)    **<u>Counsel for Defendants-Appellees</u>**:

Brian M. Boynton
Brigham J. Bowen
Benjamin Lewis
Sean Janda
Jody Dale Lowenstein
Michael Drezner
Taylor Pitz
Faith E. Lowry

United States Department of Justice

<u>*/s/ Erik S. Jaffe*</u>
Erik S. Jaffe

*Counsel of Record for*
*Plaintiffs-Appellants*

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ...................................................... ii

TABLE OF AUTHORITIES ..................................................................................v

JURISDICTION.....................................................................................................1

INTRODUCTION ..................................................................................................1

BACKGROUND ....................................................................................................4

STANDARD OF REVIEW ....................................................................................8

ARGUMENT ..........................................................................................................8

    I.     APPELLANTS ARE LIKELY TO SUCCEED ON THE MERITS ........................................................................................8

         A.     Appellants are likely to show that the Final Rule violates the Second Amendment ................................................8

         B.     Appellants are likely to succeed on their other claims .............13

    II.    APPELLANTS FACE IRREPARABLE HARM ...............................18

    III.  THE BALANCE OF THE EQUITIES AND THE PUBLIC INTEREST FAVOR INJUNCTIVE RELIEF ...................................20

    IV.  THE NATURE OF THE FINAL RULE NECESSITATES A BROAD INJUNCTION TO PROVIDE RELIEF..........................21

CONCLUSION .....................................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bd. of Cnty. Comm'rs, Wabaunsee Cnty., Kan. v. Umbehr*,
  518 U.S. 668 (1996) ...................................................................13

*Beckles v. United States*,
  580 U.S. 256 (2017) ............................................................... 15, 16

*Caetano v. Massachusetts*,
  577 U.S. 411 (2016) ...................................................................11

*Canal Auth. of State of Fla. v. Callaway*,
  489 F.2d 567 (5th Cir. 1974).......................................................20

*Cargill v. Garland*,
  57 F.4th 447 (5th Cir. 2023)........................................................14

*Data Mktg. P'ship, LP v. U.S. Dep't of Labor*,
  45 F.4th 846 (5th Cir. 2022)........................................................21

*District of Columbia v. Heller*,
  554 U.S. 570 (2008) ..................................................................9, 11

*Hardin v. ATF*,
  65 F.4th 895 (6th Cir. 2023)........................................................14

*Jacksonville Port Auth. v. Adams*,
  556 F.2d 52 (D.C. Cir. 1977) ......................................................21

*Louisiana v. Biden*,
  55 F.4th 1017 (5th Cir. 2022)......................................................19

*Murdock v. Pennsylvania*,
  319 U.S. 105 (1943) ....................................................................12

*Nevada v. U.S. Dep't of Labor*,
  218 F. Supp. 3d 520 (E.D. Tex. 2016) ........................................21

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*,
  142 S. Ct. 2111 (2022) ...................................................... 9, 10, 11, 12

*Opulent Life Church v. City of Holly Springs, Miss.*,
   697 F.3d 279 (5th Cir. 2012) ................................................................18

*Richey v. Smith*,
   515 F.2d 1239 (5th Cir. 1975) ..............................................................20

*United States v. One TRW, Model M14, 7.62 Caliber Rifle*,
   441 F.3d 416 (6th Cir. 2006) ................................................................12

*United States v. Rahimi*,
   61 F.4th 443 (5th Cir. 2023) ............................................................9, 10

*United States v. Raines*,
   362 U.S. 17 (1960) ................................................................................21

*United States v. Thompson/Ctr. Arms Co.*,
   504  U.S. 505 (1992) ..............................................................................14

*Whole Woman's Health v. Jackson*,
   13 F.4th 434 (5th Cir. 2021) ...................................................................8

**Statutes**

18 U.S.C. § 921(a)(30) ............................................................................1, 4

18 U.S.C. § 921(a)(7) ..................................................................................1

28 U.S.C. § 1292 ........................................................................................1

26 U.S.C. § 5845(a)(3) ............................................................................1, 4

26 U.S.C. § 5845(a)(4) ............................................................................1, 4

26 U.S.C. § 5845(c) .................................................................................1, 4

26 U.S.C. § 5845(e) .................................................................................1, 4

Gun Control Act of 1968, Pub. L. No. 90-618, 82 Stat. 1213 ....................1

National Firearms Act of 1934, Pub. L. No. 73-474, 48 Stat. 1236 ..........1

**Regulation**

*Factoring Criteria for Firearms with Attached "Stabilizing Braces",*
  88 Fed. Reg. 6,478 (Jan. 31, 2023).............................................. 2, 6, 7, 11, 16, 20

**Other Authorities**

ATF, *Firearms Commerce in the United States*:
  *Annual Statistical Update* (2020), https://tinyurl.com/dhvwsdj8 ......................11

Letter from ATF #2013-0172 (Nov. 26, 2012),
  https://tinyurl.com/2z7pz2v6 ......................................................................5

U.S. Patent No. 8,869,444 B2 (issued Oct. 28, 2014),
  https://tinyurl.com/mr3esfhu ......................................................................5

## JURISDICTION

This Court has jurisdiction under 28 U.S.C. § 1292(a)(1).

## INTRODUCTION

The National Firearms Act of 1934, Pub. L. No. 73-474, 48 Stat. 1236 ("NFA") and the Gun Control Act of 1968, Pub. L. No. 90-618, 82 Stat. 1213 ("GCA"), treat handguns and pistols—which the GCA defines as firearms with "a short stock" designed to be fired with one hand, 18 U.S.C. § 921(a)(30)—differently from rifles, which are "designed or redesigned, made or remade, and intended to be fired from the shoulder," 26 U.S.C. § 5845(c); 18 U.S.C. § 921(a)(7). Pistols and handguns are not subject to the NFA, but many rifles are. 26 U.S.C. § 5845(a)(3)-(4), (e). Many handgun owners use an accessory commonly called a stabilizing or pistol brace for added support and stability by anchoring a pistol, often heavier models, against their wrist or forearm. Such lawful accessories did not alter the NFA-exempt status of pistols to which they attach, under the plain meaning of the text of the NFA nor under the Bureau of Alcohol, Tobacco, Firearms, and Explosives' ("ATF") decade-long implementation of the same.

But on January 31, 2023, the Department of Justice and the ATF (collectively "Agencies"), published a Final Rule that reversed that prior treatment of braced pistols and reclassified at least 3 million such braced handguns and pistols in the United States as federally regulated "rifles" and "short-barreled rifles." *Factoring*

*Criteria for Firearms with Attached "Stabilizing Braces,"* 88 Fed. Reg. 6,478 (Jan. 31, 2023), https://www.federalregister.gov/d/2023-01001 ("Final Rule"). By that rule, the Agencies immediately and effectively prohibited Appellant Maxim Defense Industries, LLC ("Maxim Defense") from selling braced firearms as it had been able to do for a decade without triggering onerous NFA requirements.

Effective May 31, 2023, the Agencies will also require individual Appellants Mock and Lewis, and all other owners of 3 million affected firearms, Final Rule, 88 Fed. Reg. at 6,560, to destroy or dispose of their property, or, unrealistically, to register their firearms under the NFA and subject themselves to immediate and strict compliance with onerous additional restrictions on how and where NFA weapons can be lawfully possessed, transported, stored, loaned, bought, used, and sold. The Final Rule thus upends the legal landscape surrounding millions of constitutionally protected arms and vastly expands the Agencies' limited statutory authority to impose criminal liability on millions of owners.

Appellants challenged the Final Rule and unsuccessfully sought a preliminary injunction or postponement of the Final Rule's effective date pending a merits decision. They thereafter sought an injunction pending appeal in the district court, which was opposed and has been fully briefed without resolution since April 18, 2023. Because the Final Rule goes into effect for individuals on May 31st, for Appellants to receive an effective remedy for the immediate and irreparable harms

facing them, Appellants are now forced to make a request for urgent relief in this Court. Appellants have conferred with the Agencies, who intend to file a written opposition.

While waiting for preliminary or interim relief, Appellant Maxim Defense has been forced to fire over 13 employees and significantly reduce the compensation of the employees that remain. *See* Third Dahl Decl. ¶ 4 (App.321-22). Absent relief pending appeal, Maxim Defense may not survive to pursue its claims on the merits. And the same is true for many of Appellant Firearms Policy Coalition, Inc.'s ("FPC") corporate members, whose businesses the Final Rule upended with no grace period or delayed effective date to allow them to adjust to or even challenge the Final Rule before suffering its crushing weight.

Like millions of other lawful gun owners, Individual Appellants Mock and Lewis also face irreparable choices come the May 31st effective date for individuals that own braces and braced pistols. They must either register their constitutionally protected arms under the NFA and face numerous restrictions on their ability to keep and bear those arms, or they must remove and destroy their stabilizing braces. The former imposes onerous burdens and serious criminal risks that cannot be un-endured or compensated and the latter requires destroying constitutionally protected property.

To prevent these immediate and irreparable harms to Appellants, Appellants ask this Court to enjoin pending appeal the Agencies' enforcement of the Final Rule, and to rule by May 24th to allow millions of gun owners one calendar week to meet the Agencies' requirements for compliance with the Final Rule if not enjoined.

## BACKGROUND

The NFA imposes severe taxes, burdens, delays, and restrictions upon the acquisition, possession, and lawful use of the arms it regulates. Pistols are expressly excluded from NFA regulation and the severe restrictions and obligations it imposes. 26 U.S.C. § 5845(e). Short-barreled rifles ("SBRs"), however, are so regulated.

An SBR is an NFA-regulated "firearm" defined as "a rifle having a barrel or barrels of less than 16 inches in length; [or] a weapon made from a rifle if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 16 inches in length[.]" *Id.* § 5845(a)(3)-(4). A "rifle" is defined by the NFA as "a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder." *Id.* § 5845(c). Though "pistol" is not defined in the NFA, the GCA defines a "handgun" as "a firearm which has a short stock and is designed to be held and fired by the use of a single hand." 18 U.S.C. § 921(a)(30).

This case involves the Agencies' attempt to reclassify NFA-exempt braced pistols as NFA-restricted SBRs. Stabilizing braces assist people having disabilities or limited strength or mobility with the one-handed firing of pistols safely and

comfortably. They do so by attaching to a pistol on one end and wrapping around the wrist or forearm on the other end to "permit[] a user to handle and support a handgun without straining the user's arm, hand, or wrist" by "more evenly distribut[ing]" the weight of the handgun "through the user's hand, wrist, and forearm."[1] Braced pistols are thus still designed to be fired with one hand. *See* Pls.' Br. 6-8 (App.104-06).[2] By contrast, a rifle is designed to be fired with two hands from the shoulder and uses the stock on the back and the second hand up front to stabilize the firearm.

Since their initial classification by ATF in 2012, stabilizing braces have broadly been understood not to alter the NFA-exempt classification of pistols to which they attach. Letter from ATF #2013-0172 (Nov. 26, 2012), https://tinyurl.com/2z7pz2v6. The Agencies' Final Rule, however, unilaterally erases the line between a non-NFA braced pistol and an NFA-regulated short-barreled rifle.[3] It amended the federal regulatory definitions of "rifle" to include a discretion-expanding, open-ended, six-factor test to decide whether a braced pistol

---

[1] *See* U.S. Patent No. 8,869,444 B2, at 3, 5 (issued Oct. 28, 2014), https://tinyurl.com/mr3esf hu.

[2] Indeed, the *point* of a stabilizing brace is to facilitate and support one-handed pistol firing for persons for whom that might be difficult.

[3] Reclassifying a pistol as a rifle would likely create a "short-barreled" rifle since pistols typically have barrels less than 16 inches long.

was designed and intended to be fired from the shoulder, and thus an NFA-regulated "rifle." Final Rule at 6,574-75. Those factors are:

> (i) whether the weapon has a weight or length consistent with the weight or length of similarly designed rifles;

> (ii) whether the weapon has a length of pull, measured from the center of the trigger to the center of the shoulder stock or other rearward accessory, component or attachment (including an adjustable or telescoping attachment with the ability to lock into various positions along a buffer tube, receiver extension, or other attachment method) that is consistent with similarly designed rifles;

> (iii) whether the weapon is equipped with sights or a scope with eye relief that require the weapon to be fired from the shoulder in order to be used as designed;

> (iv) whether the surface area that allows the weapon to be fired from the shoulder is created by a buffer tube, receiver extension, or any other accessory, component, or other rearward attachment that is necessary for the cycle of operations;

> (v) the manufacturer's direct and indirect marketing and promotional materials indicating the intended use of the weapon; and

> (vi) information demonstrating the likely use of the weapon in the general community.

*Id.* As a result of these vague factors, at least 3 million lawfully possessed braced pistols—and potentially millions of other pistols that might be combined with a formal or informal "brace"—have been unilaterally converted to highly restricted NFA-regulated short barreled rifles by the Agencies. More, the Final Rule effectively regulates all arms with a barrel of less than 16 inches to which one could theoretically attach a DIY brace made from common household items. Under the

6

Final Rule, it is now deemed unlawful for pistol owners to possess any item that could serve as a brace (or stock) under the new discretionary, non-exhaustive six-factor test, even if not attached to a pistol, given the risk of being charged with constructive possession of an unregistered SBR.

The Final Rule went into effect immediately upon publication but provided a 120 day "non-enforcement period" for individuals to bring existing braced pistols into compliance. *Id.* at 6,553. Appellants brought this lawsuit on the day the Final Rule was published—January 31, 2023. App.003. Appellants filed an Amended Petition and sought a preliminary injunction soon after. App.010-084; App.085-144. The district court denied that motion on March 30th. App.239-54 ("Order"). Appellants sought an injunction pending appeal in the district court, App.255-283, but that fully briefed motion has been pending for nearly a month, and the Final Rule will be enforced against individuals' existing arms on May 31st.

Appellants, like millions more lawful American gun owners, can no longer wait for potential relief from the district court. Manufacturers and retailers like Appellant Maxim Defense may not survive this appeal absent relief, and the individual Appellants will either have to *permanently destroy* their constitutionally protected property or register and comply with the NFA's unconstitutional and onerous restrictions by May 31st. Appellants are thus forced to file this motion for

expedited injunctive relief pending appeal to stave off irreparable injuries while they still can.

## STANDARD OF REVIEW

Appellants may obtain an injunction pending appeal by showing: (1) a strong likelihood of success on the merits; (2) irreparable injury without an injunction; (3) that the balance of hardships supports an injunction; and (4) that the public interest favors such relief. *Whole Woman's Health v. Jackson*, 13 F.4th 434, 441 (5th Cir. 2021).

## ARGUMENT

## I.    APPELLANTS ARE LIKELY TO SUCCEED ON THE MERITS

The district court erred in finding that a likelihood of success was not shown on the record before it and did not reach the remaining injunction factors. But its conclusion on the merits largely got the relevant burdens backwards on Appellants' Second Amendment claims and on their vagueness and ambiguity claims.[4]

### A.    Appellants are likely to show that the Final Rule violates the Second Amendment

The Court should enter an injunction pending appeal because the district court's analysis of Appellants' Second Amendment rights flipped the burden of proof by faulting *Appellants* for not providing evidence of a negative—the lack of historical analogue to the Final Rule—even though both the Supreme Court and this

---

[4] Other claims were raised below and will be argued on appeal.

Court's precedent places the burden of historical justification for any restriction squarely on the government. *United States v. Rahimi*, 61 F.4th 443, 453 (5th Cir. 2023).

"[T]he standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command." *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2129-30 (2022) (cleaned up).

Ownership of braced pistols easily falls within the plain text of the Second Amendment. "Just as the First Amendment protects modern forms of communications, . . . the Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *District of Columbia v. Heller*, 554 U.S. 570, 582 (2008); *accord Bruen*, 142 S. Ct. at 2132, 2143. And whether this Court classifies a braced pistol as a handgun or a short-barreled rifle, both are in common use and are presumptively protected bearable arms. *See Heller*, 554 U.S. at 628-35; *Bruen*, 142 S. Ct. at 2128.

That presumption can only be overcome if *the Agencies*—not Appellants—

meet their burden of "affirmatively prov[ing] that [their] firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms" and is thus "consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2126-27; *accord Rahimi*, 61 F.4th at 453, 455. That burden is the Agencies' alone. Plaintiffs are under no obligation to prove a negative—the absence of historical firearm restrictions.

Contrary to *Bruen* and *Rahimi*, the district court here incorrectly faulted *Appellants* for what it deemed their "minimal historical analysis." Order 15 (App.253). This gets the analysis backwards. Any lack of "historical analysis" in the briefing evidences the *government*'s failure to carry its burden and rebut the "presumptive" protections of the Second Amendment. *Rahimi*, 61 F.4th at 450, 453, 454. And what minimal history the Agencies did cite was not "'relevantly similar'" to the Final Rule, *see* Pls.' Reply 3, 6-7 (App.226, 229-30), which is the "core" historical question. *Rahimi*, 61 F.4th at 454. The Agencies thus failed to show that they will rebut the Final Rule's presumptive unconstitutionality with an adequate historical record, and the Appellants, therefore, are likely to succeed on the merits.

Moreover, both *Bruen* and *Heller* identified only one aspect of our history sufficiently analogous to, and therefore capable of justifying, a broad ban or sweeping regulation on a category of arms: the history of restricting "dangerous and unusual weapons" not "in common use at the time." *Bruen*, 142 S. Ct. at 2128

(quoting *Heller*, 554 U.S. at 627). By contrast, where a type of arm is in "common use," there is no historical record justifying its strict regulation. *Bruen*, 142 S. Ct. at 2143. Moreover, in *Heller*, the Supreme Court already conducted this analysis when it comes to semiautomatic arms, determining that they are in common use and cannot be subjected to ahistorical bans or regulation. *See Heller*, 554 U.S. at 624, 627, 628.

Here, the Final Rule itself recognizes that over a million Americans own—conservatively—3 million pistol braces. 88 Fed. Reg. at 6,560. ATF also reported 460,544 registered short-barreled rifles in 2020. ATF, *Firearms Commerce in the United States*: *Annual Statistical Update* 15 (2020), https://tinyurl.com/dhvwsdj8. In *Caetano*, Justice Alito recognized that stun guns were "widely owned and accepted" when they were only owned by about 200,000 civilians. *Caetano v. Massachusetts*, 577 U.S. 411, 420 (2016) (Alito, J., concurring in the judgment). Whether pistols or SBRs, the Final Rule thus unconstitutionally regulates the ownership of a bearable arm in common use.

The district court sidestepped the history question entirely by concluding that the Final Rule "does not ban stabilizing braces, nor firearms equipped with them," but requires only "regulated individuals and entities" to "register[] the weapons with ATF or permanently detach[] the brace from the pistol." Order 14 (App.252). But

this is incorrect.[5]

First, beyond mere "registration," owners of NFA firearms are subject to additional onerous and ongoing compliance requirements, enhanced criminal penalties designed to discourage transactions in firearms, and a $200 tax, even though the government cannot "impose a charge for the enjoyment of a right granted by the federal constitution." *Murdock v. Pennsylvania*, 319 U.S. 105, 113 (1943).[6] No court would ever uphold a statute that required a Twitter user to pay the government $200, be placed on a government database before accessing the service, and comply with numerous restrictions on Twitter-enabled electronic devices. Nor would any court uphold a requirement that those subject to a search pay $200—and be placed on an Orwellian list—to invoke the Fourth Amendment's warrant requirement. To find no infringement of the Second Amendment despite identical circumstances, the district court violated *Bruen*'s prohibition on treating the right to bear arms as a "second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees." *Bruen*, 142 S. Ct. at 2156.

---

[5] The district court incorrectly suggested, Order 14-15 (App.252-53), that detached braces could be owned and sold. The Final Rule, however, demands not merely detachment of any braces, but rendering them *incapable* of being attached at all, effectively destroying them for their only purpose. 88 Fed. Reg. at 6,481. Merely separating pistols from still-functional braces risks prosecution for constructive possession of an NFA-regulated firearm. *See United States v. One TRW, Model M14, 7.62 Caliber Rifle*, 441 F.3d 416, 422-24 (6th Cir. 2006). No gun owner thus could purchase a pistol brace and nobody else has reason to purchase one.

[6] The Agencies' temporary waiver of the $200 tax is irrelevant to the Final Rule's constitutionality as the tax will resume eventually.

12

Second, the government often takes over a year to grant permission to possess NFA-regulated firearms. And with the Second Amendment, no less than other constitutional rights, "constitutional violations may arise from the deterrent, or 'chilling,' effect of governmental efforts that fall short of a direct prohibition." *Bd. of Cnty. Comm'rs, Wabaunsee Cnty., Kan. v. Umbehr*, 518 U.S. 668, 674 (1996) (cleaned up). For these reasons, the Court was wrong to find no violation of the Second Amendment just because the Final Rule graciously declines to impose a total and complete prohibition on the right to own braced pistols.

Under *Bruen*, the absence of historical justification, *even at this preliminary stage*, counts against the Agencies. Accordingly, Appellants are likely to succeed on the merits of their Second Amendment claims.

## B.    Appellants are likely to succeed on their other claims

Appellants are likely to succeed on their other claims too. If the federal definition of "rifle" can bear the interpretation in the Final Rule, then the definition itself is unconstitutionally vague, and any ambiguity must, under the Rule of Lenity, be resolved in Appellants' favor.

The erroneous handling of ambiguity and vagueness played a role in several of the district court rulings. For example, in determining that the Final Rule's balancing test likely was within the statutory authority of the Agencies, the district court held that "the statute includes ambiguous terms in its definition of rifle" which

"necessarily require the enforcing agency—or anyone who would comprehend the statute's meaning—to evaluate" various factors to determine whether the relevant object was a "rifle." Order 8 (App.246). Rather than concluding that such putative ambiguity and the necessity of a multifactor test triggered the Rule of Lenity and precluded such a vague and broad test, the court imagined that such indeterminacy *authorized* the Final Rule because the rule did not "contradict[]" the statute.

This is incorrect. If the statute really is vague enough that it allows such an indeterminate test to decide whether a pistol becomes a rifle by adding a brace, then it is a grievously ambiguous criminal statute that triggers the Rule of Lenity. *Cargill v. Garland*, 57 F.4th 447, 469-71 (5th Cir. 2023) (en banc); *accord United States v. Thompson/Ctr. Arms Co.*, 504 U.S. 505, 517-18 (1992) (plurality). The district court rejected Appellants' scope-of-authority arguments in a sentence, finding that "the Final Rule interprets—but does not rewrite—the underlying statutes." Order 11 (App.249). But that begs the question. An ambiguous criminal statute must be read narrowly, and even an "interpretive" rule must be measured against the statute as so narrowed, not as against its impermissibly vague facial language. And even if this Court concludes that the statutory definition of a "rifle" were ambiguous enough to include a braced pistol, that is far from the most obvious reading of the statute—as shown by a decade of agency interpretations reaching the exact opposite result. *See Hardin v. ATF*, 65 F.4th 895, 898 (6th Cir. 2023); *see also* Pls.' Br. 6-8 (App.104-

06) (summarizing past interpretations). A properly narrow statutory reading would preclude the hopelessly broad and unpredictable test adopted by the Final Rule.

Similarly, in rejecting the claims about improper delegation and the Rule of Lenity, Order 11 (App.249), the district court again relies on the very statutory ambiguity discussed above to claim that the equally ambiguous Final Rule does not "rewrite" the statute. Appellants disagree that the text of the statute allows the Final Rule's blurring of lines between pistols and rifles. But even if it did, that would make the statute vague and ambiguous enough to delegation the ability to expand criminal offenses and the statute would be subject to the Rule of Lenity. In short, the district court's answer is a non-sequitur that defends regulatory overreach and vagueness with statutory vagueness. Whether it is an interpretive rule or a legislative rule, the breadth and vagueness of the Final Rule, and the supposed statutory vagueness on which they are premised, *both* trigger anti-delegation and lenity principles.

And if the vagueness is not eliminated or reduced by applying the Rule of Lenity, then the Fifth Amendment void-for-vagueness doctrine is ultimately implicated. The district court's suggestion, Order 12-13 (App.250-51), that only the absence of *any* standards pose a problem and that a standard need merely be "comprehensible enough" was wrong. True, a law is unconstitutionally vague if it is "so standardless that it invites arbitrary enforcement." *Beckles v. United States*, 580 U.S. 256, 262 (2017). But it is also void for vagueness if it "fails to give ordinary

people fair notice of the conduct it punishes." *Id.* Given that the district court also concluded that the "six criteria by which ATF will make a weapons classification are non-dispositive, and therefore imprecise," Order 13 (App.251), it logically follows that the Final Rule fails to give "fair notice." If *the Agencies themselves* are so perplexed by the statutory definitions of "handgun" and "rifle" that they require an indeterminate six-factor test to decide whether a particular braced pistol is actually a rifle, then Appellants cannot possibly know what items are permitted or restricted.

For example, the Final Rule's incorporation of factors relating to the "manufacturer's direct and indirect marketing and promotional materials" and the device's "likely" use by third parties, Final Rule at 6,480, bakes in a level of uncertainty and, in some cases, unknowability, that provides no guidance for regulated parties facing criminal penalties. And given that the possession of *any item* that the Agencies determine may convert a pistol into a rifle subjects individuals to potential criminal liability for unlawful constructive possession of an unregistered SBR, *see supra* note 5, the consequences of getting that question wrong are enormous. For example, a pistol owner's possession of a piece of wood and some duct tape could, under the Final Rule, be deemed possession of a brace (or stock) that could convert a pistol into an SBR. Accordingly, the Final Rule—far from being "comprehensible enough"—is unconstitutionally vague.

That the regulatory definition supposedly tracks the statutory definition the court already found ambiguous hardly provides a standard that allows the ordinary person to distinguish lawful and protected behavior from unlawful and unprotected behavior. Likewise, that the Final Rule is "comprehensible enough" to put a person on notice that their protected arms "*may* be subject to federal firearms laws," Order 13 (App.251) (emphasis added), essentially proves the point that a vague standard threatens to reach beyond its permissible scope and chills lawful activity. A broad statement that "any and all firearms" are subject to federal criminal laws certainly puts all gun owners on "notice" but equally certainly is unconstitutionally vague.

Such vague uncertainty likewise plays a role in the Final Rule's chilling of First and Second Amendment protected rights. The district court suggested, Order 12 (App.250), that basing potential NFA coverage and criminal liability on the direct and indirect speech of manufacturers and others precluded no one from speaking, but only meant that the government would "listen" to such speech when deciding whether they have violated the law. While it is true that some speech may be the basis for criminal liability—solicitation of a crime or incitement, for example—any vague standard that threatens to *chill* more speech than strictly necessary is unconstitutional. Again, the issue is not whether the government is listening, but whether it may employ vague standards in deciding to *use* such speech as the predicate for punishment. Again, the court below missed the point.

Likewise regarding the Second Amendment, even if the restriction of braced pistols or SBRs were permissible, the vague standards used to distinguish between lawful and unlawful arms unconstitutionally chills protected possession of lawful arms. Given that the constructive possession of an SBR via possession of a lawful pistol and materials that might be combined with it makes even the possession of the pistol itself fraught with legal peril, the Final Rule chills the keeping of protected "Arms."

Whether this Court considers the way that the Final Rule's unconstitutional vagueness chills Appellants' First and Second Amendment protected rights, violates the Fifth Amendment, or triggers the Rule of Lenity to narrow the statute and the permissible scope of the Final Rule, Appellants are likely to succeed on the merits of their other claims too. *See* Pls.' Br. 15-29 (App.113-27); Pls.' Reply 4-6 (App.227-29).

## II.   APPELLANTS FACE IRREPARABLE HARM

Although the district court did not reach this factor in its analysis, Appellants' irreparable injury is beyond dispute. Because Appellants are likely to succeed on the merits of their Second Amendment claims, irreparable injury flows directly from that conclusion. *See Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 295 (5th Cir. 2012) (citations omitted).

18

Furthermore, without an injunction, Appellant Maxim Defense will be unable to sell its brace inventory to pay off debts and thus, unable to purchase new firearm parts, risks going out of business. Third Dahl Decl. ¶ 5 (App.322). And "complying with a regulation later held invalid almost *always* produces the irreparable harm of nonrecoverable compliance costs." *Louisiana v. Biden*, 55 F.4th 1017, 1034 (5th Cir. 2022) (citations omitted; emphasis in original). The Final Rule functionally destroys any viable market for Maxim Defense's braced pistols, which constitute the vast majority of Maxim Defense's firearms sales and account for millions of dollars of sales every year. Dahl Decl. ¶ 6 (App.149-50).

If individuals were willing to accept the burdens associated with NFA-regulated firearms, they would buy a stock not a brace. They buy braces to obtain the benefits of single-handed stability without the burdens of NFA restrictions. Maxim Defense's business was developed in reliance on the statutory distinction between pistols and rifles and on the Agencies' long-standing guidance. Destroying Maxim Defense's customer base and requiring onerous NFA compliance for any few customers that theoretically might remain would be both catastrophic and irreparable.

Individual Appellants fare no better. Both will be subject to the NFA's heightened restrictions, risk criminal penalties for themselves and family members, or will have to forego purchases of new braced pistols and destroy or divest

themselves of their existing constitutionally protected property. *See* Mock Decl. ¶¶ 7-8 (App.158); Lewis Decl. ¶¶ 6-7 (App.155). And both fear criminal prosecution because the Final Rule is so unclear that they "cannot know exactly how to comply[.]" Mock Decl. ¶ 11 (App.159); Lewis Decl. ¶ 10 (App.156).[7] This credible threat of an indictment is also irreparable injury. *Richey v. Smith*, 515 F.2d 1239, 1243 n.10 (5th Cir. 1975).

Appellants are representative of not just Appellant FPC's members, but the millions of Americans and dozens of businesses that would be harmed by the Final Rule. *See* Final Rule at 6,572-73. The irreparable harm thus is wide in its scope as well as its severity.

## III.   THE BALANCE OF THE EQUITIES AND THE PUBLIC INTEREST FAVOR INJUNCTIVE RELIEF

Granting an injunction pending this appeal serves the public interest by preserving the status quo long enough for Appellants to obtain a meaningful decision on the merits before either going out of business or having to destroy their constitutionally protected pistols. *See Canal Auth. of State of Fla. v. Callaway*, 489 F.2d 567, 576 (5th Cir. 1974). The public interest also is served by ensuring "due observance of all the constitutional guarantees," *United States v. Raines*, 362 U.S.

---

[7] And even if they register, the NFA's restrictions on the storage, transport, and sale of putative SBRs severely burden their utility for self-defense.

17, 27 (1960), and the Agencies' "faithful adherence to its statutory mandate," *Jacksonville Port Auth. v. Adams*, 556 F.2d 52, 59 (D.C. Cir. 1977).

By contrast, the Agencies will suffer no harm if forced to maintain the decade-long status quo on what constitutes a "rifle." The Agencies express approval of that status quo for nearly a decade rebuts any imminent harm, as does the Final Rule's 120-day delay in enforcement against individual owners. There is no urgency demanding the Final Rule apply prior to completion of judicial review.

## IV.    THE NATURE OF THE FINAL RULE NECESSITATES A BROAD INJUNCTION TO PROVIDE RELIEF

In order for relief to be effective in this case, the injunction pending appeal must pause the Final Rule in its entirety, not merely as to the named parties in this case. In APA cases, "the scope of injunctive relief is dictated by the extent of the violation established, not by the geographical extent of the plaintiff class." *Nevada v. U.S. Dep't of Labor*, 218 F. Supp. 3d 520, 533-34 (E.D. Tex. 2016) (quotation omitted). Fifth Circuit precedent recognizes this Court's power "to 'set aside'—*i.e.*, formally nullify and revoke—an unlawful agency action," which extends equally to temporary as to permanent relief. *Data Mktg. P'ship, LP v. U.S. Dep't of Labor*, 45 F.4th 846, 859 (5th Cir. 2022) (quotation omitted).

In this case, an injunction limited to Maxim Defense, and not extending to its customers and any intermediaries legally necessary to process sales, would afford no relief at all. If the injunction excludes licensed dealers, retailers, wholesalers, and

other third parties, there is no one who could legally accept or retransfer such items free of the heightened NFA restrictions imposed by the Final Rule. An effective injunction pending appeal thus needs to cover all persons and businesses in the purchase chain from manufacturer to final purchaser, including all Federal Firearms Licensees (FFLs) in between. Likewise with the Individual Appellants and other individual customers, any limitation on the injunction that left a break in the required chain of sale would make it impossible to purchase a braced pistol. And, if the injunction excluded other individuals, family members would remain subject to constructive possession charges even if Appellants themselves were temporarily protected. FPC's many members around the country face similar risks and restrictions. Accordingly, this Court should enjoin the Final Rule in its entirety pending appeal.

## CONCLUSION

This Court should grant an injunction pending appeal by May 24th to prevent immediate irreparable harm to Appellants.

Respectfully submitted,

*/s/ Erik S. Jaffe*
Erik S. Jaffe
  *Counsel of Record*
Joshua J. Prince
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
Telephone: (202) 787-1060

Facsimile: (202) 776-0136
ejaffe@schaerr-jaffe.com
jprince@schaerr-jaffe.com

Cody J. Wisniewski
FPC ACTION FOUNDATION
5550 Painted Mirage Road, Suite 320
Las Vegas, NV 89149
Telephone: (916) 378-5785
Facsimile: (916) 476-2392
cwi@fpchq.org

*Counsel for Plaintiffs-Appellants*

Dated:  May 17, 2023

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. App. P. 25(d) and 5th Cir. R. 25.2.5, I hereby certify that on May 17, 2023, I electronically filed the foregoing motion with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the CM/ECF system, which will accomplish service on counsel for all parties through the Court's electronic filing system.

*/s/ Erik S. Jaffe*
Erik S. Jaffe

## CERTIFICATE OF CONFERENCE

I hereby certify that on March 30 and May 15, 2023, Cody Wisniewski, counsel for Plaintiffs-Appellants, conferred by e-mail with Jody Dale Lowenstein, counsel for Defendants, about the foregoing motion. Defendants oppose the relief requested in this motion.

*/s/ Erik S. Jaffe*
Erik S. Jaffe

Dated: May 17, 2023

## CERTIFICATE OF COMPLIANCE WITH RULE 27.3

I certify the following in compliance with Fifth Circuit Rule 27.3:

- Before filing this motion, counsel for Appellants contacted the clerk's office and opposing counsel to advise them of Appellants' intent to file this motion.

- The facts stated here supporting emergency consideration of this motion are true and complete.

- The Court's review of this motion is requested by May 24, 2023.

- True and correct copies of relevant orders and other documents are attached in the Appendix to this motion.

- This motion is being served at the same time it is being filed.

*/s/ Erik S. Jaffe*
Erik S. Jaffe

Dated: May 17, 2023

## CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limitation of Fed. R. App. P. 27(d)(2) because it contains 5,195 words.

This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and 5th Cir. R. 32.1 and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Additionally, I certify that (1) any required redactions have been made in compliance with 5th Cir. R. 25.2.13; and (2) the document has been scanned with the most recent version of Microsoft Defender virus detector and is free of viruses.

*/s/ Erik S. Jaffe*
Erik S. Jaffe

Dated: May 17, 2023