No. 23-10319

# In the United States Court of Appeals for the Fifth Circuit

WILLIAM T. MOCK; CHRISTOPHER LEWIS;
FIREARMS POLICY COALITION, INCORPORATED, a nonprofit corporation;
MAXIM DEFENSE INDUSTRIES, L.L.C.,

*Plaintiffs-Appellants,*

v.

MERRICK GARLAND, U.S. Attorney General, in his official capacity as
Attorney General of the United States; UNITED STATES DEPARTMENT OF JUSTICE;
BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES;
STEVE DETTELBACH, in his official capacity as the Director of the
Bureau of Alcohol, Tobacco, Firearms and Explosives,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Northern District of Texas, Fort Worth Division
Case No. 4:23-cv-00095-O

**PLAINTIFFS-APPELLANTS' REPLY SUPPORTING THEIR
MOTION FOR INJUNCTION PENDING APPEAL**

Cody J. Wisniewski
FPC ACTION FOUNDATION
5550 Painted Mirage Road, Suite 320
Las Vegas, NV 89149
Telephone: (916) 517-1665
Facsimile: (916) 476-2392
cwi@fpchq.org

Erik S. Jaffe
  *Counsel of Record*
Joshua J. Prince
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
Telephone: (202) 787-1060
Facsimile: (202) 776-0136
ejaffe@schaerr-jaffe.com
jprince@schaerr-jaffe.com

*Counsel for Plaintiffs-Appellants*

# CERTIFICATE OF INTERESTED PERSONS

No. 23-10319

*William T. Mock, et al. v. Merrick Garland, et al.*

I certify that the following persons and entities as described in the fourth sentence of Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made so the judges of this Court may evaluate possible disqualification or recusal:

1) **Plaintiffs-Appellants:**

   William T. Mock

   Christopher Lewis

   Maxim Defense Industries, LLC, a limited liability company, is a wholly owned subsidiary of Maxim Defense Group, Inc., a Florida S-Corp. Maxim Defense Group, Inc., has no parent corporation and there is no publicly held corporation that owns 10% or more of its stock.

   Firearms Policy Coalition, Inc., a nonprofit corporation, has no parent corporation and there is no publicly held corporation that owns 10% or more of its stock.

2) **Defendants-Appellees:**

   Merrick Garland, in his official capacity as Attorney General of the United States

   United States Department of Justice

   Steve Dettelbach, in his official capacity as the Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives

   Bureau of Alcohol, Tobacco, Firearms and Explosives

3) **Counsel for Plaintiffs-Appellants**:

COOPER & SCULLY PC
R. Brent Cooper
Benjamin David Passey

FPC ACTION FOUNDATION
Cody J. Wisniewski

SCHAERR | JAFFE LLP
Erik S. Jaffe
Joshua J. Prince

4) **Counsel for Defendants-Appellees**:

Brian M. Boynton
Brigham J. Bowen
Benjamin Lewis
Sean Janda
Jody Dale Lowenstein
Michael Drezner
Taylor Pitz
Faith E. Lowry

United States Department of Justice

*/s/ Erik S. Jaffe*
Erik S. Jaffe

*Counsel of Record for
Plaintiffs-Appellants*

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ........................................................ i

TABLE OF AUTHORITIES ................................................................................ iv

SUMMARY ...........................................................................................................1

    I.    Appellants Are Likely To Succeed on the Merits. ...............................2

    II.    The Equitable Factors Support Enjoining the Final Rule. ....................8

CONCLUSION ....................................................................................................11

CERTIFICATE OF SERVICE ..............................................................................13

CERTIFICATE OF COMPLIANCE .....................................................................14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Atwood Turnkey Drilling, Inc. v. Petroleo Brasileiro, S.A.*,
  875 F.2d 1174 (5th Cir. 1989) ................................................................................ 9

*Cargill v. Garland*,
  57 F.4th 447 (5th Cir. 2023) .................................................................................. 6

*District of Columbia v. Heller*,
  554 U.S. 570 (2008) ................................................................................ 2, 3, 5, 11

*Ford Motor Co. v. Texas Dept. of Transp.*,
  264 F.3d 493 (5th Cir. 2001) ................................................................................ 8

*Jackson Women's Health Org. v. Currier*,
  760 F3d 448 (5th Cir. 2014) ............................................................................... 10

*Louisiana v. Biden*,
  55 F.4th 1017 (5th Cir. 2022) ............................................................................... 9

*Morgan v. Fletcher*,
  518 F.2d 236 (5th Cir. 1975) .............................................................................. 11

*NYSRPA v. Bruen*,
  142 S. Ct. 2111 (2022) ............................................................................... 4, 5, 11

*Opulent Life Church v. City of Holly Springs, Miss.*,
  697 F.3d 279 (5th Cir. 2012) ................................................................................ 8

*Richey v. Smith*,
  515 F.2d 1239 (5th Cir. 1975) .............................................................................. 9

*United States v. Cox*,
  906 F.3d 1170 (10th Cir. 2018) ............................................................................ 2

*United States v. Rahimi*,
  61 F.4th 443 (5th Cir. 2023) ................................................................................. 3

*United States v. Raines*,
  362 U.S. 17 (1960) .............................................................................................. 10

*Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*,
   459 U.S. 489 (1982) ..............................................................................................8

**Other Authorities**

Fed. R. App. P. 8(a)(1).............................................................................................8

U.S. Patent No. 8,869,444 B2  (issued Oct. 28, 2014),
   https://tinyurl.com/mr3esfhu .............................................................................5

**Statute**

18 U.S.C. § 921(a)(30).............................................................................................1

# SUMMARY

By ignoring the definition of a handgun—a short-stocked firearm "designed to be held and fired by the use of a single hand," 18 U.S.C. § 921(a)(30), the Agencies ignore that a stabilizing brace is designed to facilitate that use. The Final Rule thus ambiguously expands the definition of a "rifle" to intrude upon the definition of a handgun. The Agencies' conveniently malleable I-know-it-when-I-see-it standard (at 3) offers no certainty to law-abiding Americans and instead imposes the intolerable risk that a crime will be in the eye of the prosecuting beholder. But apart from the faux aesthetic similarities between short-barreled rifles ("SBRs") with stocks and pistols with stabilizing braces, it remains clear that the former are designed and intended to be fired from the shoulder and the latter are designed and intended to be braced on the forearm and fired with one hand. That each *could* be used in a manner contrary to their design does not convert one into the other.

Appellants are likely to win on the merits because a braced pistol is a protected bearable arm and the Agencies have not met their burden of showing that the right to keep and bear arms historically allowed NFA-like regulations on braced pistols or SBRs, however defined. And the uncertainty of the Final Rule's requirements (and even the statute as interpreted by the Agencies and the district court) triggers

the Rule of Lenity or the void-for-vagueness doctrine. There is no "goldilocks" level of vagueness between constitutionally protected activity and criminal conduct.

Because the remaining factors also favor an injunction pending appeal, the motion should be granted.

**I.      Appellants Are Likely To Succeed on the Merits.**

1. The Final Rule applies to *firearms* with braces attached, *firearms* capable of accepting them, or any item that *could* convert a pistol into a rifle under the Agencies' new regulation.[1] Braces alone are regulated only if attached *to* or constructively possessed *with*, a pistol, and thus the regulation falls upon the pistol, not the brace as an *objet d'art*. As a braced pistol itself is a bearable arm, it is presumptively protected, Mot. 9-10, and any restriction on that "arm," including what "accessories" it bears, must be justified per *Bruen*.

The Agencies' claim (at 8-9) that braced pistols or SBRs are unprotected "dangerous and unusual" weapons, that both begs the question in this case and is wrong even assuming the mischaracterization. The Agencies are first wrong to

---

[1] The Agencies (at 7-8) argue that a stabilizing pistol, standing alone, is a "firearm accessory," not a Second Amendment protected "bearable arm[]." Opp.8 (citing *United States v. Cox*, 906 F.3d 1170, 1186 (10th Cir. 2018)). That same sophistry could apply to the grip of a pistol, a trigger, a barrel, a rifle stock, and any of the myriad firearm parts that make up various arms. But accepting it would mean the government could declare a single permissible variation of firearm, forbid the use of *any* different "accessories," and thus avoid constitutional scrutiny for a regulation that banned virtually all firearms on the excuse that there remained a single available firearm configuration. *Contra District of Columbia v. Heller*, 554 U.S. 570, 582 (2008).

suggest that "dangerous and unusual weapons" are outside the Second Amendment's scope—the Supreme Court found that history supports some level of regulation. *Heller*, 554 U.S. at 627. The "plain text" of the Second Amendment extends to all "instruments that facilitate armed self-defense"; history supports restrictions only of those instruments that are "dangerous and unusual." *Bruen*, 142 S. Ct. at 2132, 2143. They are next wrong that the "dangerous and unusual" moniker applies to braced pistols or SBRs. Braced pistols are presumptively protected arms commonly used by over a million gunowners who relied on the Agencies' prior interpretations, Mot. 11, even under the largely "obsolete" test cited by the Agencies. *United States v. Rahimi*, 61 F.4th 443, 451 (5th Cir. 2023). And, contrary to the 10th Circuit's reasoning in *Cox*, 906 F.3d at 1186, SBRs are common and presumptively protected too. Mot. 11.[2] Nor have the Agencies shown that braced pistols or SBRs are more dangerous than non-braced pistols or other semiautomatic rifles. If anything, they are safer for one-handed firing. The Agencies thus offer no relevant history to meet their burden to show braced pistols or SBRs were excluded from the right's scope.

The Agencies next irrelevantly claim (at 12) that the NFA does not completely ban possession of braced pistols, but only requires a license. That ignores the NFA's many further restrictions beyond mere licensing for covered firearms, which

---

[2] Indeed, agreeing with the Agencies that braced pistols are SBRs means that SBRs are *more* common than they otherwise would be.

3

severely restrict possession, use, transport, transfer, and more. Mot. 20 n.7. Furthermore, *Bruen* struck down a licensing system less than a complete ban because even the less-than-absolute restrictions were not proven to be within the historical limits on the scope of the right to bear arms. *NYSRPA v. Bruen*, 142 S. Ct. 2111, 2156 (2022). The Agencies repeated citation of *Bruen*'s footnote 9—to claim that registration regimes are categorically constitutional—overreads that dicta and ignores the qualifier that even "shall-issue regimes" could still unconstitutionally burden the right to carry with "lengthy wait times" or "exorbitant fees." *Id.* at 2138 n.9; *see* App.133 ("[T]he Agencies commonly impose delays of many months to over one year with respect to acquiring the government's permission to take possession of the [NFA-covered] firearms at issue.").[3] It also ignores that registration is merely the start, not the end, of the NFA restrictions imposed by the Final Rule's recategorization of pistols as SBRs. *Bruen*'s footnote does not endorse *any* possible restrictions attached to a "registration" requirement. Here, those resulting restrictions render the Final Rule unconstitutional.

2. The Agencies (at 13) dismiss the district court's erroneous flipping of the historical burden as "immaterial," but do nothing to show they would likely carry that burden or that the district court could reasonably have so found. Even at the

---

[3] The Agencies also cite (at 6) Justice Kavanaugh's concurrence for this point, but they provide no explanation for how a concurring opinion can override a majority opinion.

4

preliminary-injunction stage, App. 311; *accord* Texas Br. 5, the Agencies cannot support the Final Rule with anything beyond questionable outliers that do not comprise a historical *tradition* of limitation on the right to keep and bear arms. The few statutes the Agencies cite are from inapposite time periods either long before or long after the Second Amendment—the unquestionably relevant period for *federal* regulations. Both *Heller* and *Bruen* hold that a few outlier laws are inadequate, *see Heller*, 554 U.S. at 632; *Bruen*, 142 S. Ct. at 2142, and the outlier laws cited by the Agencies do not enlighten the scope of the *right* as understood at the founding. *See Bruen*, 142 S. Ct. at 2143-46, 2154 & n.28. And, as Texas explains, "voluminous historical evidence … confirm[s] that the Brace Rule is an unconstitutional infringement on the right to bear arms." Texas Br. 5 n.4.

    3. As for the various legal failings relating to the vagueness of the Final Rule, the Agencies (at 12-13) conflate the mere *capability* of firing a firearm from the shoulder with the design of a weapon to fire from the shoulder. But a pistol brace is designed to attach to a handgun, wrap around the wrist or forearm, and thus facilitate firing with a single hand, as seen in the drawing below. *See* Mot. 5 & n.2.[4]

---

[4] U.S. Patent No. 8,869,444 B2, at Sheet 1 (issued Oct. 28, 2014), https://tinyurl.com/mr3esfhu.

5



FIG. 1

FIG. 2   FIG. 3

That it might be used contrary to its design to fire from the shoulder no more makes it a rifle than does the potential to fire a true rifle with one hand convert it into a pistol.[5] That the mere misuse of a pistol contrary to its plain design and intent could convert it into an NFA-regulated SBR shows the impermissible breadth and ambiguity of the Final Rule.

The Agencies next argue (at 13) that the statutory ambiguity recognized by the district court is not sufficiently "grievous" to trigger the Rule of Lenity. But *Cargill* recognized the further Supreme Court standard of "reasonable doubt" as a trigger for lenity. *Cargill v. Garland*, 57 F.4th 447, 469 (5th Cir. 2023) (en banc).

---

[5] The Agencies' attempt (at 5) to replace actual design intent with what they falsely deem "objective" factors, ignore their own long-held position that manufacturers' intent trumps any potential for contrary use. Texas Br. 9 & n.5.

And, even under the tougher standard, the indeterminate Final Rule and the purported ambiguity that the district court believed allows such indeterminacy are sufficiently grievous that a reasonable person would be unable to conform their behavior without ceasing a broad swath of constitutionally-protected conduct to steer far clear of the ambiguous line.[6] That is not acceptable in either the First or Second Amendment context, both of which are present here.

The Agencies also argue (at 16) that because braced pistols are only regulated, not banned and "individuals can seek clarification" on the registration requirements, the Final Rule has no chilling effect. But rights can be chilled in ways that "fall short of a direct prohibition," and the ability to seek time-consuming clarification provides no solace to a gun owner seeking to exercise her rights *now*. Mot. 13. The option to play Mother May I does not cure unconstitutional vagueness. And the Final Rules' considering manufacturers' and others' speech how braced pistols *can* be fired is impossible to predict and ever changing.

The *Village of Hoffman* factors for a facial vagueness claims offer little help given that the Agencies (at 14, 15) conveniently neglect "perhaps the most important factor" demanding a "more stringent vagueness test" is whether a law "threatens to inhibit the exercise of constitutionally protected rights." *Vill. of Hoffman Estates v.*

---

[6] While Appellants maintain that the statutes unambiguously *preclude* the Final Rule, to the extent the court below relied upon ambiguity to *permit* the Final Rule, lenity prevents that ambiguity being resolved in favor of the Agencies.

*Flipside, Hoffman Estates, Inc.*, 459 U.S. 489, 499 (1982); *accord Ford Motor Co. v. Texas Dept. of Transp.*, 264 F.3d 493, 508 (5th Cir. 2001).

## II.   The Equitable Factors Support Enjoining the Final Rule.

1. As for irreparable harm, the Agencies falsely claim that Appellants "substantial delay[ed]" seeking relief, knowing that Appellants moved below for an injunction pending appeal the same day that their preliminary-injunction motion was denied. App.007-008. Appellants cannot be faulted for following standard appellate procedure and only turning to this Court when their district-court motion was not timely resolved. Fed. R. App. P. 8(a)(1).

2. The Agencies' denial (at 16) of irreparable harm from simply applying the NFA is belied by a decade of their own contrary reading of the statute to exclude braced pistols, begs the question of interpretations and lenity, and is irrelevant to the Second Amendment issue. Mot. 1; *accord* Texas Br. 9 n.5.

The loss of Appellants' Second Amendment-protected rights, whether based on rule or (misread) statute, constitutes irreparable injury. *See Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 295 (5th Cir. 2012) (citations omitted). Without an injunction, Maxim Defense and the individual Appellants continue to suffer irreparable constitutional harm while the Agencies will suffer nothing at all. The Agencies' disingenuous claim (at 16) that they are merely "inform[ing]" Appellants of how they read the statute and that they "might" have to comply with

8

that reading ignores that the threat of criminal prosecution hangs in the balance, which is plainly an injury Appellants cannot be expected to bear. Pre-enforcement relief exists for precisely these circumstances.

Far from a *de minimis* burden (at 17), the Agencies' Rule has functionally destroyed the market for braced pistols. Appellant Maxim Defense substantially depends on its braced pistol firearm sales to remain afloat. Dahl Dec. ¶ 6 (App. 149-50). Without an injunction, Maxim Defense has a clear trajectory: closing shop. App.153. That's not a *de minimis* regulatory burden—the "threat[]" to "the existence of the movant's business" is the epitome of irreparable harm. *See Atwood Turnkey Drilling, Inc. v. Petroleo Brasileiro, S.A.*, 875 F.2d 1174, 1179 (5th Cir. 1989); *Louisiana v. Biden*, 55 F.4th 1017, 1034 (5th Cir. 2022) ("irreparable harm of nonrecoverable compliance costs" that stem from "complying with a regulation" this Court is sure to later "h[o]ld invalid." ) (citations omitted).

Individual Appellants also face the credible threat of indictment, and such threatened criminal restrictions imposes an irreparable dilemma of foregoing constitutionally protected rights or risking prison. *See Richey v. Smith*, 515 F.2d 1239, 1243 n.10 (5th Cir. 1975). The vagueness of the Final Rule compounds the problem, increasing the risk that Appellants will *inadvertently* violate the criminal statute. As Texas explains, ATF's own director is confused about what the Final Rule does and requires. Texas Br. 3. The Agencies' notion (at 19) that compliance

9

with the NFA's registration and further requirements would eliminate any injury and allow possession of braced pistols ignores that such further requirements are onerous and are themselves serious burdens on Second Amendment-protected rights. Mot. 20 n.7. Such burdens and associated delays would deter possession of braced pistols. And beyond the Individual Appellants, everyday Americans and businesses that are in or would be in the market for braces will likely misunderstand what is required to comply with the ambiguous rule, risking indictment and potential business harm, underscoring the need for broad relief. *See* Texas Br. 8-9.

3. The balance of the equities and the public interest also favor Appellants. "It is always in the public interest to prevent the violation of a party's constitutional rights." *Jackson Women's Health Org. v. Currier*, 760 F3d 448, 458 n.9 (5th Cir. 2014) (citation omitted). The Agencies (at 20) cite nothing to support their claim that inchoate assertions of "public safety" can trump this constitutional interest and offer no support for any threat to such safety from braced pistols or, for that matter, even SBRs. Such bare assertions have never sufficed to overcome the public interest in "due observance of all the constitutional guarantees." *United States v. Raines*, 362 U.S. 17, 27 (1960). And *Heller* expressly rejected such constitutional re-weighing where the Second Amendment itself "is the very product of an interest balancing by the people" that "elevates above all other interests the right of law-abiding,

10

responsible citizens to use arms." *Heller*, 554 U.S. at 635. That balance "demands … unqualified deference." *Bruen*, 142 S. Ct. at 2121.

The Agencies amusingly claim (at 19) a public interest in regulatory clarity, but the vague and "imprecise" Final Rule hardly improves clarity. App.251. And, as Texas and others explain, that confusion comes at a cost—both to the reliance interests of gunowners who took the Agencies at their word for a decade that a braced pistol is not an SBR and to those who choose to register who must "admit to violations of law as a condition of amnesty." Texas Br. 8-9. Maintaining the pre-Rule status quo serves regulatory "clarity" far better than does the Final Rule.

In sum, Appellants face irreparable harm absent an immediate injunction, and the Agencies lose nothing by maintaining the status quo definition of a rifle employed for decades and postponing the application of an uncertain Rule already delayed for 120 days. Because "[a]dequate compensatory or other corrective relief" for Appellants will not "be available at a later date," *Morgan v. Fletcher*, 518 F.2d 236, 250 (5th Cir. 1975), this Court should grant the injunction immediately to prevent further irreparable harm.

## CONCLUSION

This Court should enjoin the Final Rule pending appeal.

Respectfully submitted,

*/s/ Erik S. Jaffe*
Erik S. Jaffe
  *Counsel of Record*
Joshua J. Prince
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
Telephone: (202) 787-1060
Facsimile: (202) 776-0136
ejaffe@schaerr-jaffe.com
jprince@schaerr-jaffe.com

Cody J. Wisniewski
FPC ACTION FOUNDATION
5550 Painted Mirage Road, Suite 320
Las Vegas, NV 89149
Telephone: (916) 378-5785
Facsimile: (916) 476-2392
cwi@fpchq.org

*Counsel for Plaintiffs-Appellants*

Dated:  May 22, 2023

# CERTIFICATE OF SERVICE

Pursuant to Fed. R. App. P. 25(d) and 5th Cir. R. 25.2.5, I hereby certify that on May 22, 2023, I electronically filed the foregoing reply with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the CM/ECF system, which will accomplish service on counsel for all parties through the Court's electronic filing system.

*/s/ Erik S. Jaffe*
Erik S. Jaffe

## CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limitation of Fed. R. App. P. 27(d)(2) because it contains 2,599 words.

This motion also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and 5th Cir. R. 32.1 and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Additionally, I certify that (1) any required redactions have been made in compliance with 5th Cir. R. 25.2.13; and (2) the document has been scanned with the most recent version of Microsoft Defender virus detector and is free of viruses.

*/s/ Erik S. Jaffe*
Erik S. Jaffe

Dated: May 22, 2023