**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| SECOND AMENDMENT FOUNDATION, *et al.*, <br><br>       *Plaintiffs*, <br><br>   v. <br><br> BUREAU OF ALCOHOL, TOBACCO, FIREARMS, AND EXPLOSIVES, *et al.*, <br><br>       *Defendants*. | No. 3:21-cv-0116-B |

**DEFENDANTS' OPPOSITION TO NRA'S MOTION TO INTERVENE AND
FOR A PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................................1

LEGAL STANDARDS .........................................................................................................2

ARGUMENT .......................................................................................................................3

I.     The NRA May Not Intervene as of Right ...............................................................3

       A.     The NRA's Motion is Untimely ...................................................................3

       B.     Denial of Intervention Would Not Impair the NRA from Protecting a Cognizable Interest.........................................................................................8

       C.     Plaintiffs' Representation of NRA's Interests is Adequate ...........................11

II.    Permissive Intervention is Inappropriate ...............................................................13

III.   A Preliminary Injunction Should Not Issue as to the NRA and its Members.........................15

       A.     The NRA Fails to Show a Likelihood of Success on the Merits...................16

       B.     The NRA Fails to Demonstrate Irreparable Harm .......................................18

       C.     The Equities and the Public Interest Weigh Against a Preliminary Injunction. .........19

CONCLUSION...................................................................................................................21

## TABLE OF AUTHORITIES

### Cases

*Adam Joseph Resources v. CNA Metals Ltd.*,
   919 F.3d 856 (5th Cir. 2019) ................................................................................................10

*Allied Mktg. Grp., Inc. v. CDL Mktg., Inc.*,
   878 F.2d 806 (5th Cir. 1989) ..................................................................................................3

*Aransas Project v. Shaw*,
   404 F. App'x 937 (5th Cir. 2010) ..........................................................................................14

*Aransas Project v. Shaw*,
   No. CIVA C-10-75, 2010 WL 2522415 (S.D. Tex. June 17, 2010) .......................................14

*Buchanan v. Sirius XM Radio, Inc.*,
   No. 3:17-CV-0728-D, 2019 WL 4054930 (N.D. Tex. Aug. 28, 2019) ..................................10

*Children's Health Def. v. Food & Drug Admin.*,
   No. 6:22-CV-00093-ADA, 2023 WL 175004 (W.D. Tex. Jan. 12, 2023) .............................17

*Chyba v. EMC Mortg. Corp.*,
   No. 4:11-CV-123-Y, 2011 WL 13205939 (N.D. Tex. Feb. 25, 2011) ...................................18

*Citadel Recovery Servs., LLC v. T.J. Sutton Enterprises, LLC*,
   No. CV 19-12271, 2021 WL 5505533 (E.D. La. Mar. 15, 2021) ...........................................5

*Concerned Citizens Around Murphy v. Murphy Oil USA, Inc.*,
   686 F. Supp. 2d 663 (E.D. La. 2010) ...................................................................................16

*Daily Instruments Corp. v. Heidt*,
   998 F. Supp. 2d 553 (S.D. Tex. 2014) ....................................................................................6

*Deus v. Allstate Ins. Co.*,
   15 F.3d 506 (5th Cir. 1994) ..................................................................................................10

*Dias v. S. Drilling Corp.*,
   427 F.2d 1118 (5th Cir. 1970) ................................................................................................9

*Div. 80, LLC v. Garland*,
   No. 3:22-cv-148, 2022 WL 3648454 (S.D. Tex. Aug. 23, 2022) ..........................................18

*Effjohn Int'l Cruise Holdings, Inc. v. A&L Sales, Inc.*,
   346 F.3d 552 (5th Cir. 2003) ..................................................................................................3

*EHO360, LLC v. Opalich*,
   No. 3:21-CV-0724-B, 2022 WL 3139752 (N.D. Tex. Aug. 5, 2022) ......................................6

*Entergy Gulf States Louisiana, LLC v. U.S. EPA,*
817 F.3d 198 (5th Cir. 2016) ..................................................................................13

*Field v. Anadarko Petroleum Corp.,*
35 F.4th 1013 (5th Cir. 2022) ........................................................................5, 8, 11

*Fisher v. Halliburton,*
No. CIV.A. H-05-1731, 2006 WL 1291474 (S.D. Tex. May 8, 2006) ....................7

*Friends of the Earth, Inc. v. Chevron Chem. Co.,*
129 F.3d 826 (5th Cir. 1997) ..................................................................................16

*Gilyard v. Texas Laurel Ridge Hosp. LP,*
No. SA-07-CA-650-OG, 2009 WL 10670038 (W.D. Tex. Feb. 18, 2009)............10

*Guenther v. BP Ret. Accumulation Plan,*
50 F.4th 536 (5th Cir. 2022) ..................................................................................12

*Gulf Island Shipyards, LLC v. LaShip, LLC,*
No. CV 22-154, 2023 WL 372083 (E.D. La. Jan. 24, 2023) .............................14-15

*Haspel & Davis Milling & Planting Co. v. Bd. of Levee Comm'rs of Orleans Levee Dist.,*
493 F.3d 570 (5th Cir. 2007) ....................................................................................2

*Helt v. Sethi Petroleum, LLC,*
No. 20-40240, 2022 WL 127977 (5th Cir. Jan. 13, 2022) .....................................11

*Hunt v. Wash. State Apple Advert. Comm'n,*
432 U.S. 333 (1977) ................................................................................................16

*In re Lease Oil Antitrust Litig.,*
570 F.3d 244 (5th Cir. 2009) ....................................................................................3

*John Doe 1 v. Glickman,*
256 F.3d 371 (5th Cir. 2001) ....................................................................................5

*Kneeland v. Nat'l Collegiate Athletic Ass'n,*
806 F.2d 1285 (5th Cir. 1987) ..................................................................................2

*Louisiana v. Becerra,*
20 F.4th 260 (5th Cir. 2021) ..............................................................................6, 21

*Mack v. Smith,*
No. 5:15-CV-202, 2017 WL 1129905 (E.D. Tex. Mar. 27, 2017).........................18

*Mazurek v. Armstrong,*
520 U.S. 968 (1997) ..................................................................................................3

*Miss. Power & Light Co. v. United Gas Pipe Line Co.,*
    760 F.2d 618 (5th Cir. 1985) ............................................................................................15

*New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.,*
    732 F.2d 452 (5th Cir. 1984) ....................................................................................2, 3, 13

*Nipponkoa Ins. Co. v. Port Terminal R.R. Ass'n,*
    No. CIV.A. H-10-0284, 2011 WL 1103584 (S.D. Tex. Mar. 23, 2011) ..............................14

*Nken v. Holder,*
    556 U.S. 418 (2009) ........................................................................................................19

*Petteway v. Galveston Cnty.,*
    --- F. Supp. 3d --- , 2023 WL 2782705 (S.D. Tex. Mar. 30, 2023)....................................16

*Rotstain v. Mendez,*
    986 F.3d 931 (5th Cir. 2021) .............................................................................................6

*Russell v. Harris Cnty.,*
    No. CV H-19-226, 2020 WL 6784238 (S.D. Tex. Nov. 18, 2020) .......................................8

*Safari Club Int'l v. Salazar,*
    852 F. Supp. 2d 102 (D.D.C. 2012) .................................................................................17

*SEC v. Bear, Stearns & Co., Inc.,*
    No. 03-cv-2937, 2003 WL 22000340 (S.D.N.Y. Aug. 25, 2003) ......................................15

*Shenzhen Tange Li'An E-Com., Co. v. Drone Whirl LLC,*
    No. 1:20-CV-738-RP, 2020 WL 5237267 (W.D. Tex. Sept. 2, 2020) ...............................19

*Speech First, Inc. v. Fenves,*
    979 F.3d 319 (5th Cir. 2020) ...........................................................................................16

*St. Bernard Par. v. Lafarge N. Am., Inc.,*
    914 F.3d 969 (5th Cir. 2019) ......................................................................................5, 13

*Stewart v. City of Houston,*
    No. CIV.A H-07-4021, 2009 WL 783319 (S.D. Tex. Mar. 24, 2009) ................................10

*Students for Fair Admissions, Inc. v. Univ. of Tex. at Austin,*
    338 F.R.D. 364 (W.D. Tex. 2021) ...................................................................................11

*Summers v. Earth Island Institute,*
    555 U.S. 488 (2009) ........................................................................................................16

*Supreme Beef Processors, Inc. v. USDA,*
    No. 99-cv-2713, 2000 WL 127281 (N.D. Tex. Feb. 2, 2000)............................................11

*Texas v. Biden*,
   10 F.4th 538 (5th Cir. 2021) ...................................................................................................18

*Texas v. United States*,
   805 F.3d 653 (5th Cir. 2015) ....................................................................................................2

*Texas v. United States*,
   No. 4:18-cv-00167, 2018 WL 4076510 (N.D. Tex. June 15, 2018) ....................................11

*Trump v. Hawaii*,
   138 S. Ct. 2392 (2018) ............................................................................................................21

*United States v. Tex. E. Transmission Corp.*,
   923 F.2d 410 (5th Cir. 1991) ..................................................................................................10

*Virden v. City of Austin*,
   No. 1:21-CV-271-RP, 2021 WL 2744572 (W.D. Tex. July 1, 2021) ...................................19

*Wal–Mart Stores, Inc. v. Texas Alcoholic Beverage Comm'n*,
   834 F.3d 562 (5th Cir. 2016) ....................................................................................................8

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) ......................................................................................................................3

*Zimmerman v. City of Austin*,
   881 F.3d 378 (5th Cir. 2018) ..................................................................................................17

**Rules**

Fed. R. Civ. P. 24 .........................................................................................................................2, 3

**Regulations**

*Factoring Criteria for Firearms With Attached "Stabilizing Braces,"*
   88 Fed. Reg. 6,478 (Jan. 31, 2023) ...............................................................................1, 17, 20

**Other Authorities**

NRA-ILA, *ATF Plans to Finalize Pistol Brace Rule in January* (January 4, 2023),
   https://perma.cc/XAH5-GD44 ..................................................................................................4

NRA-ILA, *ATF Posts "Final" Rule on Stabilizing Braces* (Jan. 17, 2023),
   https://perma.cc/9C4V-QA7G ..................................................................................................4

NRA-ILA, *Biden Administration Continues Push to Target Firearms with Attached Stabilizing Braces*
   (Dec. 12, 2022),
   https://perma.cc/DP45-3R92 ....................................................................................................4

NRA-ILA, *NRA Challenges ATF Brace Rule* (Feb. 9, 2023),
    https://perma.cc/N7WR-ESDE ................................................................................................4

NRA-ILA, *Updates to ATF Final Rule on Stabilizing Braces* (Jan. 30, 2023),
    https://perma.cc/SJR5-RV8Z ................................................................................................4

## INTRODUCTION

The National Rifle Association ("NRA") seeks to intervene in this action to obtain immediate preliminary relief from a rule that the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") promulgated earlier this year, *Factoring Criteria for Firearms With Attached "Stabilizing Braces,"* 88 Fed. Reg. 6,478 (Jan. 31, 2023) ("Rule").  Yet after ATF published the Rule in January 2023, the NRA sat on its hands for months while multiple parties litigated cases challenging the Rule in federal court.  In some of these cases, preliminary relief was awarded, and in others similar motions were denied.  Now, over four months after the promulgation of the Rule, the NRA seeks to intervene in this matter precisely because a preliminary injunction was ordered as to Plaintiffs here, and the NRA now asks this Court to broaden the injunction to cover millions of its purported members.  But the Court should deny this attempt at injunction-shopping for several reasons.

*First*, the NRA is not entitled to intervene as of right.  Its motion comes months too late and is therefore untimely.  Moreover, the NRA has no direct interest in this litigation, let alone an interest that would be impaired if intervention is denied.  Indeed, the NRA has no need to intervene in this case, as it concedes that it can file its own lawsuit to challenge the Rule.  And even setting that aside, Plaintiffs adequately represent the NRA's interest in seeking to vacate the Rule.

*Second*, permissive intervention would be inappropriate.  As noted, the NRA's motion to intervene is not timely, and injecting the NRA into the case at this date would plainly complicate the proceedings and prejudice the Government.

*Third*, and finally, the NRA has not shown any of the prerequisites to obtain a preliminary injunction.  The NRA fails to demonstrate a likelihood of success as to any claim; indeed, the group is unable to show associational standing to bring suit at all.  The NRA's sole identified member claims only a self-inflicted injury stemming from his apparent decision to forego registration of his

1

short-barreled rifle.  Such self-inflicted injury and the NRA's significant delay in bringing suit also preclude a finding of irreparable harm.  The balance of the equities and public interest similarly weigh against an injunction.

Accordingly, the NRA's motion to intervene and for a preliminary injunction should be denied.

## LEGAL STANDARDS

*Intervention as of right.* Federal Rule of Civil Procedure 24(a)(2) establishes four requirements for intervention as of right: "(1) the application for intervention must be timely; (2) the applicant must have an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; [and] (4) the applicant's interest must be inadequately represented by the existing parties to the suit." *Haspel & Davis Milling & Planting Co. v. Bd. of Levee Comm'rs of Orleans Levee Dist.*, 493 F.3d 570, 578 (5th Cir. 2007) (quoting *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.* ("*NOPSI*"), 732 F.2d 452, 463 (5th Cir. 1984)).  "Failure to satisfy any one requirement precludes intervention of right."  493 F.3d at 578.  A would-be intervenor bears the burden of establishing that it satisfies each requirement.  *See Texas v. United States*, 805 F.3d 653, 656 (5th Cir. 2015).

*Permissive intervention.* Federal Rule of Civil Procedure 24(b)(1)(B) governs permissive intervention: "On timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact."  Even where these requirements are satisfied, "[p]ermissive intervention 'is wholly discretionary with the [district] court.'"  *Kneeland v. Nat'l Collegiate Athletic Ass'n*, 806 F.2d 1285, 1289 (5th Cir. 1987) (quoting *NOPSI*, 732 F.2d at 470-71).  In resolving a request for permissive intervention, the Court should consider, *inter alia*, "whether the intervenors' interests are adequately represented by other parties"; "whether

they 'will significantly contribute to full development of the underlying factual issues in the suit'"; and "[t]he effect [of intervention] on the existing parties." *NOPSI*, 732 F.2d at 472-73 (citations omitted).

> *Preliminary injunctive relief.* "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). To justify this "drastic remedy," a plaintiff must make a "*clear showing*" that (1) it has a substantial likelihood of success on the merits; (2) it will suffer irreparable harm without the requested injunction; (3) the balance of equities tips in its favor; and (4) preliminary relief serves the public interest. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (citation omitted). Failure to demonstrate any one of these elements requires denial of preliminary relief. *Allied Mktg. Grp., Inc. v. CDL Mktg., Inc.*, 878 F.2d 806, 809 (5th Cir. 1989).

## ARGUMENT

## I.    The NRA May Not Intervene as of Right

### A.    The NRA's Motion is Untimely

Intervention as of right may only be granted "[o]n timely motion[.]" Fed. R. Civ. P. 24(a). Timeliness "should be determined based on *all* the circumstances." *Effjohn Int'l Cruise Holdings, Inc. v. A&L Sales, Inc.*, 346 F.3d 552, 561 (5th Cir. 2003) (citation omitted). The Fifth Circuit's test for timeliness of intervention requires the Court to consider "(1) the length of time between the would-be intervenor's learning of his interest and his petition to intervene, (2) the extent of prejudice to existing parties from allowing late intervention, (3) the extent of prejudice to the would-be intervenor if the petition is denied, and (4) any unusual circumstances." *In re Lease Oil Antitrust Litig.*, 570 F.3d 244, 247-48 (5th Cir. 2009). Under all these factors, the NRA's motion to intervene is untimely.

The NRA admits a nearly two-year interest in the ATF's regulation of stabilizing braces. Specifically, the NRA notes that it submitted public comments on September 8, 2021, "opposing the

3

ATF's proposal to regulate stabilizing braces."  Compl. in Intervention for Declaratory & Inj. Relief, ¶ 29, ECF No. 71-1 ("NRA Compl.").  The NRA also repeatedly issued statements indicating its awareness of, and opposition to, the Rule, even prior to its issuance.  *See, e.g.,* NRA-ILA, *ATF Plans to Finalize Pistol Brace Rule in January* (January 4, 2023), https://perma.cc/XAH5-GD44 ("[O]n December 20, 2022, NRA-ILA staff met with the Office of Information and Regulatory Affairs (OIRA), which was conducting its review of ATF's final rule."); NRA-ILA, *Biden Administration Continues Push to Target Firearms with Attached Stabilizing Braces* (Dec. 12, 2022), https://perma.cc/DP45-3R92 ("It seems like we have been warning about the [forthcoming regulation] . . . for quite some time.").  And as the publication date approached, the NRA expressed its intent to take legal action opposing the Rule.  *See, e.g.,* NRA-ILA, *Updates to ATF Final Rule on Stabilizing Braces* (Jan. 30, 2023), https://perma.cc/SJR5-RV8Z ("NRA-ILA is already working on litigation to challenge this arbitrary and capricious attack on law-abiding gun owners by the Biden Administration."); NRA-ILA, *ATF Posts "Final" Rule on Stabilizing Braces* (Jan. 17, 2023), https://perma.cc/9C4V-QA7G ("NRA and other groups are already preparing litigation to challenge the rule.").

Yet after the Rule was issued, the NRA filed no legal challenge.  Instead, on February 6, 2023 the group announced that it "backed and supported" a lawsuit challenging the Rule, in the District of North Dakota.  NRA-ILA*, NRA Challenges ATF Brace Rule* (Feb. 9, 2023), https://perma.cc/N7WR-ESDE.  How exactly the NRA "backed" and "supported" this lawsuit is unclear, but the NRA has never been a party in that action.  For over four months since that time, the NRA has declined to initiate any legal action on behalf of itself or its members.  In the interim, eight separate actions were filed in federal court opposing the Rule.  *See Britto v. ATF*, No. 2:23-cv-19 (N.D. Tex.); *Firearms Regul. Accountability Coal., Inc. v. Garland*, No. 1:23-cv-24 (D.N.D.); *Miller v. Garland*, No. 1:23-cv-195 (E.D. Va.); *Second Amend. Found. v. ATF*, No. 3:21-cv-116 (N.D. Tex.);

*Texas v. ATF*, No. 6:23-cv-13 (S.D. Tex.); *Watterson v. ATF*, No. 4:23-cv-80 (E.D. Tex.); *Mock v. Garland*, No. 4:23-cv-95 (N.D. Tex.). And in seven of these cases, courts have issued rulings on their respective motions for a preliminary injunction. Only *after* this Court granted a preliminary injunction as to Plaintiffs in this action did the NRA take any legal action on behalf of its members. In this circumstance, where the NRA was aware of the Rule and its surrounding litigation, and voluntarily waited to bring suit until after Plaintiffs in this matter received a favorable decision on preliminary relief, the NRA's motion to intervene is untimely.

The NRA does not attempt to explain its months-long delay. Instead, the NRA asserts that the relevant start-date for timeliness is not January 31, 2023, when the Rule was published, but instead May 25 or May 31, the dates on which this Court entered orders concerning the scope of its preliminary injunction. NRA Mot. at 10. But as the Fifth Circuit recently made clear, "[t]he question 'is 'not when [an intervenor] knew or should have known that [its] interests would be adversely affected but, instead, when [it] knew that it had an interest in the case.'" *Field v. Anadarko Petroleum Corp.*, 35 F.4th 1013, 1018 (5th Cir. 2022) (citing *St. Bernard Par. v. Lafarge N. Am., Inc.*, 914 F.3d 969, 974 (5th Cir. 2019)). The NRA's delay in moving for intervention from the time it was aware of its interest in this case, especially in the context of numerous other fast-moving cases challenging the same regulation, precludes a finding of timeliness. *See Citadel Recovery Servs., LLC v. T.J. Sutton Enterprises, LLC*, No. CV 19-12271, 2021 WL 5505533, at *4-*5 (E.D. La. Mar. 15, 2021) (holding that delay of three months after "actual knowledge" of interest was "rather lengthy and is suggestive to the Court that Travelers 'dawdled' after discovering its interests might be affected by this litigation").

The NRA relies on inapposite case law stating that timeliness can run from when an applicant "became aware that his [interest] would no longer be protected by the existing parties to the lawsuit." *John Doe 1 v. Glickman*, 256 F.3d 371, 376 (5th Cir. 2001). Even assuming that this

language is consistent with *Anadarko Petroleum Corporation*, it does not support the NRA here.

In circumstances like class actions it may be "preferable" to use the date when an intervenor became aware that his interest "would no longer be protected" by the existing parties, because a contrary rule would incentivize early intervention, contrary to the "principal function of a class suit[.]" *See Rotstain v. Mendez*, 986 F.3d 931, 937 (5th Cir. 2021). By contrast, where litigants seek the extraordinary relief of a preliminary injunction, parties must seek relief from purported irreparable harm without undue delay. *See Daily Instruments Corp. v. Heidt*, 998 F. Supp. 2d 553, 570 (S.D. Tex. 2014) ("Absent a good explanation, a substantial period of delay militates against the issuance of a preliminary injunction[.]"). Because the NRA seeks a preliminary injunction, where timely action is of the essence, it is appropriate to evaluate timeliness from when the NRA first knew of its interest in the case. And under that standard, the NRA did not act in a timely fashion.

Even if the other start-point applies—the date when the NRA knew other parties might not protect its interest—the result would be the same. The NRA avers that its interest in this matter concerns preventing application of firearm regulations as to its members. Br. in Supp. of Partially Unopposed Mot. to Intervene & for a Prelim. Inj. 13, ECF No. 70 ("NRA Mot."). But at no point did Plaintiffs in this case, or indeed any other case, seek tailored relief for NRA members. The NRA was thus aware from this suit's inception that its members may not receive injunctive relief. Moreover, the Fifth Circuit disfavors nationwide injunctions in similar circumstances, *see Louisiana v. Becerra*, 20 F.4th 260, 263 (5th Cir. 2021), and the NRA had no basis to assume that one would be awarded and its members thereby protected. Accordingly, even if this Court were to look when the NRA was aware its purported interests might not be protected, that date would also fall on the inception of this lawsuit. *See EHO360, LLC v. Opalich*, No. 3:21-CV-0724-B, 2022 WL 3139752, at *7 (N.D. Tex. Aug. 5, 2022) (Boyle, J.) (holding that motion to intervene was untimely in part because putative intervenor knew at the beginning of dispute that "its interest might not be fully

protected by Defendants[]").

      The remaining prongs of the timeliness inquiry similarly weigh against the NRA.  While the

NRA argues that "no party would suffer any prejudice," by granting its motion to intervene, the

Government is plainly prejudiced by the NRA's belated attempt to inject itself into this litigation.

NRA Mot. at 11.  For example, the Government has moved for a stay of district court proceedings

pending the Fifth Circuit's resolution of the expedited appeal in *Mock v. Garland*, No. 23-cv-95 (N.D.

Tex.), *see* ECF No. 80, and that request has now been complicated by simultaneous briefing as to

NRA's request for intervention and for a preliminary injunction.  Moreover, the Government is

forced to litigate the NRA's request for intervention and a preliminary injunction on an expedited

timetable, all after the original Plaintiffs' motion was adjudicated.  Finally, entry of the NRA into this

case plainly complicates adjudication of the matter.  The parties and the court will be compelled to

address the NRA's standing, entitlement to relief, and legal claims.  *See Fisher v. Halliburton*, No.

CIV.A. H-05-1731, 2006 WL 1291474, at *2 (S.D. Tex. May 8, 2006) (finding intervention untimely

where "intervention would unnecessarily complicate this action").

      By contrast, the NRA would suffer no prejudice if intervention is denied.  The group asserts

that its members would be "severely prejudiced" without intervention, since "the NRA's members

can only be protected by the NRA in this proceeding."  NRA Mot. at 11-12.  But this contention

makes no sense.  As explained in detail below, the NRA can simply file is own lawsuit if intervention

is denied, and accordingly would suffer no prejudice from a denial of intervention here.  Moreover,

the instant case has no greater connection to the NRA than any of the other seven federal court

actions filed across the country; in fact, this suit has even less relevance to the NRA than other

similar cases.  For instance, *Miller v. Garland*, No. 1:23-cv-195 (E.D. Va.) was filed in the judicial

district where the NRA's headquarters is located, *see* NRA Compl. ¶ 9, and *Firearms Regulatory*

*Accountability Coalition, Inc. v. Garland*, No. 1:23-cv-24 (D.N.D.) was purportedly "supported" and

"backed" by the NRA when it was originally filed.  And while the NRA alleges that Texas is home

to many NRA members, NRA Mot. at 5, the group fails to explain why that fact is of any salience in

this matter, one of five separate district court actions in Texas challenging the Rule.  The NRA thus

fails to demonstrate why it would be harmed if prevented from intervening in this case.

Finally, the particular circumstances of this case further militate against a finding of

timeliness here.  Under the NRA's theory, if an entity has an interest in a regulation, it can properly

wait for months after the regulation is issued, after any compliance period has elapsed, and after

numerous lawsuits have resolved motions for preliminary relief.  And then, because no relief has

been specifically afforded to the entity sitting on the sidelines, it may now intervene specifically in a

preferred forum that has provided preliminary relief.   That is not timely action.

### B.  Denial of Intervention Would Not Impair the NRA from Protecting a Cognizable Interest

The NRA also fails to set forth a protectable interest that may be impaired through

disposition of this action. The Fifth Circuit requires that an intervenor hold a "legally protectable"

interest related to the subject of an action.  *Wal–Mart Stores, Inc. v. Texas Alcoholic Beverage Comm'n*,

834 F.3d 562, 566–67 (5th Cir. 2016).  "Quintessential" examples include "property interests," such

as a stake in real or personal property that is directly at issue.  *Field*, 35 F.4th at 1018–19 (citation

omitted).  While in certain circumstances an intangible interest may be sufficient, intervention is

inappropriate when the "asserted interest will be only indirectly affected by the outcome of the

lawsuit."  *Russell v. Harris Cnty.*, No. CV H-19-226, 2020 WL 6784238, at *2 (S.D. Tex. Nov. 18,

2020).

That is precisely the case here.  The NRA claims to have an interest in "preventing the

imposition of firearms restrictions on its members."  NRA Mot. at 13.  Assuming *arguendo* that this

qualifies as a cognizable interest, it is only indirectly affected by the outcome of this case.  As the

NRA makes clear, it seeks intervention because this Court previously declined to enter a nationwide injunction, and a nationwide injunction would have prevented the enforcement of the Rule as to all Americans, including NRA members.  NRA Mot. at 10.  The interest in exempting NRA members from firearms regulations is, at most, indirectly implicated by the outcome of this case, and is no more at issue in this litigation than the other seven active cases in federal court.  Accordingly, it is doubtful at best whether the NRA maintains a legally protected interest in this specific case.

Moreover, any interest that NRA holds with regard to the Rule would not be impaired by the disposition of this case.  Of note, another court in this district denied an earlier-filed motion to intervene in a challenge to the Rule, in part because there was no potential impairment of a protected interest.  In *Britto v. ATF*, No. 2:23-cv-19, ECF No. 50 (N.D. Tex. May 23, 2023), Judge Kacsmaryk denied a motion to intervene filed by firearms manufacturer CMMG, Inc.  *See* Exhibit 1. Like the NRA, CMMG complained that it may be injured if relief was provided only to the parties before the court and argued that the effect of *stare decisis* could further impair CMMG's interest in seeking relief from the Rule.

Judge Kacsmaryk explained that "[t]his argument has less force when parallel litigation exists in other courts."  *Id.* at 8.  The putative intervenor was "not bound by any *stare decisis* effect" of orders from other district courts involved in similar challenges, such that it was "not clear that an adverse judgment from this Court would impair CMMG's interest any more than" the decision from a different district court.  *Id.*  Indeed, if intervention was denied, CMMG "will not be affected by *stare decisis*, *res judicata*, the law of the case, or any other doctrine that could render its claim incapable of legal enforcement."  *Id.*  (citing *Dias v. S. Drilling Corp.,* 427 F.2d 1118, 1124 (5th Cir. 1970).  So too here, disposition of this action would not impair the NRA in any way from protecting its claimed interest.  A denial of intervention here could result, at most, in the "additional expense" of "filing another action."  NRA Mot. at 14.  But "the cost of hiring an attorney and the general

9

challenges of litigating an individual action do not of themselves satisfy the impairment prong."
*Buchanan v. Sirius XM Radio, Inc.*, No. 3:17-CV-0728-D, 2019 WL 4054930, at *3 (N.D. Tex. Aug. 28, 2019); *see also Gilyard v. Texas Laurel Ridge Hosp. LP*, No. SA-07-CA-650-OG, 2009 WL 10670038, at *3 (W.D. Tex. Feb. 18, 2009) (holding that potential cost and inconvenience of litigation "are not adequate reasons for intervention as of right"). The NRA accordingly fails to show any impairment of a protected interest if intervention in this matter is denied.

On this point, the NRA asserts only that if intervention is denied, "its members may not be protected from enforcement of the Final Rule against them in a timely and efficient manner." NRA Mot. at 14. But that prospect has nothing do to with the outcome of this case in particular, and rather results from the NRA's belated efforts to bring suit challenging the Rule at all. Indeed, the NRA concedes that if intervention is denied, they could simply "fil[e] another action" to challenge the Rule. *Id.* The NRA asserts that the "potential need to file separate litigation" weighs in favor of finding its interest to be impaired, and thus a right of intervention. *Id.* at 15. Not so. The NRA's sole cited case on this point, *Adam Joseph Resources v. CNA Metals Ltd.*, 919 F.3d 856, 867 (5th Cir. 2019) concerns when a law firm "must be allowed to intervene . . . to protect its contingent fee interest." Outside of this specific circumstance, "intervention generally is not appropriate where the applicant can protect its interests and/or recover on its claim through some other means." *Deus v. Allstate Ins. Co.*, 15 F.3d 506, 526 (5th Cir. 1994); *United States v. Tex. E. Transmission Corp.*, 923 F.2d 410, 415 (5th Cir. 1991) (rejecting argument "that the burden of additional litigation justifies intervention"); *see also Stewart v. City of Houston*, No. CIV.A H-07-4021, 2009 WL 783319, at *1 (S.D. Tex. Mar. 24, 2009) (similar). In sum, the NRA has no legally protected interest that would be impaired if intervention is denied.

10

### C.  Plaintiffs' Representation of NRA's Interests is Adequate

Finally, the NRA fails to show that Plaintiffs' representation of its interests is inadequate. While the NRA is correct that this burden is generally "minimal," requiring only a showing "that the representation [of the intervenor's interest] '*may be*' inadequate," NRA Mot. at 15 (citation omitted), that standard does not apply where, as here, "the would-be intervenor has the same ultimate objective as a party to the lawsuit." *Students for Fair Admissions, Inc. v. Univ. of Tex. at Austin*, 338 F.R.D. 364, 371 (W.D. Tex. 2021).  In that circumstance, representation is "presumed to be adequate." *Id.*  To overcome that presumption, the intervenor must show "adversity of interest, collusion, or nonfeasance on the part of the existing party." *Id.* (citation omitted); *Field*, 35 F.4th at 1020 (same).  "Such adversity, collusion, or nonfeasance must be more than merely theoretical; there must be a 'serious probability' that the existing party and the movant may not share the same ultimate objective." *Helt v. Sethi Petroleum, LLC*, No. 20-40240, 2022 WL 127977, at *1 (5th Cir. Jan. 13, 2022) (citation omitted).

Courts regularly hold that where the existing parties and a would-be intervenor both desire to invalidate a challenged government policy, they share the same ultimate objective.  *See Texas v. United States*, No. 4:18-cv-00167, 2018 WL 4076510, at *2 (N.D. Tex. June 15, 2018) (denying intervention as of right and permissive intervention by employers because it was "clear" that they "ha[d] the same ultimate objective as Plaintiffs—a declaration from this Court that" a challenged government policy was unlawful); *Supreme Beef Processors, Inc. v. USDA*, No. 99-cv-2713, 2000 WL 127281, at *1 (N.D. Tex. Feb. 2, 2000) (denying intervention as of right and permissive intervention by association where, "[a]t the end of the day," both the putative intervenor and the existing plaintiff-association sought "the same relief, a declaration that the [challenged] regulations are not enforceable" (citation omitted)).

11

Indeed, Judge Kacsmaryk denied intervention in *Britto* in part because the putative intervenor sought the "same ultimate relief as Plaintiffs – that is, to have the Rule held unlawful and set aside," and the putative intervenor could not show any "adversity of interest, collusion, or nonfeasance" on the part of Plaintiffs. Ex. 1 at 9 (citations omitted).  Just as in that case, the NRA concedes that it shares with Plaintiffs "the same ultimate objective – an injunction prohibiting enforcement of the Final Rule and, ultimately, a declaration that the Final Rule should be set aside[.]" NRA Mot. at 15.  And the NRA also makes no plausible argument that Plaintiffs' interests here are somehow adverse, or that Plaintiffs are acting in a collusive fashion, that would overcome the presumption of adequate representation.

At most, the NRA argues that while Plaintiffs have previously sought "broader injunctive relief," because a preliminary injunction was ordered specifically as to Plaintiffs in this matter, Plaintiffs now "*cannot* represent the interests of the NRA or its members." *Id.* at 16.  But this argument fails on multiple levels.  For one thing, existing Plaintiffs are not precluded from seeking the broad relief asserted in their Complaint going forward.  Moreover, potentially different arguments on the scope of relief do not create adversity of interest.  *Guenther v. BP Ret. Accumulation Plan*, 50 F.4th 536, 543 (5th Cir. 2022) ("Differences of opinion regarding an existing party's litigation strategy or tactics used in pursuit thereof, without more, do not rise to an adversity of interest.").  In *Guenther* the Fifth Circuit held that so long as existing parties sought in their "operative complaint" the same relief sought by purported intervenors, the intervenors lacked a "distinct interest that is at risk of being adversely represented." *Id.* at 545; *see also id.* at 547 (holding no adversity of interests where intervenors could not show that existing parties' "strategy is uniquely favorable to their own interests while placing those of [intervenors] in jeopardy").  And here, there is

12

no dispute that the NRA and Plaintiffs share the same ultimate objective and seek the same type of relief.[1]

The NRA's motion reduces to the argument that only they can specifically request relief tailored to their own group.  But, with rare exception, this is always the case for non-parties.  The NRA's tautology – because their group is not a party, it should be permitted to intervene as a party – would obviate the requirement to show an actual *adversity* of interest with existing parties, where the same ultimate objective is shared.  Just as in *Britto*, the NRA comes nowhere close to demonstrating the type of adversity of interest required to intervene as of right.

## II.    Permissive Intervention is Inappropriate

The NRA also argues that, even if it has no right to intervene in this matter, the Court should nonetheless grant permissive intervention.  Not so.

In resolving a request for permissive intervention, the Court should consider, *inter alia*, "whether the intervenors' interests are adequately represented by other parties"; "whether they 'will significantly contribute to full development of the underlying factual issues in the suit'"; and "[t]he effect [of intervention] on the existing parties."  *NOPSI*, 732 F.2d at 472-73 (citations omitted).

"Like intervention of right, permissive intervention must be timely," and where a motion is untimely, "no further analysis is needed" to reject a request for permissive intervention.  *St. Bernard*

---

[1] The NRA excises out-of-context quotes from *Entergy Gulf States Louisiana, LLC v. U.S. EPA*, 817 F.3d 198, 205 (5th Cir. 2016), for the proposition that a "delayed" and "likely narrower ruling" demonstrates adversity of interest.  NRA Mot. at 16.  It does not.  The cited language refers to the "divergent interests" of the putative intervenor and existing defendant in that matter, specifically, the fact that the intervenor sought rapid disclosure of certain documents, among other interests that were in conflict with the defendant.  *Entergy*, 817 F.3d at 205.  The Fifth Circuit explained that in other cases disputes as to a stay and bifurcation "might concern mere litigation tactics, [but] in this unique situation" the disagreement represented an adversity of interest.  *Id.* at 205-06.  By contrast, the NRA seeks the same relief as Plaintiffs here, and in any event, disputes as to the scope of relief do not constitute any conflict of interest.

13

*Par.*, 914 F.3d at 976.  Because the NRA's motion to intervene is untimely for the reasons set forth above, permissive intervention should also be denied.

Moreover, because Plaintiffs will adequately represent the NRA's goal of invalidating the Rule, the NRA cannot show that any deficient representation supports permissive intervention here. Indeed, in *Britto*, Judge Kacsmaryk correctly denied permissive intervention in part because the putative intervenor was "adequately represented by Plaintiffs," and was "likely adequately represented by the plaintiffs" in the parallel litigation in this district.  *See* Ex. 1 at 10.  In the same vein, the court further took note of the case in North Dakota, which sought the "same relief against the Rule," the very case that the NRA claims to have previously supported.  *Id.*

Nor would the NRA aid in "developing underlying fact issues" here.  NRA Mot. at 20.  As Judge Kacsmaryk explained in *Britto*, "[t]he function of the district court [in APA cases] is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did."  Ex. 1 at 11 (citation omitted).  And "[t]he entire case on review is a question of law, and only a question of law."  *Id.* (citation omitted).  Just as in *Britto*, if the NRA wishes to present "new arguments to this Court" it can submit "*amicus curiae* submissions," or it may attempt to file its own lawsuit.  *Id.*; *see also Aransas Project v. Shaw*, No. CIVA C-10-75, 2010 WL 2522415, at *14 (S.D. Tex. June 17, 2010) (similar).  Finally, like in *Britto*, the NRA has "unnecessarily complicated this case by filing its motion for preliminary injunction" before the Court ruled on the motion to intervene, "thereby inviting motions practice and burdening ATF before" intervention was granted.  Ex. 1 at 11.

Courts routinely deny intervention where, as here, the litigation would "unnecessarily become more complex," *Aransas Project v. Shaw*, 404 F. App'x 937, 942 (5th Cir. 2010) "without any added benefit," *Nipponkoa Ins. Co. v. Port Terminal R.R. Ass'n*, No. CIV.A. H-10-0284, 2011 WL 1103584, at *2 (S.D. Tex. Mar. 23, 2011); *see Gulf Island Shipyards, LLC v. LaShip, LLC*, No. CV 22-

154, 2023 WL 372083, at *6 (E.D. La. Jan. 24, 2023) (explaining that "allowing

a permissive intervention when the proposed intervenor and existing party share the same goal, it

'unnecessarily expands the nature of [the] proceeding'" (citation omitted)).

    In sum, the NRA has no apparent connection to this case, it has already voiced its support

for a similar challenge in the District of North Dakota, and the sole apparent basis for intervention

here is the fact that this Court granted a preliminary relief to Plaintiffs.  But a desire to expand a

preliminary injunction cannot support intervention, or logic would demand allowing the intervention

of any person or entity affected by and opposed to the ATF Rule.  *Accord SEC v. Bear, Stearns & Co.,*

*Inc.,* No. 03-cv-2937, 2003 WL 22000340, at *4 (S.D.N.Y. Aug. 25, 2003).

(rejecting permissive intervention by investors and explaining "[w]ere this Court to grant this motion

to intervene, it would be logic-bound to allow all investors and interested members of the public

with differing viewpoints to intervene in the underlying actions.").  For all of these reasons,

intervention by NRA in this matter is improper and its motion should be denied.

## III.    A Preliminary Injunction Should Not Issue as to the NRA and its Members

    Even if this Court disagrees with the above analysis and concludes that intervention is

appropriate, the NRA's motion for a preliminary injunction should be denied.  The NRA's request

for preliminary relief runs barely three pages, apparently in the belief that the Court can simply

"extend interlocutory relief" because of unspecified "similarities" between the NRA's proposed

complaint, and Plaintiffs' Complaint.  NRA Mot. at 21.  That is not the law.

    As the NRA's own cited precedent reiterates, "[a] preliminary injunction is an extraordinary

remedy. It should only be granted if the movant has clearly carried the burden of persuasion" as to

the relevant factors.  *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir.

1985).  "The decision to grant a preliminary injunction is to be treated as the exception rather than

the rule."  *Id.*  The NRA does not carry its weighty burden here.

### A.  The NRA Fails to Show a Likelihood of Success on the Merits

*The NRA Lacks Associational Standing.*  "A preliminary injunction, like final relief, cannot be requested by a plaintiff who lacks standing to sue." *Speech First, Inc. v. Fenves*, 979 F.3d 319, 329–30 (5th Cir. 2020). At this stage, where the NRA seeks a preliminary injunction on behalf of is claimed members, the group "must clearly show that [they] likely [have] *associational* standing to bring its case on the merits." *Id.* The NRA has failed to make such a showing.

Organizations may assert associational standing only where they demonstrate key "indicia of membership," such as "a clearly articulated and understandable membership structure" with members who "elect[] the governing body." *Friends of the Earth, Inc. v. Chevron Chem. Co.*, 129 F.3d 826, 829 (5th Cir. 1997) (citing *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333 (1977)).  But the NRA does not explain whether its members determine group leadership, whether and to what extent members finance the organization, and if members "participat[e] directly in making and implementing day-to-day decisions" of the group, *see Concerned Citizens Around Murphy v. Murphy Oil USA, Inc.*, 686 F. Supp. 2d 663, 675–76 (E.D. La. 2010).

Moreover, to assert associational standing, a qualifying organization must demonstrate that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Speech First*, 979 F.3d at 330 (citation omitted).  The NRA stumbles on the very first hurdle.

As to this requirement, a group must "identify members who have suffered the requisite harm[,]" *Summers v. Earth Island Institute*, 555 U.S. 488, 499 (2009), and have standing to sue in their own right.  *See also Petteway v. Galveston Cnty.*, --- F. Supp. 3d --- , 2023 WL 2782705, at *5 (S.D. Tex. Mar. 30, 2023) ("An organization must identify 'a specific member' to assert standing on his

behalf."). Here, the NRA identifies a single member allegedly injured by the Final Rule, Dr. Carl Carlson. NRA Compl. ¶¶ 17, 25.

As his sole purported injury, Dr. Carlson complains that he can no longer retain his short-barreled rifle as currently constituted. Specifically, he avers that his firearm would be classified by ATF as a short-barreled rifle, and he "wish[es] to be able to continue to possess [the firearm] in its current configuration. However, the Final Rule requires me to modify, destroy, or surrender it." Decl. of Dr. Carl Carlson ¶ 7, ECF No. 71-1. Dr. Carlson's statements regarding the rule are incorrect. Under the Final Rule, owners had four months to lawfully register firearms with stabilizing braces, which were classified as short-barreled rifles. 88 Fed. Reg. at 6,570; NRA Compl. ¶ 139 (averring that the Final Rule allows "a registration process for firearms"). Accordingly, nothing prevented Dr. Carlson from possessing his firearm in its current configuration if he registered within that time frame, and the Final Rule expressly permitted continued possession of the firearm until receipt of a decision from ATF. 88 Fed. Reg. at 6,498. Despite voicing no objection to registration of his firearm, Dr. Carlson apparently decided against this course. Where, as here, plaintiffs "decline the opportunity to avail themselves of a regulatory scheme to avoid the very harm for which they seek injunctive relief," such plaintiffs are generally "denied the [sought] relief." *Safari Club Int'l v. Salazar*, 852 F. Supp. 2d 102, 123 (D.D.C. 2012).

"[S]tanding cannot be conferred by a self-inflicted injury," *Zimmerman v. City of Austin*, 881 F.3d 378, 389 (5th Cir. 2018), and here Dr. Carlson's claimed inability to possess his firearm in its current configuration is an apparent result of his choice to forego registration. Given that "the only identified member[]" of the NRA fails to show that he has standing to sue, the NRA therefore "lacks associational standing" and cannot demonstrate a likelihood of success on the merits. *See Children's Health Def. v. Food & Drug Admin.*, No. 6:22-CV-00093-ADA, 2023 WL 175004, at *6 (W.D. Tex. Jan. 12, 2023).

*The NRA Presents No Substantive Argument as to the Merits.*  In addition, the NRA's argument as to success on the merits totals four sentences, NRA Mot. at 22, and sets forth no cognizable argument.

The NRA recounts in conclusory fashion certain of its legal claims, but "[c]onclusory allegations are insufficient to carry the burden of proof imposed upon persons seeking preliminary injunctive relief." *Mack v. Smith*, No. 5:15-CV-202, 2017 WL 1129905, at *1 (E.D. Tex. Mar. 27, 2017); *see, e.g.,* NRA Mot at 22 ("(1) the Final Rule exceeds statutory authority through statutory contradiction . . . (4) the Final Rule violates the Due Process Clause's vagueness doctrine").  The NRA fails to explain which of its claims are likely to be successful and why.

Instead, the group argues that the Fifth Circuit "implicitly found a likelihood of success" as to "similar claims" in the *Mock* case.  NRA Mot. at 22.  But even assuming the Fifth Circuit found a likelihood of success as to one or more claims in *Mock*, the NRA does not even guess as to which claims those might be, nor does the NRA explain why such claims are so "similar" to those raised here that a preliminary injunction is warranted.  In sum, the NRA fails to provide any cogent argument as to the likelihood of success and therefore does not carry its burden on this prong as well.  *See Chyba v. EMC Mortg. Corp.*, No. 4:11-CV-123-Y, 2011 WL 13205939, at *1 (N.D. Tex. Feb. 25, 2011) (denying preliminary injunction where "Plaintiff's motion does not adequately explain why she is likely to prevail on the merits").

### B.  The NRA Fails to Demonstrate Irreparable Harm

The NRA also fails to establish irreparable harm to its members.  Just as Dr. Carlson's self-inflicted injury is insufficient to establish standing, it also cannot constitute irreparable harm.  *See Texas v. Biden*, 10 F.4th 538, 558 (5th Cir. 2021) (holding that "[t]he self-inflicted nature of the . . . asserted harm severely undermines [a] claim for equitable relief"); *Div. 80, LLC v. Garland*, No. 3:22-cv-148, 2022 WL 3648454, at *5 (S.D. Tex. Aug. 23, 2022) (citations omitted) (collecting cases and

explaining that "[a] party may not satisfy the irreparable harm requirement if the harm complained of is self-inflicted").

If more were needed on the issue of irreparable harm, the NRA's significant delay in seeking relief "suggests a lack of urgency that militates against a finding of irreparable injury." *See Shenzhen Tange Li'An E-Com., Co. v. Drone Whirl LLC*, No. 1:20-CV-738-RP, 2020 WL 5237267, at *4 (W.D. Tex. Sept. 2, 2020). The NRA's four-month delay similarly precludes a finding of irreparable harm. Especially given that the NRA was plainly aware of the Final Rule's publication, vocally "supported" a legal challenge in North Dakota, but took no action whatsoever to seek relief for its own members until after a preliminary injunction had already been issued, it cannot now complain that a preliminary injunction is imminently required.

The NRA cannot demonstrate irreparable injury, both because of its voluntary delay and because of the self-inflicted harm of its only identified member, and so the Motion should be denied for this reason as well. *Virden v. City of Austin*, No. 1:21-CV-271-RP, 2021 WL 2744572, at *2 (W.D. Tex. July 1, 2021) ("A movant cannot be granted a preliminary injunction unless it can establish that it will suffer irreparable harm without an injunction.").

### C.  The Equities and the Public Interest Weigh Against a Preliminary Injunction

The third and fourth requirements for issuance of a preliminary injunction—the balance of harms and whether the requested injunction will disserve the public interest—"merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). These factors also weigh against the issuance of a preliminary injunction as to the NRA.

Here too, the NRA makes only a perfunctory reference to these factors and fails to carry its burden to show that they support a preliminary injunction. NRA Mot. at 23-24. To the contrary, the Rule benefits public safety. Congress passed the NFA for the express purpose of regulating firearms, like short-barreled rifles, that it determined posed a greater risk to public safety because of

19

their unusual and dangerous nature. 88 Fed. Reg. at 6,566. The Rule enhances public safety by clarifying and supporting the enforcement of NFA controls that Congress designed to address this risk. *Id.* On the other hand, as explained above, the NRA has failed to identify a single member who would suffer cognizable injury, let alone irreparable harm, as a result of the Final Rule.

In addition, contrary to the NRA's claim that leaving the pre-Final Rule "status quo" in place would serve the public interest, the Final Rule provides regulated parties with greater clarity. ATF initiated the rulemaking process, in part, because the prior system of *ad hoc* classification determinations, at times, resulted in inconsistent classifications of "brace"-equipped pistols. The 98-page Rule, however, thoroughly explains ATF's uniform approach. Further, ATF has also published interim guidance identifying pistol-brace combinations likely to be considered short-barreled rifles under the Rule and will issue classification letters directly to manufacturers. *Supra* p. 31. And the Rule provides that "an individual may contact ATF to receive a [classification] determination." 88 Fed. Reg. at 6,481. Thus, the public interest is better served by the Rule than by its absence.

As a final note, the public interest would be disserved by granting a preliminary injunction in this matter, since it would threaten to transform the tailored relief provided into a nationwide injunction. Both the Fifth Circuit in *Mock* and this Court were explicit that the preliminary relief was limited to the parties at hand, their members, and certain close relations. *See* ECF No. 62 (granting relief as "to Plaintiffs in this case only"); ECF No. 65; *Mock v. Garland*, No. 23-10319 (5th Cir.), ECF No. 78-2 (holding that "[a]ny relief beyond what is explicitly requested, which arguably would be tantamount to a nationwide injunction, is DENIED"). Yet if this Court's preliminary relief can cover any person or entity opposed to the Rule, upon minimal and belated effort, it will serve as a nationwide injunction-in-waiting. As Justice Thomas explained, nationwide injunctions take a "toll on the federal court system[]" by "preventing legal questions from percolating through the federal courts, encouraging forum shopping, and making every case a national emergency for the courts and

20

for the Executive Branch." *Trump v. Hawaii*, 138 S. Ct. 2392, 2425 (2018) (Thomas, J., concurring). The same harms are threatened by a preliminary injunction that can be extended to any litigant in the country upon a perfunctory request. *Accord Louisiana*, 20 F.4th at 263 (explaining that "[p]rinciples of judicial restraint" counsel against granting relief to non-parties—particularly where, as here, "[o]ther courts are considering these same issues[]" at the same time). The Court should reject the NRA's motion for a preliminary injunction.

## CONCLUSION

For the foregoing reasons, the Court should deny the NRA's Motion to Intervene and for a Preliminary Injunction.

Dated: June 22, 2023                           Respectfully submitted,

                                               BRIAN M. BOYNTON
                                               Principal Deputy Assistant Attorney General

                                               BRIGHAM J. BOWEN
                                               Assistant Branch Director

                                               */s/   Michael Drezner*
                                               MICHAEL DREZNER (VA Bar No. 83836)
                                               JODY D. LOWENSTEIN (MT Bar No. 55816869)
                                               TAYLOR PITZ (CA Bar No. 332080)
                                               Trial Attorneys
                                               U.S. Department of Justice
                                               Civil Division, Federal Programs Branch
                                               1100 L Street NW
                                               Washington, DC 20005
                                               Phone: (202) 514-4505
                                               Email: Michael.L.Drezner@usdoj.gov

                                               *Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

On June 22, 2023, I electronically submitted the foregoing document with the Clerk of Court for the U.S. District Court, Northern District of Texas, using the Court's electronic case filing system. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Michael Drezner*

Trial Attorney
U.S. Department of Justice