IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SECOND AMENDMENT FOUNDATION, *et al.*, § § § | |
| *Plaintiffs*, § § | |
| NATIONAL RIFLE ASSOCIATION OF AMERICA, INC. § § § | |
| *Proposed-Intervenor-Plaintiff*, § | |
| vs. § § | CIVIL ACTION NO. 3:21-CV-0116-B |
| BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, *et al.*, § § § | |
| *Defendants*. § | |

**THE NATIONAL RIFLE ASSOCIATION OF AMERICA'S REPLY IN SUPPORT OF MOTION TO INTERVENE AND FOR A PRELIMINARY INJUNCTION**

The National Rifle Association of America ("**NRA**") timely intervened and satisfies all required elements for intervention and a preliminary injunction. To hold otherwise encourages the duplication of litigation and contradictory rulings the intervention rule seeks to avoid.

A. **The NRA Demonstrated Its Entitlement To Intervene As Of Right.**

1. **The NRA timely filed the Motion seeking intervention.**

Defendants rely on the publication date of the Final Rule and contend the NRA's participation in rulemaking renders intervention untimely. Not so under Fifth Circuit precedent.

It is black-letter law that "[t]he timeliness clock runs *either* from the time the applicant knew or reasonably should have known of his interest, *or from the time he became aware that his interest would no longer be protected by the existing parties to the lawsuit*."[1] The NRA's intervention is timely based on the second prong, which is flexible enough to allow *post-*

---

[1] *Edwards v. City of Houston*, 78 F.3d 983, 1000 (5th Cir. 1996) (en banc) (emphasis added); *see also EHO360, LLC v. Opalich*, No. 3:21-CV-0724-B, 2022 WL 3139752, at *6 (N.D. Tex. Aug. 5, 2022) (Boyle, J.) (noting the *Edwards* standard is "clearly" the standard in the Fifth Circuit).

*judgment* interventions and certainly supports intervention here.[2] The NRA had no advance notice of the narrow scope of the injunctions that would be entered by the Fifth Circuit in *Mock v. Garland* or by this Court until those orders were entered. The reason is simple: the parties in *Mock*, this Court, and other challenges to the Final Rule sought nationwide relief. Defendants suggest the NRA should have known no such relief would be granted due to *Louisiana v. Becerra*.[3] But *Becerra* does not suggest nationwide injunctions are "disfavored" in the Fifth Circuit. Indeed, *Becerra* itself noted the Fifth Circuit has previously allowed nationwide injunctions and emphasized the scope of an injunction depends on the circumstances.[4] And the Fifth Circuit recently noted the appropriateness of vacatur of the bump stock rule, which is no different from the Final Rule here, suggesting there is no such "disfavor" of nationwide relief.[5]

Defendants made almost identical arguments (twice) in *VanDerStok v. Garland*—both times Judge O'Connor rejected them.[6] There, the intervenors sought to intervene after a preliminary injunction ruling revealed they would not be protected. ATF argued the timeliness clock started five months before the intervention request "when the Final Rule was promulgated, or at least when [the putative intervenor] learned of but declined to join other lawsuits challenging ATF's rule."[7] Judge O'Connor rejected the argument because "length of time is measured from when the intervenor learned of his interest ***in the particular action in which he seeks to intervene***. And [the intervenor] filed its motion to intervene just over a month after Plaintiffs' original complaint, within a month of the Final Rule's effective date, and within

---

[2] *Id.*; *see also United Airlines, Inc. v. McDonald*, 432 U.S. 385, 394 (1977).
[3] 20 F.4th 260, 263-64 (5th Cir. 2021).
[4] *Id.*
[5] *Cargill v. Garland*, 57 F.4th 447, 472 (5th Cir. 2023) (en banc) ("The default rule is that vacatur is the appropriate remedy.").
[6] Civil Action No. 4:22-CV-691-O (N.D. Tex. Oct. 18, 2022) (slip op.) ("*VanDerStok I*") (granting intervention to expand preliminary injunction); *VanDerStok v. Garland*, No. 4:22-CV-691-O, 2022 WL 19023858, at *2 (N.D. Tex. Dec. 19, 2022) ("*VanDerStok II*") (same; intervention granted, in part, on associational standing).
[7] *VanDerStok I* at p. 5; *see also VanDerStok II*, at *3.

twenty days of learning that it would not be covered by the Court's preliminary injunction . . . ."[8]

The timeline here is essentially the same—the NRA filed its motion within months of Plaintiffs filing the relevant complaint, within five months of the Final Rule's effective date (and within *a week* of the actual compliance date), and within a week of learning its members would not be protected by the preliminary injunction granted to SAF and its members. Defendants' reliance on *St. Bernard Parish* to suggest the foregoing timeline demonstrates untimeliness is misplaced. *St. Bernard Parish* held an attorney's **six-year delay** in filing intervention papers after being discharged made the motion untimely.[9] Here, the NRA intervened within *a week* of learning the preliminary injunction would not protect its members.[10] But even if timeliness is measured from the date the Final Rule was published, its intervention is **still** timely under *St. Bernard Parish*, which approved intervention as timely if it came "within a year."[11]

Defendants' timeliness standard would encourage parties to file protective intervention motions in *any* case seeking nationwide injunctive relief to guard against the possibility a court might issue a narrower injunction limited to the named plaintiffs. If Defendants were correct, there could be no intervention to expand preliminary injunctions because they would be de facto untimely, but courts routinely allow such interventions.[12] And in the class action context, the Supreme Court has warned against creating a similar inducement via "a rule [that] would induce

---

[8] *VanDerStok I* at p. 5; *see also Field v. Anadarko Petroleum Corp.*, 35 F.4th 1013, 1018 (5th Cir. 2022) (intervention motion timely when filed within two weeks of learning interests were not adequately protected); *Edwards*, 78 F.3d at 1000-01 (collecting cases holding that waiting five months is not undue delay).

[9] *St. Bernard Par. v. Lafarge N. Am., Inc.*, 914 F.3d 969, 975 (5th Cir. 2019).

[10] *See Swoboda v. Manders*, 665 F. App'x 312, 314 (5th Cir. 2016) ("a better gauge of promptness is the speed with which the would-be intervenor acted when it became aware that its interests would no longer be protected by the original parties") (cleaned up) (quoting *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994)).

[11] *St. Bernard Par.*, 914 F.3d at 975; *see also ADT, LLC v. Cap Connect, Inc.*, 145 F. Supp. 3d 671, 699 (N.D. Tex. 2015) (eight-month delay reasonable); *Sierra Club v. Fed. Emergency Mgmt. Agency*, No. CIV. A. H-07-0608, 2008 WL 2414333, at *5 (S.D. Tex. June 11, 2008) (eleven month delay "from the time it reasonably should have known of its interest" was timely); *cf. VanDerStok v. BlackHawk Mfg. Grp. Inc.*, No. 4:22-CV-00691-O, 2022 WL 16680915, at *4 (N.D. Tex. Nov. 3, 2022) ("*VanDerStok III*") (five-month delay "is not dispositive" as to irreparable harm in context of injunction analysis because timeliness turns on facts of case).

[12] *E.g., VanDerStok I* at p. 5; *see also VanDerStok II*, at *3.

---

**REPLY IN SUPPORT OF MOTION TO INTERVENE AND FOR PRELIMINARY INJUNCTION**     Page 3

putative class members to file protective motions to intervene to guard against the possibility that the named representatives might not appeal from the adverse class determination."[13]

Defendants' prejudice arguments are similarly meritless, because Defendants focus on "potential prejudice caused by the intervention itself[,]" which is "irrelevant, because it would have occurred regardless of whether the intervention was timely."[14] Just as they wrongly argued in *VanDerStok*, Defendants focus on prejudice arising from litigating against the NRA post-intervention.[15] "What Defendants have identified is only the resulting inconvenience associated with [the NRA's] intervention. But mere inconvenience is not prejudice."[16] "This factor is concerned only with the prejudice caused by the applicants' delay, not that prejudice which may result if intervention is allowed."[17] And, again like *VanDerStok*, "this litigation has not yet reached a critical stage. Indeed, the Court has not even issued a scheduling order in the case."[18]

Defendants also do not explain how the NRA litigating substantially similar claims to SAF would prejudice them. Defendants bemoan their motion to stay—filed **after** the NRA's Motion—has been "complicated" due to "simultaneous briefing." But they point to no case indicating "simultaneous briefing" is prejudicial. They complain "the court will be compelled to address the NRA's standing, entitlement to relief, and legal claims." But they fail to explain how questions regarding those issues as to the NRA are more "complicated" than those of the existing

---

[13] *McDonald*, 432 U.S. at 394 n.15.
[14] *VanDerStok I* at p. 6; *see also Ceres Gulf v. Cooper*, 957 F.2d 1199, 1203 (5th Cir. 1992) (appropriate inquiry is prejudice arising from delay in seeking intervention, not prejudice to existing parties if intervention is allowed).
[15] Opposition, Doc. 83 at p. 14.
[16] *VanDerStok I* at p. 6; *see also VanDerStok II*, at *3 (no prejudice even where intervention could alter briefing schedule on dispositive motions because this "would result only in inconvenience to the existing parties").
[17] *Edwards*, 78 F.3d at 1002.
[18] *VanDerStok I* at p. 6; *see also VanDerStok II*, at *3 (finding no prejudice on similar facts).

**REPLY IN SUPPORT OF MOTION TO INTERVENE AND FOR PRELIMINARY INJUNCTION**    Page 4

plaintiffs.[19]  Nor do they explain how they are prejudiced by contesting these matters here, as opposed to a separate lawsuit the NRA would be forced to file.

And in the same breath Defendants complain of the significant burdens of litigating substantially similar claims in the same case, Defendants suggest the NRA's burden in having to file an entirely separate lawsuit is somehow insubstantial.  Indeed, Defendants focus on the alleged lack of prejudice to the NRA if intervention is denied based on Defendants' belief the NRA can pursue protection in other cases where Defendants believe the NRA has more of a "connection."  But the NRA's "decision to forego intervention in another case, or to bring an independent case, is irrelevant to the issue of timeliness *in this case*."[20]

### 2. The NRA's interests may be impaired or impeded if intervention is denied.

Defendants rely heavily on Judge Kacsmaryk's unpublished order in *Britto v. Bureau of Alcohol, Tobacco, Firearms and Explosives* in arguing intervention be denied.  Their reliance is misplaced because the *Britto* order was issued **before** the Fifth Circuit's *Mock* ruling issuing a preliminary injunction limited to those named plaintiffs.  The *Britto* order itself acknowledged the proposed intervention was timely and the intervenor had an interest.[21]  The *Britto* court relied on adequacy of representation to deny intervention.  But that issue was transformed by the narrow scope of the *Mock* injunction.  Indeed, the issues raised by narrow scope of the *Mock* injunction were not merely unforeseen in *Britto*—the *Britto* court **rejected** the notion the Final Rule could be "vacated" under the APA as to some parties but not others.[22]  Here, the Fifth Circuit has found—contrary to what *Britto* thought possible—the Final Rule can lawfully be "enforce[d]" "as to some parties and not others," at least preliminarily.

---

[19] *See In re Lease Oil Antitrust Litig.*, 570 F.3d 244, 249 (5th Cir. 2009) (noting reconsideration of issues "could not have taken much time" in finding minimal prejudicial impact of intervention).
[20] *VanDerStok I* at p. 6 (emphasis in original).
[21] Doc. 83-1 at pp. 5-7.
[22] *Id*. at p. 10 n.1 ("vacatur leaves no rule (or provision) in place to enforce against anyone").

REPLY IN SUPPORT OF MOTION TO INTERVENE AND FOR PRELIMINARY INJUNCTION   Page 5

In addition to their misplaced reliance on *Britto*, Defendants put forth another argument Judge O'Connor has already rejected in similar circumstances: that the NRA's interest will not be impaired because it can simply file another lawsuit and disposition of this case will not have any *stare decisis* effect on the NRA.[23] "But the applicable rule here is not stringent."[24] "[T]he movant must demonstrate that disposition of [the] action ***may***, as a practical [and not merely 'theoretical'] matter, impair or impede the movants ability to protect that interest. The impairment requirement ***does not*** demand that the movant be bound by a possible future judgment."[25] And, in allowing intervention, the Fifth Circuit has held "an intervenor's interest is impaired by the *stare decisis* effect of the district court's judgment."[26]

### 3. The NRA's interests are not adequately represented.

Defendants argue the NRA's interests are adequately protected because SAF and the NRA seek the same thing—"to invalidate a challenged government policy."[27] They argue the NRA, therefore, cannot show "adversity of interest, collusion, or nonfeasance" sufficient to demonstrate inadequate representation.[28] In doing so, Defendants frame the difference between the NRA's interests and SAF's interests as a difference in litigation strategy with the same ultimate goal.[29] This framing was tried—and rejected—in *VanDerStok* as well.

As an initial matter, adversity of interest, collusion, and nonfeasance are not the only grounds for demonstrating inadequacy of representation. "[T]he wide variety of cases that come to the courts make it unlikely that there are three and only three circumstances that would make

---

[23] Opposition, Doc. 83 at p. 9.
[24] *VanDerStok I* at p. 7; *McDonnel Grp., LLC v. Starr Surplus Lines Ins. Co.*, No. CV 18-1380, 2018 WL 10797955, at *3 (E.D. La. Nov. 7, 2018) (rejecting argument ability to file separate lawsuit precludes prejudice).
[25] *Id.* (quoting *Brumfield v. Dodd*, 749 F.3d 339, 344 (5th Cir. 2014)) (emphasis in original).
[26] *Espy*, 18 F.3d at 1207 (cleaned up).
[27] Opposition, Doc. 83 at p. 18.
[28] *Id.*
[29] *Id.* at pp. 18-19.

representation inadequate and suggest that adequacy of representation is a very complex variable."[30]  The facts here satisfy the "complex variable" of inadequacy of representation.  The NRA and SAF both seek to protect their members from Defendants' unlawful attempt to impose the Final Rule and seek a declaration it is invalid.  However, "even if the existing parties and would-be intervenors 'agree[] on the merits of the substantive issues to be litigated,' all Putative Intervenors must show is that 'the representation by the existing parties *may* be inadequate."[31]  "[The NRA's] status as a marketplace competitor to [SAF]—[which] is already wholly protected by the current preliminary injunction and without economic incentive to advocate expanded relief for its competitor—is a practical nuance sufficient to overcome the presumption."[32]  "[T]he current scope of the preliminary injunction, which affords protective relief to only [SAF and its members], and Defendants' continued opposition to expansion of relief to [the NRA's members . . . satisfies this minimal threshold[,]" especially because "any doubts about whether this element is satisfied are resolved in favor of intervention."[33]

B.      **Alternatively, The NRA Is Entitled to Permissive Intervention.**

For the reasons outlined above, the NRA is entitled to permissive intervention as well, because "the more important question is not the mere length of time but the possibility of prejudice to existing parties that the delay may cause."[34]  Here, Defendants point to no prejudice whatsoever resulting from any alleged delay.  Further, courts routinely approve intervention where the parties have waited even over a year to intervene.[35]  The NRA's claims "invariably will concern the same evidence, memories, and witnesses as the subject matter of the original

---

[30] *Field*, 35 F.4th at 1020.
[31] *VanDerStok I* at p. 8; *see also VanDerStok II*, at *4 (finding inadequate representation on similar facts).
[32] *VanDerStok I* at p. 9; *see also VanDerStok II*, at *4.
[33] *VanDerStok I* at p. 9; *see also VanDerStok II*, at *4.
[34] *Diaz v. S. Drilling Corp.*, 427 F.2d 1118, 1126 (5th Cir. 1970).
[35] *Id.* at 1125 (intervention after the "passage of a year after [the Government] knew of the suit," and after the close of discovery, was nonetheless timely).

class suit," and thus Defendants "will not be prejudiced" by the NRA's intervention.[36]

## C. The NRA And Its Members Are Entitled To The Same Preliminary Injunctive Relief Already Found To Be Appropriate By This Court And The Fifth Circuit.

Defendants make much of the fact the NRA's arguments in support of injunctive relief are concise, but the Court need not conduct an exhaustive, *de novo* preliminary injunction analysis as to the NRA—both this Court and the Fifth Circuit have already found preliminary relief against the Final Rule appropriate. Indeed, one benefit of allowing the NRA to intervene here, instead of forcing it to file a separate lawsuit, is that **both** parties would avoid the burden of extensive briefing on the preliminary injunction issue.

### 1. The injury to the NRA's members is irreparable, not "self-inflicted."

Defendants argue the NRA cannot show a likelihood of success on the merits because Dr. Carlson's injury is "self-inflicted."[37] Not so. Judge O'Connor issued an opinion just a few months ago rejecting a nearly identical argument. In *Polymer80, Inc. v. Garland*, Judge O'Connor was "unpersuaded" by an argument based on *State v. Biden*[38]—the same precedent on which Defendants rely here—that "self-inflicted" injuries could not qualify as irreparable harm.[39] The facts in *Biden* are distinguishable. In *Biden*, "DHS tried to substantiate its irreparable injury by claiming it had already begun administratively winding down the program and that requiring it to resume would inflict a great degree of harm."[40] The Fifth Circuit "found that DHS's decision, in the middle of ongoing litigation, to terminate and unwind the program . . . was a 'self-inflicted' harm that severely undermined its claim for emergency relief."[41]

Unlike the DHS's voluntary mid-litigation decision in *Biden*, the *Polymer80* plaintiff was

---

[36] *Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 562 (1974) (Blackmun, J., concurring).
[37] Opposition, Doc. 83 at p. 17.
[38] 10 F.4th 538, 558 (5th Cir. 2021).
[39] No. 4:23-CV-00029-O, 2023 WL 3605430, at *10 (N.D. Tex. Mar. 19, 2023).
[40] *Id.*
[41] *Id.* (internal citations omitted).

forced to stop selling its products in response to a final rule, which the plaintiff alleged violated its statutory and constitutional rights.[42] Here, Dr. Carlson faces the exact same injury found to be sufficient by Judge O'Connor: "[Dr. Carlson] faces irreparable injury whatever course [he] takes—suffer economic injury [by modifying, destroying, or surrendering his pistol] or comply with a regulation [he] alleges the Government has no authority to enforce."[43] "Importantly, irreparable harm need not be financial in nature. Even 'alleged' deprivations of constitutional or procedural rights may justify injunctive relief. . . . For this reason, Plaintiff need not cure its economic harm by simply opting to comply with a regulation that is likely unlawful, as Defendants suggest."[44] The same is true in this case.[45]

And the injury and irreparable harm to Dr. Carlson confer associational standing on the NRA as well. "[T]he interests [the NRA] seeks to protect, including its members' rights under the Second Amendment that [the NRA] will raise if permitted to intervene, are germane to the association's purposes . . . ."[46] Regardless, "because [the NRA] seeks declaratory and injunctive relief regarding the rights of its members, and not individual damages, individual member participation in the lawsuit is not required."[47] It has associational standing in its own right.[48]

### 2. The timing of the Motion does not preclude an irreparable-harm finding.

Defendants focus on the NRA's participation in objecting to the Final Rule, its support of other legal challenges to the Final Rule, and the implementation date of the Final Rule itself in

---

[42] *Id.*

[43] *Id.*

[44] *Id.* Moreover, the "regulatory scheme" here would also require Dr. Carlson to pay special taxes if he ever transferred his firearm. *See* Final Rule, 88 Fed. Reg. 6478, 6579 (Jan. 31, 2023). Thus, Defendants' reliance on *Safari Club Int'l v. Salazar*, 852 F. Supp. 2d 102 (D.D.C. 2012), is misplaced.

[45] The harm is also plainly irreparable here because a party cannot recover money damages under section 702 of the APA. *Amendariz-Mata v. U.s. Dep't of Just., Drug Enf't Admin.*, 82 F.3d 679, 682 (5th Cir. 1996).

[46] *VanDerStok II*, at *2.

[47] *Id.*

[48] Declaration of John Frazer attached as **Exhibit A** (including further clarification of the NRA's structure in light of Defendants' surprising suggestion the NRA does not have associational standing).

arguing the NRA unreasonably delayed its request for relief and, therefore, cannot show irreparable harm. The arguments ignore precedent in similar factual circumstances.

"Whether a period of delay militates against a finding of irreparable harm turns on the facts of the particular case."[49] Like the plaintiff in *Polymer80*, "[the NRA] initially thought its interests would be protected by a possible nationwide injunction . . . [in] a lawsuit that commenced before the Final Rule took effect."[50] Less than two weeks after it ultimately learned the rule in that case would render its business model unviable, the *Polymer80* plaintiff sought to intervene in the existing case.[51] Six weeks after seeking to intervene, it sought a temporary restraining order.[52] Here, the NRA first learned its members would not be protected through the nationwide injunction sought by SAF when the Court entered its Clarified Injunction Order based on *Mock*. Within a week, the NRA sought to intervene and asked for the same injunctive relief already granted to SAF and its members.[53] This "purported delay [of less than a week] does not weigh against a finding of irreparable harm."[54]

## REQUEST FOR RELIEF

The Court has already considered the narrow legal issues arising from *Mock* and applied them in this case. The NRA's Motion simply asks that the Court allow intervention so the Court can apply the law of the case to the NRA's members.

---

[49] *Polymer80, Inc.*, 2023 WL 3605430, at *10 (citing *ADT, LLC*, 145 F. Supp. 3d at 699 (finding an eight-month delay reasonable); *Wireless Agents, L.L.C. v. T-Mobile USA, Inc.*, No. 3:05-CV-0094-D, 2006 WL 1540587, at *3 (N.D. Tex. June 6, 2006) (finding a year's delay unreasonable)).
[50] *Polymer80, Inc.*, 2023 WL 3605430, at *10.
[51] *Id.*
[52] *Id.*
[53] Motion, Doc. 69.
[54] *Polymer80, Inc.*, 2023 WL 3605430, at *10; *see also VanDerStok III*, at *4 (finding five-month delay "is not dispositive" as to irreparable harm and granting preliminary injunctive relief on similar facts).

Dated: June 29, 2023

Respectfully submitted,

**BREWER, ATTORNEYS & COUNSELORS**

By: */s/ William A. Brewer III*
William A. Brewer III
 State Bar No. 02967035
 wab@brewerattorneys.com
Matthew H. Davis
 State Bar No. 24069580
 mhd@brewerattorneys.com
Noah Peters (admitted *pro hac vice*)
 nbp@brewerattorneys.com

1717 Main Street, Suite 5900
Dallas, TX 75201
Telephone: (214) 653-4000
Facsimile: (214) 653-1015

**ATTORNEYS FOR INTERVENOR-PLAINTIFF THE NATIONAL RIFLE ASSOCIATION OF AMERICA**

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served via the Court's electronic filing system on this 29th day of June 2023, upon the following counsel of record:

| | |
|---|---|
| Charles Flores (cf@chadfloreslaw.com) Caleb Rawls (calebrawls@gmail.com) *Counsel for Plaintiffs* | Brian Walters Stoltz (brian.stoltz@usdoj.gov) Jody D. Lowenstein (jody.d.lowenstein@usdoj.gov) Michael Drezner (michael.l.drezner@usdoj.gov) *Counsel for Defendants* |

 */s/ Matthew H. Davis*
  Matthew H. Davis