UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SECOND AMENDMENT FOUNDATION, et al., <br><br> Plaintiffs, <br><br> v. <br><br> BUREAU OF ALCOHOL TOBACCO, FIREARMS, AND EXPLOSIVES, *et al.*, <br><br> Defendants. | § § § § § § § § § § § § § § | CIVIL ACTION NO. 3:21-CV-0116-B |

## MEMORANDUM OPINION AND ORDER

Before the Court is the National Rifle Association of America ("NRA")'s Motion to Intervene (Doc. 69). The NRA has not carried its burden for intervention as of right, and the Court finds permissive intervention inappropriate in this case. Accordingly, the Motion to Intervene (Doc. 69) is **DENIED.**

### I.

### BACKGROUND

Plaintiffs in this case are two individual gun owners, a Second Amendment non-profit, and a firearm parts and accessories manufacturer. Doc. 50, Am. Compl., ¶¶ 6–21. In their suit, Plaintiffs challenge a Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") regulation pertaining to the statutory classification for pistols equipped with stabilizing braces. *See* Factoring Criteria for Firearms with Attached "Stabilizing Braces," 88 Fed. Reg. 6,478 (Jan. 31, 2023) (to be codified at 27 C.F.R. pts. 478–79) (the "Rule"); Doc. 50, Am. Compl. In short, the Rule

provides several criteria for determining whether a firearm equipped with a stabilizing brace is a rifle or a pistol. *See* Factoring Criteria, 88 Fed. Reg. at 6,478. That classification, in turn, affects how the weapon is regulated under various statutory schemes. *Id.* Plaintiffs raise several challenges to the Rule under the Administrative Procedure Act, including that the Rule is contrary to the statute, arbitrary and capricious, and unconstitutional. *See* Doc. 50, Am. Compl., ¶¶ 57–86.

The NRA, a membership organization focused on Second Amendment rights, now moves to intervene. *See* Doc. 70, Mot. Intervene Br., 1. But to analyze the question of intervention, a fuller discussion of the case's procedural context is in order.

This case is not occurring in isolation. Rather, the Court is aware of several other suits, at least four of which are in this circuit.[1] One of those cases is *Mock v. Garland*, No. 4:23-CV-0095 (N.D. Tex.) (O'Connor, J.). In *Mock*, two Texas residents, a firearms accessories manufacturer and retailer, and a member-based nonprofit organization, raised similar challenges to the Rule and moved for preliminary injunction of its enforcement. *See Mock v. Garland*, 2023 WL 2711630, *3 (N.D. Tex. Mar. 30, 2023) (O'Connor, J.), *appeal filed*, No. 23-10319 (5th Cir. Mar. 31, 2023). The district court denied the motion, and the plaintiffs appealed. *Id.* at *8. An emergency motions panel for the Fifth Circuit then granted a "Preliminary Injunction Pending Appeal . . . as to the Plaintiffs in th[at] case." Order at 2, *Mock v. Garland*, No. 23-10319 (5th Cir. May 23, 2023), Doc. 52-2. Following the order, the Fifth Circuit further clarified that the preliminary injunction extended to the plaintiff entities' "customers and members," as well as the

---

[1] *See Mock v. Garland*, No. 4:23-CV-0095 (N.D. Tex.) (O'Connor, J.); *Britto v. ATF*, No. 2:23-CV-0019 (N.D. Tex.) (Kacsmaryk, J.); *Watterson v. ATF*, No. 4:23-CV-0080 (E.D. Tex.); *Texas v. ATF*, No. 6:23-CV-0013 (S.D. Tex.); *see also FRAC v. Garland*, No. 1:23-CV-0024 (D.N.D.); *Miller v. Garland*, No. 1:23-CV-0195 (E.D. Va.).

"individual plaintiffs' resident family members." Order at 2, *Mock v. Garland*, No. 23-10319 (5th Cir. May 26, 2023), Doc. 78-2. Any further relief, however, "which arguably would be tantamount to a nationwide injunction," was expressly denied. *Id.*

Following the Fifth Circuit's orders in *Mock*, this Court also issued a "preliminary injunction as to Plaintiffs in this case only, pending resolution of the expedited appeal in *Mock*." Doc. 62, Order, 2. The Court reasoned that "[a]lthough the Fifth Circuit's order limited relief to the plaintiffs in [*Mock*], . . . . the [preliminary injunction] motion in *Mock* and the [Preliminary Injunction] Motion before the Court are substantially similar." *Id.* The Court further reasoned that "resolution of [the *Mock*] appeal will almost certainly affect, if not control, the Court's decision on Plaintiffs' Motion." *Id.* And, like in *Mock*, the Court also limited the injunctive relief to the "Plaintiffs in this case only," which included Defendant Second Amendment Foundation Inc.'s members. *See id.*; *see also* Doc. 65, Order, 1 (issuing a clarification order following the Fifth Circuit's clarification order).

Less than two weeks after the Court's preliminary-injunction order, the NRA moved to intervene in this case. *See* Doc. 69, Mot. Intervene. The NRA argues that, because the preliminary injunction in this case was issued only as to Plaintiffs, the NRA's interests are no longer adequately represented in the suit. Doc. 70, Mot. Intervene Br., 2. The NRA therefore moves under Federal Rule of Civil Procedure 24(a) and (b) for intervention as of right or permissive intervention, respectively. *Id.* at 2–3. Because the Court finds the NRA has not met its burden for intervention under either standard, the Motion is **DENIED.**

## II.

## LEGAL STANDARD

Federal Rule of Civil Procedure 24 allows two types of intervention. "Rule 24(a) permits a party to seek intervention as of right while Rule 24(b) allows a party to seek permissive intervention." *Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 834 F.3d 562, 565 (5th Cir. 2016) (citing Fed. R. Civ. P. 24).

An applicant may intervene as of right under Federal Rule of Civil Procedure 24(a)(2) if it (1) timely files an application, (2) has an interest in the subject matter of the action, (3) shows that the disposition of the action may impair or impede the protection of that interest, and (4) shows that the existing parties to the action will not adequately represent that interest. *Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015). "The inquiry under Rule 24(a)(2) is a flexible one, which focuses on the particular facts and circumstances surrounding each application, and intervention of right must be measured by a practical rather than technical yardstick." *Entergy Gulf States La., L.L.C. v. U.S. E.P.A.*, 817 F.3d 198, 203 (5th Cir. 2016) (internal quotations omitted).

The standard for permissive intervention is broader. Rule 24(b) provides, "On timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). Ultimately, however, "[p]ermissive intervention is wholly discretionary and may be denied even when the requirements of Rule 24(b) are satisfied." *Turner v. Cincinnati Ins. Co.*, 9 F.4th 300, 317 (5th Cir. 2021) (internal quotations omitted).

III.

ANALYSIS

A.   *Intervention as of Right*

For intervention as of right, the NRA's motion fails on two independent grounds. First, the Court finds the NRA's application for intervention is not timely. Second, the Court finds the NRA's interests are adequately represented by the current Plaintiffs.

    1.   The NRA's Motion to Intervene Is Not Timely

Timeliness is a threshold requirement for which the Court considers four factors:

> (1) The length of time during which the would-be intervenor actually knew or reasonably should have known of its interest in the case before it petitioned for leave to intervene; (2) the extent of the prejudice that the existing parties to the litigation may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as it knew or reasonably should have known of its interest in the case; (3) the extent of the prejudice that the would-be intervenor may suffer if intervention is denied; and (4) the existence of unusual circumstances militating either for or against a determination that the application is timely.

*Sommers v. Bank of Am., N.A.*, 835 F.3d 509, 512–13 (5th Cir. 2016). More fundamentally, "[t]he timeliness inquiry is contextual . . . . [and] is not limited to chronological considerations but is to be determined from all the circumstances." *Wal-Mart Stores*, 834 F.3d at 565 (internal quotations and citations omitted).

The NRA contends that it only became aware of its interest in this case after the Fifth Circuit and this Court issued preliminary injunctions limited to the plaintiffs in the respective cases. *See* Doc. 70, Mot. Intervene Br., 10. But that argument ignores both the particulars of this case and the rarity of nationwide injunctions. In essence, the NRA argues it was caught off guard when the Court failed to issue an extraordinary remedy that Plaintiffs never asked for.

Plaintiffs originally filed this case in January 2021, challenging the ATF's then-treatment

of stabilizing braces. *See* Doc. 1, Compl. Several months later, Plaintiffs discovered that the ATF would be issuing a proposed rule on stabilizing braces, and the parties agreed to stay the case pending a final rule. *See* Doc. 24, Consent Mot. Stay, 1. The ATF formally issued its notice of proposed rulemaking in June 2021. Factoring Criteria for Firearms with Attached "Stabilizing Braces," 86 Fed. Reg. 30,826 (proposed June 10, 2021) (to be codified at 27 C.F.R. pts. 478–79). Prior to promulgation of the final rule, the NRA was aware of the rule and its potential impact. Indeed, in September 2021, the NRA submitted a public comment raising concerns over the proposed rule. *See* Doc. 71-1, Ex. 3, App. 45. Then, roughly five months ago, the ATF published its final Rule in the Federal Register. *See* Factoring Criteria, 88 Fed. Reg. at 6478.

Shortly thereafter, the stay in this case was lifted, and Plaintiffs filed their Amended Complaint. *See* Doc. 50, Am. Compl. In the Amended Complaint, Plaintiffs explicitly "request[ed] a judgment preliminarily enjoining the Agencies' enforcement of the Arm Brace Rule *against Plaintiffs*." *Id.* ¶ 88 (emphasis added). And Plaintiffs' subsequent Motion for Preliminary Injunction, filed in early March, likewise sought "a preliminary injunction enjoining the Agencies from enforcing the 'Arm Brace Rule' . . . *against the Plaintiffs* and postponing the Arm Brace Rule until this litigation's conclusion." Doc. 51, Mot. Inj., 2 (emphasis added). So, the NRA was aware of the Rule almost two years ago. And nothing in this case suggested that Plaintiffs were seeking a nationwide preliminary injunction. Rather, Plaintiffs expressly limited the requested preliminary relief to the named Plaintiffs.

Any assumption of a nationwide injunction, therefore, runs counter to the express pleadings in this case. That assumption also relies on the faulty premise that nationwide injunctions are somehow the norm and not the exception. Both the Fifth Circuit and the

Supreme Court have suggested that nationwide injunctions are, at best, reserved for extraordinary circumstances. *See Louisiana v. Becerra*, 20 F.4th 260, 263 (5th Cir. 2021) (per curiam) (staying nationwide injunction of COVID-19 vaccination mandates and explaining the unique considerations that may justify a nationwide injunction under certain circumstances); *see also Dep't of Homeland Sec. v. New York*, 140 S. Ct. 599, 600 (2020) (Gorsuch, J., concurring) (calling into question the practice of nationwide injunctions generally).

On those facts alone, it is hard to conclude that the NRA's Motion to Intervene is timely. But the unusual circumstances of this case further militate against such a finding. Specifically, despite knowing of the Rule and Plaintiffs' limited injunction request, the NRA only sought to intervene once this Court *granted* Plaintiffs' motion for preliminary injunction pending the Fifth Circuit appeal in *Mock*. To find intervention timely under these circumstances would seemingly incentivize "injunction shopping" among putative intervenors seeking to challenge agency actions. Under such a standard, intervenors would be wise to wait and watch as cases challenging agency actions percolated through the district courts. If a district court issues a preliminary injunction only as to the plaintiffs, then the putative intervenors can move to intervene on the grounds that an adverse interest only recently materialized with the narrow injunction. Or, if a district court grants a nationwide injunction, then the putative intervenors are covered anyway. It is a win-win. But this type of opportunism runs counter to "timely motion[s]" to intervene in cases that "may as a practical matter impair or impede the movant's ability to protect its interest." *See* Fed. R. Civ. P. 24(a).

The other considerations underlying timeliness—essentially, the degree of prejudice to either side from an adverse ruling on intervention—do not disturb this conclusion. Defendants

face some prejudice in having to pivot last second to address an additional plaintiff, but the case is still in its early stages. The NRA, however, does not face significant prejudice either. It can always file a parallel lawsuit.

In sum, the NRA knew of the Rule more than a year before it moved to intervene, and the NRA had no basis to assume a nationwide injunction would be issued in this case. Moreover, allowing an intervention under these circumstances risks incentivizing opportunistic "injunction shopping" under the auspices of "timely" interventions to protect a threatened interest. The NRA's Motion is not timely.

### 2. The NRA's Interests Are Adequately Represented by Plaintiffs

A party seeking intervention must also show that its interests are inadequately represented by the existing parties. Fed. R. Civ. P. 24(a)(2); *Texas*, 805 F.3d at 661. But the party seeking intervention need only show that the representation *may* be inadequate, not that it surely will be. *Texas*, 805 F.3d at 661. Though this burden has been described as "minimal," the Fifth Circuit has recognized two presumptions of adequate representation to give the requirement some "teeth." *See id.* (quoting *Veasey v. Perry*, 577 Fed. App'x 261, 263 (5th Cir. 2014) (per curiam)). One such presumption arises when "the would-be intervenor has the same ultimate objective as a party to the lawsuit. In such cases, the applicant for intervention must show adversity of interest, collusion, or nonfeasance on the part of the existing party to overcome the presumption." *Edwards v. City of Houston*, 78 F.3d 983, 1005 (5th Cir. 1996); *accord Texas*, 805 F.3d at 661–62. Adversity of interest exists when an intervenor's interests diverge from the representative's interests "in a manner germane to the case." *Texas*, 805 F.3d at 662.

Several cases provide color. In *La Union del Pueblo Entero v. Abbott*, multiple private

plaintiffs and the United States sued the State of Texas and "an assortment of state and local officials" to enjoin the enforcement of a recently passed election law. 29 F.4th 299, 304 (5th Cir. 2022). Several committees associated with the Republican Party moved to intervene as defendants. *Id.* The defendants and committees had the same objective: uphold the amendment to the Texas Election Code. *Id.* at 308. But the court found the committees had adequately shown an adversity of interest because of how the defendants intended to carry out that objective. *Id.* The court explained that the State and its officials sought to contest the lawsuit on sovereign-immunity and standing grounds. *Id.* And, if the State and its officials were to succeed on that argument, the local officials left in the suit were unlikely to represent the committees' interest. *Id.* at 308–09. Rather, several local officials had already said they would not substantively defend the lawsuit, and at least one of the officials was "a plaintiff in another case *challenging* the constitutionality of provisions in [the election law]." *Id.* Given these factors, the court held intervention as of right was proper. *Id.* at 309.

Likewise in *Texas v. United States*, twenty-six states sought injunctive relief against the United States and agency officials "to prevent them from implementing a program entitled 'Deferred Action for Parents of Americans and Lawful Permanent Residents' (DAPA)." 805 F.3d at 655. Several Jane-Doe aliens sought intervention in the case because they were likely to receive deferred action grants, allowing them to remain in the United States, if DAPA went into effect. *Id.*

In considering their motion to intervene, the Fifth Circuit held the Jane Does had carried their burden of demonstrating an adverse interest. *Id.* at 663. Specifically, "the Government's interests [were] in securing an expansive interpretation of executive authority, efficiently

enforcing the immigration laws, and maintaining its working relationship with the States, who often assist it in detaining immigrants like the Jane Does." *Id.* (internal quotation omitted). By contrast, the Jane Does' interests were "to remain in their long-time home state of Texas, to retain custody of their U.S. citizen children, and to obtain work authorization, driver's licenses, and lawful employment so that they can provide for their families." *Id.* And these adverse interests played out in real ways in the litigation. For example, the Government took the position that the states could refuse to issue driver's licenses to deferred action recipients as a way to undermine the states' standing to sue. *Id.* Thus, the Jane Does were entitled to intervene as of right. *Id.* at 664.

Here, the NRA acknowledges that it shares the same ultimate objective with Plaintiffs: invalidate the Rule. *See* Doc. 70, Mot. Intervene Br., 15. The NRA nonetheless contends it can overcome the resulting presumption of adequate representation because Plaintiffs may be unable to obtain preliminary injunctive relief for the NRA and its members. *Id.* at 16. Specifically, the NRA points to the Court's prior orders, which limited the preliminary injunctive relief to "Plaintiffs in this case," as evidence that its interests are inadequately represented. *Id.* And, because Plaintiffs may only obtain relief for themselves, their interests are adverse. *See id.* The Court finds this argument unconvincing.

Unlike *Entero* and *Texas*, the NRA's purported adversity of interest with Plaintiffs arises almost exclusively because the NRA is a non-party to the litigation. As explained above, Plaintiffs in this case only ever sought a preliminary injunction as to themselves, consistent with a preliminary injunction's purpose of "merely . . . preserv[ing] the relative positions of the parties until a trial on the merits can be held." *See Univ. of Texas v. Camenisch*, 451 U.S. 390, 395

(1981). But the NRA now contends that it has an adverse interest to Plaintiffs solely because it does not benefit from the preliminary relief as a non-party. The problem, however, is that if the typical advantages of litigation—and, conversely, the disadvantages of being a non-party—could serve as the basis for an adverse interest, then, *by nature*, a putative intervenor would always have an interest adverse to the representative. In many respects, the argument is akin to a putative intervenor claiming an adverse interest because the representative has access to discovery while the intervenor does not. In such a case, the adverse interest arises solely as a result of the putative intervenor's status as a non-party. But, as demonstrated, that approach essentially renders the inadequate representation requirement a nullity, and it entirely lacks a limiting principle.

Under the NRA's logic, the Court would seemingly be *required* to permit any gun owner in America with a stabilizing brace to intervene as a matter of right in this case because they, too, are not protected by the Court's preliminary injunction. Such a result would stretch far beyond the apparent reach of Rule 24(a) and create an easy run-around to Rule 24's requirements. The Court declines to accept such a broad approach.

B.   *Permissive Intervention*

In contrast to intervention as of right, permissive intervention is left to the Court's discretion. *See* Fed. R. Civ. P. 24(b); *Turner*, 9 F.4th at 317. The Court finds that the same considerations preventing intervention as of right also counsel against permissive intervention in this case. In particular, the Court finds that the NRA is adequately represented by Plaintiffs. The Court is likewise concerned that a ruling to the contrary would create a perverse incentive for putative intervenors to opportunistically join cases in which preliminary injunctions were already

issued to similar plaintiffs. And the Court sees no limiting principle to prevent an avalanche of motions to intervene. *See also SEC v. Bear, Stearns & Co. Inc.*, 2003 WL 22000340, at *4 (S.D.N.Y. Aug. 25, 2003) (denying permissive intervention because if the court granted the motion, "it would be logic-bound to allow all investors and interested members of the public with differing viewpoints to intervene in the underlying actions"). Accordingly, the Court declines permissive intervention in this case.

## IV.

## CONCLUSION

In sum, the Court finds that the NRA is not entitled to intervention as of right because its motion is not timely and its interests are adequately represented by Plaintiffs. For similar reasons, the Court exercises its discretion and declines permissive intervention. Accordingly, the NRA's Motion to Intervene (Doc. 69) is **DENIED.**

**SO ORDERED**.

**SIGNED: June 30, 2023.**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE